**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY BERNARDO, NICHOLAS MEYER, LEAH ROBERTS, and JUSTIN VALENTINE, individually and on behalf of all others similarly situated, <br><br>      *Plaintiffs*, <br><br>   v. <br><br> DELTA AIR LINES, INC. <br><br>      *Defendant*. | Case No.: 1:25-cv-04608-RER-SDE |

**MEMORANDUM OF LAW IN SUPPORT OF
DELTA AIR LINES, INC.'S MOTION TO DISMISS COMPLAINT**

**TABLE OF CONTENTS**

Page

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

    A.    Delta's Operations and Ticket Sales ....................................................... 2

    B.    Plaintiffs' Allegations ............................................................................ 4

    C.    Delta's Contract of Carriage .................................................................. 6

LEGAL STANDARDS ................................................................................................. 9

ARGUMENT ............................................................................................................... 10

    I.    Plaintiffs Fail to State a Non-Preempted Claim for Breach of Contract ............... 10

        A.    Plaintiffs plead no breach of Delta's actual contractual obligations ......... 11

        B.    The ADA preempts any attempt to impose obligations that do not appear in the Contract of Carriage. ............ 16

        C.    Plaintiff Roberts' Claim Fails for Independent Reasons ......................... 19

    II.    Plaintiffs Fail to State a Non-Preempted Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing. ............ 20

        A.    Plaintiffs' claim fails as a matter of Georgia law. .................................. 20

        B.    The Contract of Carriage and ADA bar any implied covenant claim. ........ 21

    III.    Plaintiffs Fail to State a Non-Preempted Claim for Promissory Estoppel. ........... 22

CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadi v. Am. Airlines, Inc.*,
2024 WL 1346437 (S.D.N.Y. Mar. 29, 2024) .............................................................22

*Abdel-Karim v. EgyptAir Airlines*,
116 F. Supp. 3d 389 (S.D.N.Y. 2015)..........................................................................11

*Achtman v. Kirby, McInerney & Squire, LLP*,
464 F.3d 328 (2d Cir. 2006).........................................................................................9

*Adkins v. Cagle Foods JV, LLC*,
411 F.3d 1320 (11th Cir. 2005) .............................................................................22, 24

*Air Transp. Ass'n of Am. v. Cuomo*,
520 F.3d 218 (2d Cir. 2008).........................................................................................17

*Alcatraz Media, Inc. v. Medieval Times Ga., Inc.*,
2011 WL 13213913 (N.D. Ga. Mar. 30, 2011).............................................................20

*Am. Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995).......................................................................................... *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................9

*Bajra v. Delta Air Lines, Inc.*,
785 F. Supp. 3d 1289 (N.D. Ga. May 6, 2025)........................................................20, 22

*Bergman v. Alaska Airlines, Inc.*,
16 Wash. App. 2d 553, 561 (2021) ..............................................................................16

*Blackner v. Continental Airlines, Inc.*,
311 N.J. Super. 10 (App. Div. 1998) .......................................................................11, 16

*Blau v. Blau*,
368 Ga. App. 701 (2023) .............................................................................................22

*Boon Ins. Agency, Inc. v. Am. Airlines, Inc.*,
17 S.W.3d 52 (Tex. Ct. App. 2000)........................................................................11, 16

*Breitling U.S.A., Inc. v. Fed. Exp. Corp.*,
45 F. Supp. 2d 179 (D. Conn. 1999)........................................................................10, 18

*Bugarin v. All Nippon Airways Co.*,
    513 F. Supp. 3d 1172 (N.D. Cal. 2021) ...............................................................11, 16

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)..................................................................................9

*Cone Fin. Grp., Inc. v. Employers Ins. Co. of Wausau*,
    476 F. App'x 834 (11th Cir. 2012) .......................................................................20

*Costa v. Am. Airlines, Inc.*,
    892 F. Supp. 237 (C.D. Cal. 1995) .......................................................................17

*Crooke v. Gilden*,
    262 Ga. 122 (1992) ...............................................................................................13

*De Jesus v. Am. Airlines, Inc.*,
    532 F. Supp. 2d 345 (D.P.R. 2007).......................................................................18

*Dogbe v. Delta Air Lines, Inc.*,
    969 F. Supp. 2d 261 (E.D.N.Y. 2013) ..................................................................9

*Dusko v. Delta Air Lines, Inc.*,
    2022 WL 22927618 (N.D. Ga. Mar. 2, 2022)............................................15, 21, 22

*Fabian v. Pontikakis*,
    327 Ga. App. 392 (2014) ......................................................................................13

*Farash v. Continental Airlines, Inc.*,
    574 F. Supp. 2d 356 (S.D.N.Y. 2008)...................................................................17

*Fernald v. Sw. Airlines Co.*,
    2011 WL 13254382 (S.D. Cal. Sept. 28, 2011)...............................................17, 18

*Fondo v. Delta Airlines, Inc.*,
    2001 WL 604039 (S.D.N.Y May 31, 2001) .....................................................11, 13

*Fudge v. Delta Air Lines, Inc.*,
    753 F. Supp. 3d 987 (C.D. Cal. 2024) ..................................................................16

*Galbut v. Am. Airlines, Inc.*,
    27 F. Supp. 2d 146 (E.D.N.Y. 1997) ....................................................................18

*Gleason v. United Airlines, Inc.*,
    2015 WL 2448682 (E.D. Cal. May 20, 2015) .......................................................23

*Harrington v. Delta Air Lines, Inc.*,
    2006 WL 1581752 (D. Mass. Feb. 21, 2006) .......................................................11

*Hekmat v. TSA*,
   247 F. Supp. 3d 427 (S.D.N.Y. 2017)...............................................................................10, 11

*In re Hijacking of Pan Am. World Airways, Inc. Aircraft at Karachi Int'l Airport,
   Pakistan on Sept. 5, 1986*,
   920 F. Supp. 408 (S.D.N.Y. 1996)...........................................................................................19

*Hodges v. Delta Airlines, Inc.*,
   44 F.3d 334 (5th Cir. 1995) .....................................................................................................17

*Ingram v. CitiMortgage, Inc.*,
   2013 WL 12098986 (N.D. Ga. June 18, 2013).........................................................................19

*Joseph v. JetBlue Airways Corp.*,
   2012 WL 1204070 (N.D.N.Y. Apr. 11, 2012)....................................................................16, 18

*Khatskevich v. Shapiro*,
   2025 WL 833872 (S.D.N.Y. Mar. 17, 2025) ..............................................................................9

*Kruger v. Virgin Atl. Airways, Ltd.*,
   976 F. Supp. 2d 290 (E.D.N.Y. 2013) ................................................................................11, 12

*Leonard v. Northwest Airlines, Inc.*,
   605 N.W.2d 425 (Minn. Ct. App. 2000)...............................................................................11, 16

*Martin v. DHL Exp. (USA), Inc.*,
   580 F. Supp. 3d 66 (D.N.J. 2022) ............................................................................................18

*Martin v. United Airlines, Inc.*,
   727 F. App'x 459 (10th Cir. 2018) ...........................................................................................15

*McGarry v. Delta Air Lines, Inc.*,
   2019 WL 2558199 (C.D. Cal. June 18, 2019) ..........................................................................16

*McLaughlin v. TWA Getaway Vacations, Inc.*,
   979 F. Supp. 174 (S.D.N.Y. 1997)............................................................................................18

*Melnyk v. Polskie Linie Lotnicze Lot S.A.*,
   2021 WL 3417949 (D.N.J. May 26, 2021) ...............................................................................15

*Morales v. Trans World Airlines*,
   504 U.S. 374 (1992).............................................................................................................2, 18

*Neft v. United Continental Holdings, Inc.*,
   299 F. Supp. 3d 965 (N.D. Ill. 2018) .......................................................................................16

*Northwest, Inc. v. Ginsberg*,
   572 U.S. 273 (2014).......................................................................................................18, 20, 21

iv

*Onoh v. Nw. Airlines, Inc.*,
  613 F.3d 596 (5th Cir. 2010) ...................................................................................16

*Overlook Gardens Props., LLC v. Oriz, USA, LP*,
  366 Ga. App. 820 (2023) ...................................................................................20, 23

*Pena v. British Airways, PLC (UK)*,
  2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020)................................................. *passim*

*Peterson v. Continental Airlines, Inc.*,
  970 F. Supp. 246 (S.D.N.Y. 1997)........................................................................17

*Pica v. Delta Air Lines, Inc.*,
  2018 WL 5861362 (C.D. Cal. Sept. 18, 2018) .......................................................17

*Pica v. Delta Air Lines, Inc.*,
  2019 WL 1598761 (C.D. Cal. Feb. 14, 2019)....................................................11, 16

*Sampson v. Wash. Mut. Bank*,
  2010 WL 11507028 (N.D. Ga. Nov. 18, 2010) .......................................................24

*Scarlett v. Air Methods Corp.*,
  922 F.3d 1053 (10th Cir. 2019) ............................................................................21

*Schneberger v. Air Evac EMS, Inc.*,
  2017 WL 1026012 (W.D. Okla. Mar. 15, 2017)......................................................23

*Schultz v. United Airlines, Inc.*,
  797 F. Supp. 2d 1103 (W.D. Wash. 2011)..........................................................11, 13

*Scorza v. Delta Airlines, Inc.*,
  2018 WL 6252538 (W.D. Texas Apr. 24, 2018) .....................................................13

*Shrem v. Sw. Airlines Co.*,
  2016 WL 4170462 (N.D. Cal. Aug. 8, 2016) .........................................................10

*Spencer v. Delta Air Lines, Inc.*,
  2023 WL 7312966 (C.D. Cal. Oct. 2, 2023)..........................................................12

*Subramanyam v. KLM Royal Dutch Airlines*,
  2021 WL 1592664 (E.D. Mich. Apr. 23, 2021).......................................................15

*Tampa Bay Fin., Inc. v. Nordeen*,
  272 Ga. App. 529 (2005) ...................................................................................23, 24

*Volodarskiy v. Delta Air Lines, Inc.*,
  2012 WL 5342709 (N.D. Ill. Oct. 29, 2012)...........................................................13

*Watson v. United Airlines, Inc.*,
   2017 WL 6060173 (D. Haw. 2017) .......................................................................................16

**Statutes**

49 U.S.C. § 40102(a)(6)........................................................................................................17

49 U.S.C. § 41712(a) ...........................................................................................................18

49 U.S.C. § 41713(b)(1) .............................................................................................2, 16, 17

**Other Authorities**

14 C.F.R. §§ 399.75, 399.79-399.89.....................................................................................18

**INTRODUCTION**

The Court should dismiss this lawsuit because the supposed contractual obligations that Plaintiffs allege Delta breached—supposed commitments to seat Plaintiffs next to a window—appear nowhere in Delta's actual contract with its passengers.

Plaintiffs assert that Delta misrepresents certain seats on some of its aircraft as "window" seats that do not in fact have windows. Plaintiffs claim that these misrepresentations duped them into paying a premium for seats that they incorrectly believed had windows. But Plaintiffs' Amended Complaint fails to identify any contractual provision or term in which Delta promised them a seat with a window. Plaintiffs identify no provision of Delta's Contract of Carriage (the "COC") that required a window next to their seat. Similarly, they identify no part of their tickets or any other alleged contractual term that granted them the right to a window seat—or indicated that their seat had a window.

To the contrary, Plaintiffs' contract with Delta contains no guarantee that they would receive window seats (or, indeed, any particular seat). Instead, the Contract of Carriage expressly provides that "seat assignments[] . . . *are not guaranteed and form no part of this contract*." Ex. 1, COC Rule 2 (emphasis added). Foreclosed by the COC's plain language, Plaintiffs try to bind Delta to alleged representations that Delta made outside of the COC, but the Contract of Carriage bars that attempt as well. It is a fully integrated contract, containing a merger clause providing that it "represents the entire agreement between the parties relating to transportation by [Delta], and shall supersede all prior representations, understandings or agreements pertaining thereto, either oral or written. No other covenants, warranties, undertakings or understandings may be implied, in law or in equity." *Id.*, Rule 24. Basic principles of contract law foreclose Plaintiffs' attempt to supplement the integrated Contract of Carriage with supposed obligations that do not appear in it and conflict with its unambiguous terms.

1

The Airline Deregulation Act ("ADA") bolsters that conclusion. In the ADA, Congress sought to insulate air carriers from state regulation by preempting any state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). Because of the ADA, Plaintiffs could not directly assert the false advertising claim they clearly wanted to bring. Their complaint is full of accusations that Delta engages in "unfair" business practices by making "misleading" representations about its window seats (*e.g.*, Ex. 5, First Amended Complaint ("FAC") ¶¶ 1, 6, 40, 43-52, 53)—allegations that have nothing to do with breach of contract. But the ADA would unquestionably preempt a false advertising claim, *Morales v. Trans World Airlines*, 504 U.S. 374, 390-91 (1992), so Plaintiffs reconstitute their claims as contractual, hoping to invoke the ADA's narrow exception for claims "seeking recovery solely for [an] airline's breach of its own, self-imposed undertakings," *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995). To qualify for that exception, however, a plaintiff must sue to enforce only the precise terms of "the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. To avoid preemption, therefore, Plaintiffs must seek only to enforce obligations that appear within the four corners of Delta's Contract of Carriage. Because Plaintiffs do not and cannot allege that Delta breached any obligation within the four corners of the contract, and indeed the contract specifically disclaims the alleged guarantee of a seat assignment, Plaintiffs cannot state any of their claims. *E.g.*, *Pena v. British Airways, PLC (UK)*, 2020 WL 3989055, at *5-6 (E.D.N.Y. Mar. 30, 2020).

## BACKGROUND

### A.    Delta's Operations and Ticket Sales

Delta operates one of the largest airline networks in the world. FAC ¶ 12. Delta's fleet includes approximately 1,000 aircraft, which carry over 200 million passengers annually to and from hundreds of destinations worldwide. *Id.* Delta operates more than a dozen different mainline

2

aircraft types. *See id.* ¶ 31.[1] While Delta schedules flights more than a year in advance from the scheduled flight date with particular aircraft types intended, Delta cannot guarantee that the expected aircraft type will be available as scheduled, so its Contract of Carriage expressly provides that its "published schedules, flight times, aircraft types, *seat assignments, and similar details reflected in the ticket or Delta's published schedules are not guaranteed and form no part of this contract.*" Ex. 1, COC Rule 2 (emphasis added). The COC also specifies that "Delta is not responsible or liable for . . . changing seat assignments." *Id.* Put simply, Delta does not offer tickets or contracts to customers that guarantee particular seats.

Instead, when customers purchase tickets with Delta, they purchase particular fare classes, each of which provides a variety of different benefits. FAC ¶ 19. For example, Delta's "Main Basic" fare generally offers the lowest fares but lacks many of the benefits previously bundled in the typical ticket, including the ability to select a seat assignment, frequent flyer miles, upgrades based upon frequent flyer status, priority boarding (which tends to correlate to overhead stowage availability on full flights), and the absence of change fees if the customer seeks to make a change after initial purchase.[2] *Id.* Delta's "Main Classic" fare provides, among other benefits, priority boarding, the ability to earn SkyMiles, and the potential for upgrades.[3] *Id.* "Main Extra," meanwhile, provides even more benefits, including fully refundable fares with changes allowed, more SkyMiles, earlier boarding than Main Classic, and higher upgrade priority. *Id.* While

---

[1] Plaintiffs allege that Delta operates 16 different aircraft types, but the complexity of Delta's fleet is even greater than alleged. Delta operates 24 different configurations in its mainline operations and an additional ten different configurations in its regional jet operations. *See* Delta Air Lines, *Our Aircraft*, https://www.delta.com/us/en/aircraft/overview.

[2] Plaintiffs allege that Delta restricts Main Basic from making seat selections "[t]o induce passengers to buy a higher-class ticket." FAC ¶ 19. Actually, the advent of Basic Economy fares grew out of competition with low-cost carriers that offered lower fares with minimal benefits. Until very recently, for example, Southwest Airlines was known for not having seat assignments. Customers boarded in broad categories and could select any open seat upon boarding. *See* https://www.statesman.com/story/business/travel/2025/07/24/first-come-first-served-seats-ending-southwest-airlines-flight-book/85356530007/.

[3] Plaintiffs' screenshot lists only some of the benefits offered in each fare class. As can be seen in the screenshot, if a customer clicks on the "View All Features" hyperlink, all of the additional benefits or restrictions applicable to each fare class are listed.

passengers who purchase Main Classic or Main Extra fare classes can select seats when booking, Main Basic customers cannot. Regardless, while Delta tries to accommodate seat selection when possible, the inherent uncertainty of flights and aircraft means that seat selection is not guaranteed for any customer, and the COC therefore expressly provides that seat selection is *not* part of the parties' contract. Ex. 1, COC Rule 2.

Plaintiffs' assertion that Delta "sell[s] Windowless 'Window' Seats for a premium" (FAC ¶ 6) is false: Delta does *not* charge extra for any window seat, and none of the evidence Plaintiffs include in their complaint suggests otherwise. Any customer who purchases a fare class with seat selection as one of the benefits may select from available seats, regardless whether it is a window, middle, or aisle seat. As Plaintiffs' screenshots reflect, Delta offers "Preferred Seating" for an additional fee based on the seat row's location within the aircraft, so that certain aisle and window seats toward the front of an aircraft may be selected for an additional fee whereas seats farther back may be selected without the additional fee. *See id.* ¶¶ 19-22, 36. For Preferred Seating, the additional fee is the same for aisle and window seats in the same row. In no instance does Delta charge more for a window seat than for an aisle seat in the same row.

### B.      Plaintiffs' Allegations

Plaintiffs are four Delta passengers who claim to be unsatisfied with their seats on Delta flights. FAC ¶¶ 8-11. Plaintiffs allege that they purchased tickets for what they believed were "window" seats but that, on some legs of their flights, did not have windows. *Id.* Plaintiffs allege that Delta's website, mobile application, and marketing materials at times represent that certain seats have windows when they do not. *Id.* ¶¶ 33-42. Plaintiffs allege that they believed that their seats had windows, but they do not allege that they saw any of the images, screens, or prompts that they cite as items that generic passengers *might* see when booking flights. *Id.*

4

Plaintiffs assert that this is a case about Delta selling "'upgrades' to seats that Delta promises have windows" but that lack windows. FAC ¶ 1. Yet none of the Plaintiffs alleges that they purchased anything other than a fare class, and none alleges that they purchased or paid Delta any consideration for Preferred Seating—let alone *for an upgrade to a particular seat*. Plaintiff Roberts alleges only that she paid fees for a credit card issued by a third party, which she suggests allows her to select a seat on her flights. *Id.* ¶ 10. Plaintiff Bernardo alleges only that he purchased a Main Classic fare, which enabled him to select a seat—but that seat was not guaranteed, and he does not identify where Delta supposedly guaranteed him a seat with a "window." *Id.* ¶ 8. Plaintiffs Meyer and Valentine do not allege any facts about their fare classes or tickets other than conclusory generalities. *Id.* ¶ 9 (alleging Meyer "remitted . . . additional cash" without any facts); *id.* ¶ 11 (alleging Valentine "remitted additional consideration in the form of cash"). In sum, no named Plaintiff alleges he or she paid a specific amount for a particular seat or that Delta guaranteed that specific seat in exchange for the additional amount.[4]

There are any number of reasons why a passenger may choose to purchase particular fare classes or Preferred Seating—Delta's different fare classes provide a wide variety of different benefits. As the screenshots in Plaintiffs' complaint make clear, the benefits of the "Main Classic" and "Main Extra" fare classes include earlier boarding, upgrade eligibility, and MQDs (Medallion Qualification Dollars, related to frequent flyer status). *Id.* ¶¶ 19-20. It is thus not surprising that none of Plaintiffs' screenshots suggests that any Delta fare class or upgrade guarantees an absolute right to sit in a window seat. *E.g.*, *id.* ¶ 37 (allowing passengers to select a "preference" for aisle, middle, or window seats while cautioning that "[s]eats will be assigned based on availability").

---

[4] If this case proceeds past the motion to dismiss, discovery will establish that each Plaintiff paid only for a fare class, not for an upgrade to any particular seat. Regardless, even if each Plaintiff alleges that they paid more, such as paying for Main Cabin Classic instead of Basic Economy, because they specifically wanted the right to select a particular seat, Delta's COC disclaimed the right to a particular seat. Ex. 1, COC Rule 2.

5

Likewise, Preferred Seating places the passenger in a more desirable row, for a faster exit from the plane, but no Plaintiff alleges that he or she purchased Preferred Seating.

### C.    Delta's Contract of Carriage

Although Plaintiffs repeatedly accuse Delta of "misleading" and "unfair" business practices (*e.g.*, FAC ¶¶ 6, 45, 53), they purport to assert only contract-based or quasi-contract claims: one claim for breach of contract, one claim for breach of the implied covenant of good faith and fair dealing, and one claim for promissory estoppel. FAC ¶¶ 71-86.

Plaintiffs do not, however, identify any contractual provision requiring Delta to provide window seats or to provide any particular seat. The contract governing Delta's relationship with its passengers is the Contract of Carriage.[5] The "terms of [the] contract . . . are set forth" in a passenger's "Ticket," Delta's "Conditions of Carriage," and Delta's "published fare rules and regulations." Ex. 1, COC Rule 1(A). Taken together, those documents "represent[] the entire agreement between the parties relating to transportation by [Delta], and shall supersede all prior representations, understandings or agreements pertaining thereto, either oral or written. No other covenants, warranties, undertakings or understandings may be implied, in law or in equity." *Id.*, Rule 24.

Under the COC, the "Ticket" is the document that "entitles you to transportation only between points of origin and destination via the ticketed routing." Ex. 1, COC Rule 12(A). The COC separately defines an "E-Ticket" as "*the record of agreement* maintained and processed within the Carrier's electronic reservation system." *Id.*, Rule 12(F) (emphasis added). The COC

---

[5] Plaintiffs incorporate and rely on the Contract of Carriage in their complaint. FAC ¶ 55. Plaintiffs' allegations involve trips booked or flown between January 2025 and September 2025. Four versions of the Contract of Carriage were operative during this time, but the relevant provisions remained the same across all four versions. *See* Ex. 1 (COC dated May 21, 2025); Ex. 2 (COC dated May 15, 2025); Ex. 3 (COC dated January 1, 2022); Ex. 4 (COC dated October 28, 2024). Because the relevant provisions are consistent, this brief cites Ex. 1 when citing the COC.

does not purport to define the "Ticket" to include any seat selection screens or other "dynamic page[s]" that Delta allows customers to visit when booking flights or reviewing flight information. *Contra* FAC ¶¶ 59-60. Plaintiffs fail to identify any document or communication that grants them a window seat (or any particular seat). Plaintiffs do not allege what *their* Tickets said, and they identify nothing in *any* Delta Ticket that purports to eliminate the express contractual agreement that "seat assignments . . . are not guaranteed and form no part of this contract." Ex. 1, COC Rule 2. Nor do Plaintiffs identify any portion of their Tickets purportedly granting them the right to a window seat. *See, e.g.*, FAC ¶¶ 8-12. Plaintiffs allege that they *believed* that their seats had windows, apparently based on the fact that they selected seats adjacent to the plane wall. *See id.* But none of the Plaintiffs can identify any email, app notification, or other document that designated *their* seats as "window" seats.

Regardless, Delta's Contract of Carriage expressly provides that "seat assignments[] and similar details reflected in the ticket . . . are not guaranteed and form no part of this contract." Ex. 1, COC Rule 2. As a result, no Delta passenger is guaranteed any particular seat on an aircraft even if they select that seat before travel, and even if the seat is "reflected in the[ir] ticket." *Id.*

There is a very rational reason for Rule 2. The inherent nature of airline operations prevents airlines from promising or guaranteeing their schedules or seat assignments. For example, Delta's operational needs may require Delta to "substitute alternate Carriers or aircraft" (Ex. 1, COC Rule 2), so the aircraft actually used for a flight may be different and have different seating arrangements than the aircraft listed at the time of purchase. Air travel also is subject to innumerable vagaries that are outside the airline's control. Weather can close airports or subject airlines to necessary, safety-required delays. Airplanes are expensive, complex machines, and, as with all machines, mechanical failures occur on a regular basis. Airlines cannot stock every replacement

7

part or have substitute aircraft available at every airport where Delta operates to swap out when a mechanical failure occurs. Consequently, delays and cancelations are a necessary aspect of air travel, and Delta cannot guarantee its schedules. If it were to do so, plaintiffs would sue Delta for breach of contract every time its flights did not operate exactly on time.

Delta operates nearly 1,000 aircraft in 34 different configurations. When an aircraft incurs a mechanical failure, Delta may substitute an aircraft with a different seat configuration than the original aircraft. For example, the Airbus 319-100 has 132 seats in three cabin sections (First Class, Comfort, and Main Cabin). *See* Delta Air Lines, *Airbus A319-100 (319)*, https://www.delta.com/us/en/aircraft/airbus/a319. There are three seats on each side of the aisle in the Comfort Plus and Main Cabin sections. *Id.* The Airbus 220-300 has a similar 130 seats with the same three cabin sections; however, there are only two seats on one side of the aisle and three seats on the other side. *See* Delta Air Lines, *Airbus A220-300 (223)*, https://www.delta.com/us/en/aircraft/airbus/a220-300. If Delta needs to substitute an A220-300 in the place of an A319-100, there are no middle seats on one side of the aircraft. Every customer who selected a middle seat on the aircraft's left side could not be accommodated with the seat they selected because the substituted aircraft does not have such seats.

For these reasons, Delta cannot promise a particular seat assignment, or else customers would sue Delta every time an aircraft substitution takes place and a customer is seated in a different seat than the one the customer selected. Rule 2 of Delta's COC is both understandable and necessary given these aspects of air travel. In light of these realities, the Contract of Carriage also provides that "Delta may . . . change seat assignments . . . as required by its operations in Delta's sole discretion. Delta's sole liability in the event of such changes is set forth in Rule 22." *Id.*

Rule 22, in turn, sets forth Delta's refund procedures. For nonrefundable tickets—which are "[m]ost tickets issued by Delta"—"Delta will not refund any portion of a fare" unless "required by law or expressly set forth in the Contract of Carriage." Ex. 1, COC Rule 22(B)(1). For "fully refundable" tickets, "Delta will issue a refund of any unused refundable portion of [the] ticket at [the passenger's] request." *Id.*, Rule 22(B)(2). Refunds are subject to express time limits. *Id.*, Rule 22(C).

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (cleaned up). Preemption under the ADA is a question of law that may be resolved on a motion to dismiss. *Pena*, 2020 WL 3989055, at *4; *Dogbe v. Delta Air Lines, Inc.*, 969 F. Supp. 2d 261, 276 & n.8 (E.D.N.Y. 2013).

When considering a Rule 12 motion, a court may consider the complaint's allegations as well as any documents that the complaint incorporates by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A document is incorporated by reference when a complaint makes a "clear, definite and substantial reference to the document[]." *Khatskevich v. Shapiro*, 2025 WL 833872, at *5 (S.D.N.Y. Mar. 17, 2025). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers*, 282 F.3d at 153. Under this rule, the Court should consider Delta's Contract of Carriage. Plaintiffs' claims are expressly based on "Delta's standard terms of carriage," and the Complaint purports to describe that contract in detail. *E.g.*, FAC ¶¶ 55-60. The complaint thus incorporates the Contract of Carriage by reference and necessarily relies on its terms. *Hekmat v. TSA*, 247 F. Supp. 3d 427, 434

9

n.2 (S.D.N.Y. 2017); *see also Shrem v. Sw. Airlines Co.*, 2016 WL 4170462, at \*2 (N.D. Cal. Aug. 8, 2016) (taking judicial notice of airline contract of carriage for purposes of motion to dismiss).

## ARGUMENT

### I.    Plaintiffs Fail to State a Non-Preempted Claim for Breach of Contract.

Attempting to avoid preemption under the ADA, Plaintiffs characterize their claims as contract-based. But the ADA's exception for "certain breach of contract claims" is "narrow." *Breitling U.S.A., Inc. v. Fed. Exp. Corp.*, 45 F. Supp. 2d 179, 184 (D. Conn. 1999); *see also Pena*, 2020 WL 3989055, at \*5 ("Breach of contract claims are generally pre-empted by the ADA" unless the claim falls within "the *Wolens* exception"). "In considering whether a breach of contract action survives ADA preemption, a reviewing court is restricted to the actual terms of the party's bargain, 'with no enlargement or enhancement based on state laws or policies external to the agreement.'" *Breitling*, 45 F. Supp. 2d at 184 (quoting *Wolens*, 513 U.S. at 233). Plaintiffs thus must plead their "breach of contract" claim based solely on the specific terms of his actual contract with Delta. They may not ask the Court to supplement or modify those terms with requirements imposed from outside the four corners of that actual agreement. *Id.*; *Pena*, 2020 WL 3989055, at \*5-6; *Hekmat*, 247 F. Supp. 3d at 433-34.

Plaintiffs, however, do not identify any provision in their actual Contract of Carriage with Delta that required Delta to provide them with window seats. Nor could they, since the Contract of Carriage expressly provides that "seat assignments[] . . . form no part of this contract." Ex. 1, COC Rule 2. Plaintiffs contend that Delta's "Tickets" contain contractual guarantees of window seats incorporated into the Contract of Carriage, but the COC's disclaimer bars that argument as well. And in all events, none of the Plaintiffs describe *their* Tickets or identify any contractual guarantees contained in those tickets, much less a guarantee of window seats. Because Plaintiffs do not and cannot identify any provision of the Contract of Carriage that Delta allegedly breached,

their claim should be dismissed. *Pena*, 2020 WL 3989055, at \*5-6; *Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 407 (S.D.N.Y. 2015); *Fondo v. Delta Airlines, Inc.*, 2001 WL 604039, at \*3 (S.D.N.Y May 31, 2001).

### A.      Plaintiffs plead no breach of Delta's actual contractual obligations.

The Court should dismiss Plaintiffs' claim for breach of contract because they do not identify any actual contractual provision that Delta breached. The contract that governs the relationship between an airline and its passengers is the airline's Contract of Carriage. FAC ¶ 55; *Pena*, 2020 WL 3989055, at \*6; *Hekmat*, 247 F. Supp. 3d at 434; *Abdel-Karim*, 116 F. Supp. 3d at 404; *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 298 (E.D.N.Y. 2013).[6] The Contract of Carriage is governed by Georgia law (Ex., 1, COC Rule 24), and to plead a claim for breach of contract under Georgia law, Plaintiffs must identify the contractual provision that Delta allegedly breached. *Estate of Bass v. Regions Bank*, Inc., 947 F.3d 1352, 1358-59 (11th Cir. 2020); *see also Harrington v. Delta Air Lines, Inc.*, 2006 WL 1581752, at \*4-5 (D. Mass. Feb. 21, 2006) (dismissing contract claim because "[a]irline tickets and contracts of carriage are not difficult to come by," but plaintiff did not submit or identify specific breached provision). But Plaintiffs do not allege that Delta breached any provision of the Contract of Carriage—or even identify the provision purportedly at issue. Nor could Plaintiffs do so, since the Contract of Carriage expressly disclaims any guarantee of window seats or other seat assignments. The Contract of Carriage expressly provides that "seat assignments, and similar details reflected in the ticket . . . form no part of this contract." Ex. 1, COC Rule 2.

---

[6] *Accord Bugarin v. All Nippon Airways Co.*, 513 F. Supp. 3d 1172, 1191 (N.D. Cal. 2021); *Pica v. Delta Air Lines, Inc.*, 2019 WL 1598761, at \*4-5 (C.D. Cal. Feb. 14, 2019); *Schultz v. United Airlines, Inc.*, 797 F. Supp. 2d 1103, 1106-07 (W.D. Wash. 2011); *Leonard v. Northwest Airlines, Inc.*, 605 N.W.2d 425, 431 (Minn. Ct. App. 2000); *Boon Ins. Agency, Inc. v. Am. Airlines, Inc.*, 17 S.W.3d 52, 55, 58 (Tex. Ct. App. 2000); *Blackner v. Continental Airlines, Inc.*, 311 N.J. Super. 10, 12 n.1 (App. Div. 1998).

Plaintiffs cannot avoid that disclaimer by relying on the alleged terms of their Delta "Tickets." For one thing, Plaintiffs do not allege any facts about *their* Tickets. Plaintiffs make conclusory assertions about Delta's ticketing process generally—without, tellingly, including any screenshots or specific descriptions of any Ticket. FAC ¶¶ 54-62. And no Plaintiff describes any representation in *their* Tickets that could constitute a contractual guarantee that they would receive a window seat. Without such Plaintiff-specific allegations, Plaintiffs cannot plead that Delta contractually guaranteed *them* window seats. *See Bass*, 947 F.3d at 1358-59.

Plaintiffs' suggestion that their contracts include a window seat guarantee because the court should interpret the "Ticket" to include every alleged "representation[] Delta made at the time of booking through its 'electronic reservation system'" (FAC ¶ 59) fares no better. For starters, Plaintiffs do not allege what *they* reviewed during the booking process. More fundamentally, alleged statements contained in the booking process—such as the alleged seat maps Plaintiffs cite (FAC ¶ 36)—cannot be the "Ticket" referenced in the COC because they are not the documents that "entitle[] [passengers] to transportation" between points of origin and destination. Ex. 1, COC Rule 12(A). Nor do such statements constitute the "E-Ticket," as they are not "the record of agreement" between the parties. *Id.*, Rule 12(F).

Moreover, under the ADA, a plaintiff may sue an airline only with respect to commitments that an airline "*explicitly* incorporates into its contract." *Kruger*, 976 F. Supp. 2d at 299 (emphasis added). Georgia law independently provides that "[i]ncorporation by reference into a written contract requires '*specific reference* and identification' to the incorporated document." *Spencer v. Delta Air Lines, Inc.*, 2023 WL 7312966, at *4 (C.D. Cal. Oct. 2, 2023) (quoting *Bowman v. Walnut Mountain Prop. Owners' Ass'n*, 251 Ga. App. 91, 95 (2001)). Plaintiffs, however, never identify anything "in the COC" or any Ticket that "evinces any intent on the part of [Delta] to

12

adopt" seat maps or any other aspect of the booking process "as contractual obligations." *Pena*, 2020 WL 3989055, at \*6; *see Volodarskiy v. Delta Air Lines, Inc.*, 2012 WL 5342709, at \*2-5 (N.D. Ill. Oct. 29, 2012) (finding Delta's COC did not "incorporate documents posted elsewhere on Delta's website" because "[t]he intent to incorporate another document into a contract must be clear and specific"). To the contrary, the Contract of Carriage is explicit that any statements about window seats from Delta's website, mobile application, or marketing materials are *not* part of Delta's contract with passengers. As explained, the Contract of Carriage disclaims any contractual obligation related to "seat assignments" (Ex. 1, COC Rule 2) and forbids any attempt to impose additional "covenants, warranties, undertakings or understandings" through external "representations, understandings or agreements" (*id.*, Rule 24).[7]

Even if Plaintiffs had alleged the terms of their Tickets and it were possible for the "Ticket" to include statements made during the booking process, the Contract of Carriage would *still* preclude interpreting those Tickets as containing contractual guarantees of window seats. It is true that the Contract of Carriage incorporates a passenger's Ticket. Ex. 1, COC Rule 1(A). But Rule 2's disclaimer expressly applies to that entire contract, *including* the Ticket. *Id.*, Rule 2. Rule 2 encompasses "this contract," meaning the entire contract comprising the Ticket, Conditions of Carriage, and fare rules. *Id.*, Rule 1(A), Rule 2. Even more explicitly, Rule 2 disclaims any guarantee of "seat assignments, and similar details *reflected in the ticket*." *Id.* (emphasis added).

---

[7] For the same reason, Plaintiffs cannot state a claim by contending that Delta breached separate agreements supposedly created by Delta's website, marketing, or other alleged statements external to the contract. *E.g.*, FAC ¶¶ 1-2, 8-11, 34-39. Where, as here, an "agreement is complete and contains no ambiguity," a plaintiff may not submit "[e]vidence extrinsic to the agreement . . . for the purpose of varying the agreement's terms." *Fondo*, 2001 WL 604039, at \*3; *accord Crooke v. Gilden*, 262 Ga. 122, 122 (1992). Accordingly, Plaintiffs "cannot argue that they relied upon representations other than those contained in the contract." *Fabian v. Pontikakis*, 327 Ga. App. 392, 396 (2014) (quotation marks omitted); *see also Scorza v. Delta Airlines, Inc.*, 2018 WL 6252538, at \*3 (W.D. Texas Apr. 24, 2018) (holding email to plaintiff was "not part of the contract formed by the airfare purchase"); *Schultz*, 797 F. Supp. 2d at 1107 (holding "precatory" language on website could not create a "self-imposed contractual obligation").

That is an unambiguous statement that, even if a particular "seat assignment[]" is "reflected in the ticket," that assignment is *not* contractually guaranteed. *Id.*

Given that disclaimer's unambiguity, Plaintiffs have tried to argue that "seat assignments" somehow does not cover their complaint about not receiving window seats because Rule 2 only applies when Delta *changes* a passenger's seat. Dkt. 18 at 2. That makes no sense. Plaintiffs allege that they were contractually entitled to window seats. Under their interpretation of Rule 2, however, Delta would *not* have breached that alleged guarantee by moving them from window seats to middle or aisle seats, even though such a change would have equally denied Plaintiffs the window seats to which they claim they were contractually entitled. Plaintiffs allege that they purchased window seats but did not receive window seats, which is plainly a complaint about "seat assignments."

Plaintiffs' convoluted theory that Rule 2's disclaimer of a guaranteed seat assignment is overridden by Delta's "electronic reservation system" (FAC ¶ 59) produces nonsensical results when Rule 2's other language is considered. If, as Plaintiffs contend, every representation about a flight contained in Delta's booking process constitutes a contractual guarantee, then Delta would also contractually guarantee (among other things) the dates and times of every flight. And if, as Plaintiffs contend, the booking process overrides Rule 2's unambiguous language that seat assignments form "no part" of the parties' contract, then it would also override Rule 2's unambiguous language that "published schedules" and "flight times" are not part of the contract. Ex. 1, COC Rule 2. If the Court adopts Plaintiffs' theory, therefore, every canceled or delayed flight would invite a torrent of lawsuits claiming Delta breached its contractual promise that the flight would occur at a specific date and time. Such an interpretation is untenable because air carriers cannot guarantee they will operate absolutely on schedule—that is the entire point of

14

Rule 2. That interpretation could also threaten passenger safety by encouraging air carriers to operate aircraft, flights, or routes when safety concerns might warrant a delay or equipment change but doing so would expose the carrier to breach-of-contract claims.

Nor, contrary to Plaintiffs' argument, does Delta's argument deny passengers a remedy for a denial of "ancillary services." Dkt. 18 at 2. Even accepting Plaintiffs' erroneous position that the presence of a window constitutes such a service,[8] the Contract of Carriage would provide a remedy for a denial of that service—Plaintiffs just did not try to avail themselves of that remedy before rushing into court. The Contract of Carriage provides that "Delta's sole liability" when it "change[s] seat assignments" is the refund procedure "set forth in Rule 22." Ex. 1, COC Rule 2; *see id.*, Rule 22. Accordingly, the sole contractual remedy for a passenger who believes they have been denied a ticketed service is to request a refund from Delta under Rule 22, and Delta could breach the Contract of Carriage only by failing to provide a refund when one is contractually required. *Dusko v. Delta Air Lines, Inc.*, 2022 WL 22927618, at *6 (N.D. Ga. Mar. 2, 2022). Here, however, Plaintiffs do not allege that their tickets were refundable, that they were entitled to refunds under Rule 22, or that they requested refunds consistent with Rule 22's requirements.[9] In these circumstances, as numerous courts have held, Plaintiffs cannot plead that Delta breached the Contract of Carriage. *E.g.*, *Martin v. United Airlines, Inc.*, 727 F. App'x 459, 462-64 (10th Cir. 2018); *Subramanyam v. KLM Royal Dutch Airlines*, 2021 WL 1592664, at *6-8 (E.D. Mich. Apr. 23, 2021); *Melnyk v. Polskie Linie Lotnicze Lot S.A.*, 2021 WL 3417949, at *5 (D.N.J. May 26,

---

[8] As explained above, passengers pay more for Preferred Seating in a particular area of the aircraft, not for window seats. Entitlement to a window seat is not among the benefits guaranteed by the increased Preferred Seating fare. Regardless, Plaintiffs do not allege that they paid for Preferred Seating.

[9] To the contrary, Plaintiff Anthony Bernardo alleges that he purchased "'Main' class tickets" (FAC ¶ 8), which are not refundable (*see* FAC ¶ 19 (screenshot disclosing that only "Main Extra" tickets are refundable)).

2021); *Bugarin*, 513 F. Supp. 3d at 1191-93; *Neft v. United Continental Holdings, Inc.*, 299 F. Supp. 3d 965, 975-76 (N.D. Ill. 2018).

> **B.      The ADA preempts any attempt to impose obligations that do not appear in the Contract of Carriage.**

The ADA also forecloses Plaintiffs' attempt to expand Delta's obligations beyond those to which it expressly agreed in the Contract of Carriage. The ADA preempts states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). And while the ADA does not preempt breach of contract claims based on an airline's "self-imposed undertakings," it does "confine[] courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 228, 233; *accord Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010). To "read into the Contract of Carriage additional obligations," as Plaintiffs seek to do by alleging that Delta violated contractual terms that Plaintiffs cannot even identify, "would be a direct circumvention of the broad pre-emptive sweep of the ADA." *Pica v. Delta Air Lines, Inc.*, 2019 WL 1598761, at *5 (C.D. Cal. Feb. 14, 2019); *accord Fudge v. Delta Air Lines, Inc.*, 753 F. Supp. 3d 987, 996 (C.D. Cal. 2024); *McGarry v. Delta Air Lines, Inc.*, 2019 WL 2558199, at *5-6 (C.D. Cal. June 18, 2019); *Watson v. United Airlines, Inc.*, 2017 WL 6060173, at *5-7 (D. Haw. 2017), *aff'd* 709 F. App'x 500 (9th Cir. 2018); *Joseph v. JetBlue Airways Corp.*, 2012 WL 1204070, at *6 (N.D.N.Y. Apr. 11, 2012).[10]

---

[10] *See also Bergman v. Alaska Airlines, Inc.*, 16 Wash. App. 2d 553, 561 (2021) (holding ADA preempted contract claim based on seat availability when contract "expressly provided that award space is limited and [airline] cannot ensure award seat availability"); *Leonard*, 605 N.W.2d at 431 (holding ADA preempted contract claims "unrelated to the contract of carriage"); *Boon*, 17 S.W.3d at 58 (holding ADA preempted contract claim that did not seek "to enforce the contract as written"); *Blackner*, 311 N.J. Super. at 13-14 (holding ADA preempted contract claim challenging a "surcharge" that contract of carriage "clearly authorize[d]").

16

The ADA preempts the additional obligations Plaintiffs seek to impose because they are "related to" Delta's "service" of providing seated air travel to passengers. 49 U.S.C. § 41713(b)(1).[11] The term "service" in the ADA "refers to the provision or anticipated provision of labor from the airline to its passengers," including "the actual transportation of passengers." *Air Transp. Ass'n of Am. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008). Plaintiffs acknowledge that "travel services" are the core of Delta's business, which Delta provides through "the sale of air transportation and related upgrades," including by allegedly "charg[ing] higher fares for particular seat locations." Compl. ¶ 10. There is no more fundamental airline "service" than the "purchase and sale[] of air transportation." *Pica v. Delta Air Lines, Inc.*, 2018 WL 5861362, at *8 (C.D. Cal. Sept. 18, 2018). For that reason, airlines' "ticketing" and "reservation . . . practices" are "services" under the ADA, *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336-37 (5th Cir. 1995), including practices related to "seat assignments," *Farash v. Continental Airlines, Inc.*, 574 F. Supp. 2d 356, 366 (S.D.N.Y. 2008); *Peterson v. Continental Airlines, Inc.*, 970 F. Supp. 246, 250 (S.D.N.Y. 1997); *Fernald v. Sw. Airlines Co.*, 2011 WL 13254382, at *3 (S.D. Cal. Sept. 28, 2011); *see also Costa v. Am. Airlines, Inc.*, 892 F. Supp. 237, 238 (C.D. Cal. 1995) (holding "airline's refusal to honor [a] request for a window seat" was "related to 'services'").

The obligations Plaintiffs seek to impose are also "related to" Delta's "price[s]," 49 U.S.C. § 41713(b)(1), specifically the fares that Delta charges for certain seats. Plaintiffs allege (falsely) that Delta "charges premiums for Windowless Window Seats." FAC ¶ 33. Plaintiffs also allege that passengers "are willing to pay extra for windows" and that they would not have "paid more for" their seats if they had known the seats did not have windows. *Id.* ¶¶ 5; *see also id.* ¶¶ 8-11. As

---

[11] Delta is unquestionably an "air carrier" under the ADA, defined as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(6); *see* FAC ¶ 12 ("Delta is a major commercial airline" that "operates ones of the largest airline networks in the world[.]").

17

those allegations suggest, "airlines routinely compete with regard to prices and priority seating" and "regularly charge higher prices for better seats, which is entirely consistent with the competitive free market the ADA seeks to promote." *Fernald*, 2011 WL 13254382, at *3. A challenge to such practices necessarily relates to airline prices under the ADA. *Id.*; *accord Galbut v. Am. Airlines, Inc.*, 27 F. Supp. 2d 146, 152-53 (E.D.N.Y. 1997).

Indeed, Plaintiffs' attempt to "add to the terms of [Delta's] contractual obligations on matters related to [prices] and services . . . is functionally indistinguishable from [an] unfair and deceptive trade practice claim," which the ADA would unquestionably preempt. *Joseph*, 2012 WL 1204070, at *6.[12] Plaintiffs accuse Delta of "deliberately" and "intentionally" engaging in "misleading" and "unfair" business practices. FAC ¶¶ 6, 7, 43, 45, 49, 63, 81. But those allegations have no relevance to a contract claim. They sound exclusively in false advertising and unfair business practices, areas over which the Department of Transportation has exclusive authority. 49 U.S.C. § 41712(a); 14 C.F.R. §§ 399.75, 399.79-399.89; *Morales*, 504 U.S. at 390-91; *Wolens*, 513 U.S. at 228 n.4; *Joseph*, 2012 WL 1204070, at *5-6; *see* Compl. ¶ 10. The Supreme Court and other courts have held that the ADA categorically preempts all false advertising or unfair practices claims based on an airline's representations about its services and prices. *E.g.*, *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014); *Wolens*, 513 U.S. at 228; *Morales*, 504 U.S. at 390-91; *Fernald*, 2011 WL 13254382, at *2; *De Jesus v. Am. Airlines, Inc.*, 532 F. Supp. 2d 345, 352 (D.P.R. 2007); *McLaughlin v. TWA Getaway Vacations, Inc.*, 979 F. Supp. 174, 175-76 (S.D.N.Y. 1997);

---

[12] *Cf. Martin v. DHL Exp. (USA), Inc.*, 580 F. Supp. 3d 66, 72 (D.N.J. 2022) (holding ADA preempted contract claim that was "more akin to a fraud or unjust enrichment claim"); *Breitling*, 45 F. Supp. 2d at 187 (holding ADA preempted fraud claim "disguised as [a] contract claim[]" (quotation marks omitted)).

*In re Hijacking of Pan Am. World Airways, Inc. Aircraft at Karachi Int'l Airport, Pakistan on Sept. 5, 1986*, 920 F. Supp. 408, 415 (S.D.N.Y. 1996).[13]

Accordingly, the ADA preempts any attempt by Plaintiffs to supplement their contracts, which contain no "window" requirement or even any provision that Plaintiffs can identify as having been violated, with obligations allegedly arising from representations about window seats. Because the ADA limits Plaintiffs to the four corners of the Contract of Carriage and Plaintiffs cannot allege that Delta violated any provision in the Contract of Carriage, Plaintiffs cannot state a claim for breach of contract. *E.g.*, *Pena*, 2020 WL 3989055, at *5-6.

### C.    Plaintiff Roberts' Claim Fails for Independent Reasons

To state a claim for relief for breach of contract under Georgia law, "Plaintiffs must plead three elements: the 'subject matter of the contract, consideration, and mutual assent by all parties to all contract terms.'" *Ingram v. CitiMortgage, Inc.*, 2013 WL 12098986, at *7 (N.D. Ga. June 18, 2013), *report and recommendation adopted*, 2013 WL 12098822 (N.D. Ga. Aug. 26, 2013).

Here, Plaintiff Roberts does not even allege that she paid consideration to Delta for a window seat. To the contrary, she asserts that she booked her tickets using third-party "credit card benefits" and that she "incurs substantial costs for her Delta-affiliated credit card." FAC ¶ 10. But paying a third party for the right to use a credit card issued by that third party is not equivalent to paying consideration *to Delta* for any contractual promise, much less a promise to provide a window seat. For that additional reason, Plaintiff Roberts fails to plead the existence of a contract with Delta for a window seat, and the Court should dismiss her claim.

---

[13] The DOT's regulations ensure that "airlines [do] not have '*carte blanche* to lie and deceive consumers'" despite the ADA's preemption of private causes of action. *Wolens*, 513 U.S. at 224 (quoting *Morales*, 504 U.S. at 390-91).

**II.     Plaintiffs Fail to State a Non-Preempted Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails as a matter of both Georgia and federal law. Plaintiffs do not and cannot state a claim for breach of the implied covenant under Georgia law. And Plaintiffs cannot, consistent with the ADA, avoid the Contract of Carriage's express disclaimer of the implied covenant.

**A.     Plaintiffs' claim fails as a matter of Georgia law.**

Plaintiffs fail to state a claim for breach of the implied covenant under Georgia law. "Georgia law does not recognize [a] claim for breach of [the] implied covenant of good faith," so an alleged breach of the "implied covenant of good faith does not provide [an] independent basis of liability." *Cone Fin. Grp., Inc. v. Employers Ins. Co. of Wausau*, 476 F. App'x 834, 836 (11th Cir. 2012). "To prove a breach of the implied duty of good faith and fair dealing, a plaintiff must set forth facts showing a breach of an actual express term of an agreement." *Alcatraz Media, Inc. v. Medieval Times Ga., Inc.*, 2011 WL 13213913, at *13 (N.D. Ga. Mar. 30, 2011). Plaintiffs do not do so.

Rather than showing a breach of express terms of any agreement, Plaintiffs claim the implied covenant required Delta to provide Plaintiffs window seats, but the Contract of Carriage's express terms make clear that Delta had no such obligation. Ex. 1, COC Rule 2. Under Georgia law, Plaintiffs cannot use the implied covenant to impose contractual obligations that the Contract of Carriage expressly disclaims. *See Overlook Gardens Props., LLC v. Oriz, USA, LP*, 366 Ga. App. 820, 826 (2023) ("There can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." (cleaned up).) The ADA would also independently preempt any such attempt to impose such non-contractual obligations. *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 287-88 (2014); *Bajra v. Delta*

20

*Air Lines, Inc.*, 785 F. Supp. 3d 1289, 1313-14 (N.D. Ga. May 6, 2025); *Dusko*, 2022 WL 22927618, at *7-8.

**B.    The Contract of Carriage and ADA bar any implied covenant claim.**

Even if Plaintiffs could state a claim for breach of the implied covenant under Georgia law, the Contract of Carriage and ADA would bar that claim. The ADA preempts claims for breach of the implied covenant unless the governing state law "allow[s] people to disclaim the obligation of good faith." *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 287-88 (2014); *accord Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1065 (10th Cir. 2019). In an attempt to avoid preemption, Plaintiffs allege that, in Georgia, the covenant does not apply when a contract "expressly reserves complete discretion to the party from whom performance is required." FAC ¶ 79. Even if that were the only way to avoid the implied covenant under Georgia law, the Contract of Carriage grants Delta precisely such discretion by providing that "Delta may . . . change seat assignments . . . in Delta's sole discretion." Ex. 1, COC Rule 2.

Indeed, the Contract of Carriage *entirely disclaims* the implied covenant, as is Delta's right under *Ginsberg*. The COC's merger clause provides that "*[n]o other covenants*, warranties, undertakings or understandings may be implied, in law or in equity." Ex. 1, COC Rule 24 (emphasis added). That provision expressly disclaims the implied covenant. Plaintiffs' suggestion that such a disclaimer is not sufficient under Georgia law (FAC ¶ 79) fails under *Ginsberg*, which holds that the ADA forbids states from limiting an airline's ability to "specify that [an] agreement does not incorporate the covenant." 572 U.S. at 288. If a state imposes substantive limits on how or to what extent an airline may disclaim the covenant, then "the application of the implied covenant depends on state policy" and "cannot be viewed as simply an attempt to vindicate the parties' implicit understanding of the contract." *Id.* Such a restriction on disclaimers of the covenant would thus be preempted by the ADA.

21

That is likely why Georgia courts have held that Delta's disclaimer of the implied covenant *is* sufficient to bar a claim for breach of the covenant under Georgia law. *See Bajra*, 785 F. Supp. 3d at 1313-14 (holding COC's disclaimer barred claim for breach of implied contract under Georgia law); *Dusko*, 2022 WL 22927618, at *7-8 (same). This Court should do the same.

**III.    Plaintiffs Fail to State a Non-Preempted Claim for Promissory Estoppel.**

Finally, Plaintiffs do not and cannot state a claim for promissory estoppel. Under Georgia law, "the theory of promissory estoppel applies only in those cases when (1) no written agreement exists, (2) the written agreement is unenforceable for some reason, or (3) there was a promise that post-dated the agreement." *Blau v. Blau*, 368 Ga. App. 701, 706 (2023). Accordingly, "where a plaintiff seeks to enforce an underlying contract which is reduced to writing, promissory estoppel is not available." *Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1326 (11th Cir. 2005). Here, Plaintiffs seek to enforce their written contract with Delta, which was supported by bargained-for consideration. FAC ¶¶ 72-75. That precludes their claim for promissory estoppel. *Adkins*, 411 F.3d at 1326; *see Abadi v. Am. Airlines, Inc.*, 2024 WL 1346437, at *47 (S.D.N.Y. Mar. 29, 2024) (dismissing promissory estoppel claims when plaintiff had express contract with airlines).

Plaintiffs purport to assert promissory estoppel "[i]n the event the Court finds that Delta did not undertake contractual commitments to provide Plaintiffs with windows" (FAC ¶ 84), but that is a non sequitur. A holding or judgment that the Plaintiffs' contracts did not include a window-seat requirement is *not* a finding that no written agreements exist, that the written agreements are unenforceable or invalid, or that there were subsequent promises. *Contra Blau*, 368 Ga. App. at 706. Rather, it is a finding about what is contained in the parties' contracts—contracts that both sides agree exist and are enforceable. Because Plaintiffs admit the parties had contracts that Plaintiffs seek to enforce, which they do not allege are unenforceable, "promissory estoppel is not available." *Adkins*, 411 F.3d at 1326.

22

Regardless, the Contract of Carriage and ADA would bar any promissory estoppel claim. The Contract of Carriage expressly provides that that "seat assignments[] . . . are not guaranteed and form no part of this contract" (Ex. 1, COC Rule 2), and its merger clause forecloses Plaintiffs from asserting any other "representations, understandings or agreements" (*id.*, Rule 24). Where, as here, a contract "contains a merger clause, a party cannot argue they relied upon representations other than those contained in the contract." *Overlook Gardens*, 366 Ga. App. at 827; *see Tampa Bay Fin., Inc. v. Nordeen*, 272 Ga. App. 529, 533 (2005) (holding contract's merger clause foreclosed promissory estoppel claim). The ADA would also bar any attempt to enforce alleged promises that the Contract of Carriage expressly provides (in Rule 2) do not constitute any part of Delta's self-imposed undertakings. *Schneberger v. Air Evac EMS, Inc.*, 2017 WL 1026012, at *5 (W.D. Okla. Mar. 15, 2017); *Gleason v. United Airlines, Inc.*, 2015 WL 2448682, at *1-2 (E.D. Cal. May 20, 2015).

Plaintiffs have argued that they can sue to enforce post-contract promises (Dkt. 18 at 3), but they do not allege that Delta *made* any post-contract promises. Plaintiffs generally assert that Delta made its "promises . . . during the pre-purchase booking process and the post-purchase pre-flight ticketing process." FAC ¶ 85. But because Plaintiffs allege that Delta's ticketing process *creates* a contract, none of those alleged statements would be external or subsequent to the alleged contract Plaintiffs seek to enforce. Moreover, a vague and conclusory assertion that Delta made "promises" is not sufficient to state a claim. Plaintiffs do not actually identify *any* representation by Delta to Plaintiffs that promised them window seats outside of alleged representations that occurred before or during the ticketing process. *See id.* ¶¶ 8-11.

And even if Plaintiffs *had* alleged "subsequent" promises, those promises still could not support a promissory estoppel claim because they would "contradict[] an express provision of the

23

parties' prior written agreement." *Sampson v. Wash. Mut. Bank*, 2010 WL 11507028, at \*8-9 (N.D. Ga. Nov. 18, 2010). A promissory estoppel claim requires reasonable reliance, and Plaintiffs "could not, as a matter of law, rely upon any promises . . . that [are] contrary to the terms of" their written contract with Delta. *Tampa Bay Fin.*, 272 Ga. App. at 533. Because the Contract of Carriage expressly disclaims any representations about seat assignments (Ex. 1, COC Rule 2), Plaintiffs could not reasonably rely on any alleged "promises" about window seats, whenever they were made. *Id.*; *Sampson*, 2010 WL 11507028, at \*8-9. For another thing, "promissory estoppel does not apply to representations concerning the future, but to representations of past or present facts." *Adkins*, 411 F.3d at 1326. Plaintiffs allege that Delta promised "to provide seats with a 'window'" in the future. FAC ¶¶ 84-85. For these reasons as well, Plaintiffs do not and cannot state a claim for promissory estoppel.

## CONCLUSION

The Court should dismiss Plaintiffs' claims with prejudice.

DATED: December 9, 2025.

/s/ Matthew V.H. Noller
Matthew V.H. Noller (NY Bar No. 5288998)
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
mnoller@kslaw.com

Kenneth Fowler (NY Bar No. 5272109)
KING & SPALDING LLP
1290 Avenue of the Americas, 14th Floor
New York, NY 10104
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
kfowler@kslaw.com

*Counsel for Delta Air Lines, Inc.*

**ATTORNEY CERTIFICATION OF LOCAL RULE 7.1 COMPLIANCE**

I, Matthew Noller, an attorney duly admitted to practice law before courts of the State of New York, hereby certify that the foregoing Memorandum of Law complies with the word count limit set in Local Rule 7.1(c) because it contains 8,329 words, which is fewer than 8,750 words. In preparing this certification, I have relied on the word count of the word-processing system in connection with preparation of the document.

_s/ Matthew V.H. Noller_
Matthew V.H. Noller