# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

**Anthony Bernardo, Nicholas Meyer, Leah Roberts, and Justin Valentine,**

*individually and on behalf of all others similarly situated,*

Plaintiffs,

— *against* —

**Delta Air Lines, Inc.,**

Defendant.

No. 25-CV-4608 (RER) (SDE)

**First Amended Class Action Complaint**

**Jury Trial Demanded**

Anthony Bernardo, Nicholas Meyer, Leah Roberts, and Justin Valentine (collectively, "**Plaintiffs**"), individually and on behalf of all others similarly situated, file this First Amended Class Action Complaint against Defendant Delta Air Lines, Inc. ("**Delta**") and allege as follows:

## Introduction

1.      This class action seeks redress for Delta's unlawful practice of selling airline passengers "upgrades" to seats that Delta promises have windows, but that are actually next to a blank wall. Plaintiffs spent valuable consideration, on top of their base airfares, to obtain windows to improve their flight experiences. Delta consistently represented to Plaintiffs, both during and after the booking process, that their chosen seats had a window. Delta generated electronic ticket records— which Delta concedes are enforceable contracts—that expressly confirmed Plaintiffs purchased seats with a "window." Delta knew that Plaintiffs' chosen seats were actually next to blank walls, yet it proceeded with the transactions and accepted extra consideration for the "upgrades." By selling "window" seats only to provide windowless ones, Delta breached its contracts with Plaintiffs and the putative class members, who are entitled to compensatory damages for Delta's misconduct.

2.      When airline passengers book seats adjacent to the wall, they expect them to have a window. Delta represents the same, and enters contracts with its passengers that confirm the same. Delta's website and passenger interfaces exclusively refer to "window," "middle," and "aisle" seats. During the seat selection process on Delta's booking site, for example, Delta affirmatively identifies *every* wall-adjacent seat as having a "window." The post-purchase electronic ticket records that Delta generates and makes accessible to passengers do the same thing—and expressly memorialize Delta's contractual undertakings to provide windows to passengers who bought them.

3.      The majority of planes in Delta's fleet, however, have one or more exterior-row seats that are adjacent to a blank wall, or have severely misaligned windows that are not reasonably usable ("**Windowless Window Seat(s)**"). These seats exist for various reasons unique to each plane's design. For instance, Boeing 737s have air conditioning ducts that run through a side panel and prevent the installation of windows in certain rows.

4.      Notwithstanding, for many years, Delta has routinely sold passengers "upgrades" to Windowless Window Seats while promising that the seats do, in fact, have windows. Delta operates several hundred planes with Windowless Window Seats that make multiple flights every day. As a result, Delta has likely sold over a million Windowless Window Seats throughout the class period.

5.      A large proportion of airline passengers are willing to pay extra for windows. Many passengers have a fear of flying or experience anxiety, claustrophobia, or motion sickness, and windows provide greater comfort in an otherwise distressing environment. Parents purchase them with the hope they will captivate or distract antsy children. For many others, it is a special experience to see the world from 30,000 feet, or to watch a descent into LaGuardia. Whatever the motive for buying window seats, had Plaintiffs and the putative class members known they were buying Windowless Window Seats, they would not have selected them at all, much less paid more for them.

6.      Delta's practice is deliberate. It has long been aware of passenger complaints that its practice of selling Windowless Window Seats for a premium is harmful and unfair. Delta's own customer service representatives have referred to the practice as "misleading," and occasionally issue compensation or refunds to affected passengers. Tellingly, Delta's booking software has the capacity to affirmatively disclose Windowless Window Seats to passengers, and Delta employs that technology to call out irregularities with seats that have, for example, "limited recline" or "no floor storage." Yet, Delta declines to identify Windowless Window Seats, promises unwitting passengers that the seats do have a "window," and accepts substantial premiums for them.

7.      Consequently, Delta has routinely and systemically entered contracts to provide passengers with "window" seats in exchange for additional consideration, only to breach its obligations upon providing Windowless Window Seats. Through this action, Plaintiffs, on behalf of themselves and the class they seek to represent, seek compensatory damages in amounts to be determined at trial for Delta's serial and intentional wrongdoing.

## The Parties

8.      Plaintiff Anthony Bernardo is an individual person who resides on Long Island, New York. In January 2025, he purchased round-trip flights on Delta's website to take his wife and two sons on a family vacation to Las Vegas. He chose to book Delta's "Main" class tickets, rather than "Main Basic" class tickets, so that he could select seats in advance. He chose a window seat for his wife, which he hoped she would enjoy on their long flight from JFK. Unbeknownst to Bernardo, the seat he selected for his wife did not have a "window," as Delta represented, but was a Windowless Window Seat. After boarding their flight and taking their seats on June 5, 2025, Bernardo's wife began to feel claustrophobic and experienced a panic attack. She had not previously experienced panic attacks, which compounded the distress and concern that she and her family experienced.

— Page 3 —

Flight attendants noticed her distress and intervened to help by temporarily taking her to the back of the plane, keeping her company, and providing her with complimentary beverages to help calm her until she could return to her seat. Had Delta disclosed that the "window" seat Bernardo purchased for his wife had no window, he would not have selected that seat—much less would he have upgraded to Main class tickets for the privilege of doing so—and his wife and family would not have endured the stress of the panic attack that the Windowless Window Seat caused.

9.      Plaintiff Nicholas Meyer is an individual person who resides in Brooklyn, New York. On August 5, 2025, Meyer booked travel with Delta for August 16, 2025, to take him from LaGuardia to Orange County, California. His travel itinerary included a layover in Atlanta. For both legs of his trip, he specifically chose a window seat because he wanted to enjoy the view. He chose seat 32A for his flight to Atlanta, and seat 23F for his flight to Orange County. Meyer reasonably believed, based on Delta's representations and the seats' positions on the planes, that both seats would have a window, and he remitted additional consideration for that privilege in the form of additional cash. At no point did Delta indicate to Meyer that the purported "window" seat he selected might not have a window. On August 16, 2025, upon boarding his flight to Orange County, Meyer discovered that seat 23F was windowless. Meyer had no option but to spend the ensuing four-and-a-half-hour flight next to a blank wall. Indeed, Delta Flight 826, which uses a Boeing 757-200, never has a window in seat 23F. Had Delta disclosed that fact, rather than affirmatively indicate that the seat has a "window," Meyer would not have selected that seat, and would not have remitted additional consideration for it.

10.      Plaintiff Leah Roberts is an individual person who resides in Kentucky. She purchased a round-trip Delta flight from Louisville to Las Vegas to take a weekend trip in July 2025 with her husband. Her flight plan included an outgoing stopover in Atlanta, and an incoming

stopover in Minneapolis. For all four legs of her flight, she used Delta-affiliated credit card benefits to book what she specifically understood, based on Delta's representations during the booking process, were window seats. Roberts always books window seats, as she suffers from claustrophobia on flights, and windows help to alleviate that condition. Upon taking her seat in Atlanta for her flight to Las Vegas, however, she discovered that the "window" seat she selected was next to a blank wall. She promptly experienced a panic attack, and was forced to take medication to sedate herself. After arriving in Las Vegas, Roberts specifically reviewed her return trip ticket to ensure that she had in fact booked seats with windows. Thus, Roberts did not change her return trip seat assignments. But upon boarding her flight from Las Vegas to Minneapolis, Roberts discovered that she had once again been led to purchase a Windowless Window Seat. She was extremely frustrated with her faulty "upgrade," and complained about the situation to flight attendants and on social media. Roberts incurs substantial costs for her Delta-affiliated credit card, including by paying a substantial annual fee, and by forgoing alternative credit card programs that do not entail Delta benefits, but which otherwise offer superior rewards. In no circumstance would Roberts have knowingly paid for and used her rewards to book and use Windowless Window Seats.

11.     Plaintiff Justin Valentine is an individual person and career public servant who resides in Montana. In September 2025, he flew from Tampa, Florida to Great Falls, Montana, with layovers in Atlanta and Salt Lake City. He remitted additional consideration in the form of cash to ensure he would have a window for each leg of his flight. Valentine always tries to obtain window seats. He is an aviation enthusiast and licensed pilot who loves flying—so long as he can see outside. As a passenger, window seats give him a sense of joy and adventure. Valentine, however, also experiences anxiety and claustrophobia, and window seats help him to manage those conditions. Unbeknownst to Valentine, the window seats he believed he purchased for two legs of his trip were actually

Windowless Window Seats. He experienced significant claustrophobia on both such flights, and was forced to take an anti-anxiety medication. The experience caused his anxiety to spike, and triggered certain involuntary and uncomfortable tics. Valentine understood, based on information provided in his booking confirmation and ticket information, that he specifically booked seats with windows, and he would not have knowingly paid to book Windowless Window Seats.

12. Defendant Delta is a major commercial airline headquartered in Atlanta, Georgia. It is a public company that is incorporated in Delaware and listed on the New York Stock Exchange. Delta operates one of the largest airline networks in the world, and uses around 1000 owned or leased aircraft to fly travelers between hundreds of destinations across the world. In 2024, Delta provided transportation services to over 200 million travelers, and generated over $50 billion in revenue from its travel services, including the marketing and sale of air transportation and related upgrades through its website, mobile app, call centers, and third-party travel platforms.

## **Jurisdiction and Venue**

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because at least one member of the putative class is a citizen of a different state than Delta, there are more than 100 members of the class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

14. This Court has personal jurisdiction over Delta because it conducts substantial business in this District and engaged in the conduct at issue from and within this District, including by advertising and selling airline tickets and associated services to certain Plaintiffs and other class members in this District, and by operating aircraft that depart from and arrive in this District.

15. Venue is proper under 28 U.S.C. § 1391(b)(2) because this District is where a substantial part of the acts, omissions, and events giving rise to certain Plaintiffs' claims occurred.

## Factual Allegations

**I.    Delta Charges Extra Fees to Passengers Who Wish to Select A Seat**

16.    Delta passengers who wish to attain specific seats, such as window seats, must pay additional consideration on top of their standard flight fares. That additional consideration may take the form of cash, Delta frequent flyer credits, or fees and costs expended to participate in various Delta-affiliated rewards programs. The additional consideration is significant. For example, even a basic economy Delta passenger must often spend upwards of $45 to merely attain the ability to choose from a small subset of seats at the back of a plane.

17.    A large proportion of Delta passengers choose to pay such seat selection fees. According to a 2023 report published by an economist for the U.S. Department of Transportation, 37 percent of airline passengers on all U.S. carriers purchase advance seat selections. On information and belief, for premium carriers like Delta, the proportion of such travelers is substantially higher.

18.    Delta's fee structure for seat selections is discernible through its electronic booking interfaces. When purchasing travel from Delta, passengers must initially select a ticket class. Delta's ticket classes include, from the least costly to most costly, "Main Basic," "Main," "Comfort," "First," "Premium Select," and "One." The seating configurations on Delta's planes typically proceed in the same order, with the Main class seats at the back of the plane, and the highest-class seats at the front.

19.    To induce passengers to buy a higher-class ticket, Delta restricts Main Basic passengers from making any seat selections or from buying seat upgrades, both before and after a flight is purchased. Instead, Delta randomly assigns Main Basic passengers to low-desirability Main class seats after check-in. Thus, if Delta passengers wish to obtain specific seats, they must at least buy a Main class ticket. The increase in price from Main Basic to Main is often substantial, as reflected in the below exemplative screenshot from Delta's booking interface:



20.     When Delta passengers purchase Main tickets, they may select seats from a small subset of seats in the back of the Main class section. However, Delta also designates a substantial proportion of seats in the Main class section as "Main Preferred" seats, and requires Main passengers to remit additional consideration for them, as shown in the below exemplative screenshots:



21.     When Delta passengers book comparatively costly Comfort, First, Premium Select, or One tickets, they can choose any seat within their selected class section, or they can designate a standing preference for a "window seat" or an "aisle seat" and let Delta assign the seat for them.

22.     After booking an itinerary, passengers who did not book Main Basic tickets may also modify their tickets, including by changing to seats of equal or lesser value, or by purchasing a higher value seat through an additional transaction.

## II.    A Large Proportion of Delta Passengers Routinely Pay Extra for Windows

23.     Both during and after the flight booking process, Delta represents to passengers that its planes have three horizontal seat types, irrespective of the class: window, middle, and aisle seats.

24.     Passengers often have strong preferences against middle seats, and strong preferences between windows and aisles. For example, a 2013 *Harris Interactive* study found that the obtainment of a window or aisle seat is far and away the most important airline amenity for American flyers.

25.     Of the large proportion of airline passengers who pay to select seats, a strong majority prefer window seats. For instance, per a recent study conducted by the popular travel website *Upgraded Points*, two-thirds of passengers prefer window seats, and eight of the top ten seats that passengers most desire on a standard plane configuration have a window.

26.     Windows entail obvious benefits for airline passengers. Simply, it is a stunning experience to watch the world go by from 30,000 feet. For even the most jaded frequent flyer, watching a descent into a treasured place or exotic new destination can trigger visceral emotions, or build core memories of a trip that are well worth the upgrade fee.

27.     Windows also provide benefits that are less obvious, but important, for several subsets of passengers. For instance:

- Numerous passengers have conditions like generalized anxiety disorder or PTSD, and many others experience claustrophobia in confined spaces. Windows are often extremely important to such passengers, as they feel that the ability to look outside alleviates the often serious distress

that may be triggered by confined environments, and mitigates against the prospect that they will experience panic attacks or other adverse effects.

- Passengers who experience motion sickness buy seats with windows because they find that looking outside at fixed positions mitigates their symptoms.

- Many passengers who have a fear of flying purchase seats with windows because the ability to see outside gives them a greater sense of knowledge about, or "control" over, their flights.

- Windows can captivate, distract, or calm antsy children. Indeed, Delta publishes marketing materials that advise parents to buy children window seats.

- Passengers with seasonal affective disorder or depressive conditions buy seats with windows to get a burst of sunlight that is otherwise unavailable or unpleasant during certain seasons.

28.    Whatever the motivation, wide swathes of airline passengers intentionally purchase seats for the purpose of obtaining a window.

### III.    A Majority of Delta's Planes Have "Windowless Window Seats"

29.    Delta operates a fleet of almost 1,000 aircraft. A majority of planes in Delta's fleet have one or more exterior-row seats that do not have a usable window, but that are adjacent to a blank wall, or have severely misaligned windows that are not reasonably usable ("**Windowless Window Seat(s)**"). Windowless Window Seats generally look like the pictures below:

 

30.     One of Delta's competitors, Alaska Airlines, explains on its website that some Windowless Window Seats occur at "the spot where Boeing places the air conditioning riser ducts from the belly," and the "vertical ducts [] located behind the passenger compartment sidewall panels … prevent the installation of a window."

31.     On information and belief, the following models of planes in Delta's fleet have Windowless Window Seats: Airbus A319, Airbus A320, Airbus A321, Airbus A330-300, Boeing 717-200, Boeing 737-700, Boeing 737-800, Boeing 737-900ER, Boeing 757-200, Boeing 757-300, Boeing 767-300ER, Boeing 767-300ER, Boeing 767-400ER, Boeing 777-200ER/LR, Bombardier CRJ-900, and Embraer E-175.

32.     Windowless Window Seats are most often found in Delta's Comfort seats, Main Preferred seats, and Main seats. On certain models of Delta's planes, Windowless Window Seats are also found in Delta's premium class cabins.

## IV.     Delta Sells Windowless Window Seats to Passengers While Representing that the Seats Have Actual Windows

33.     Delta never discloses to passengers where Windowless Window Seats are located on its flights, nor does it disclose that such seats even exist. Instead, Delta charges premiums for Windowless Window Seats, and expressly promises unwitting passengers that they are, in fact, purchasing seats that have a "window."

34.     When passengers book travel through Delta's electronic booking interface, upon selecting a travel route and fare, they are presented with a virtual seat map option. Delta's electronic seat map explicitly designates Windowless Window Seats as "window" seats.

35.     On information and belief, Delta makes the same representations when passengers book flights through other vehicles, such as through airport ticket windows, customer service telephone lines, and through third-party booking sites.

36.    For instance, on information and belief, Delta's 737-900ER aircraft have a Windowless Window Seat at seat 15A. Yet, when passengers attempt to book seat 15A on a Delta 737-900ER, Delta's booking interface states that the seat has a "window." An example is reflected in the below screenshot:



37.    Delta also enables passengers to designate standing preferences to be assigned "window" or "aisle" seats for their ticket class to save time during booking. Delta offers similar options for passengers to request upgrades on booked flights. Screenshots of these options are below:




— Page 12 —

38.     Upon information and belief, Delta routinely seats passengers who designate "window" through these features in Windowless Window Seats.

39.     More broadly, Delta's marketing materials and customer interfaces similarly refer only to "window," "middle," and "aisle" seats, without disclosing the potential for Windowless Window Seats. As one example, Delta suggests on its website that any passengers traveling with infants should try to obtain a "window seat," which it says "is the preferred location for an approved child safety seat." Delta's website also recommends pairing a window seat with a Nortico Alvarihno Branco, which it describes as a "light and delicate wine, perfect for sipping from a window seat."

40.     Delta provides no means for passengers to verify whether the "window" seats they purchase through Delta's reservation systems actually include a window. Delta posts detailed configurations of every aircraft model in its fleet at www.delta.com/us/en/aircraft/overview, but those webpages do not detail window locations, and Delta otherwise does not publish information about aircraft configurations. In fact, on information and belief, Delta's customer service representatives have assured putative class members who requested advance confirmation that they were not booked in Windowless Window Seats that they had indeed booked seats with actual windows.

41.     Ultimately, in selecting a seat with a window and choosing to pay additional fees for it, passengers reasonably rely on Delta's representations and the seat maps it provides during the booking process. Delta necessarily leads passengers to conclude that the "window" seats they are buying will include a usable window. And after passengers unwittingly purchase Windowless Window Seats, they can review their tickets on Delta's booking interfaces and receive express confirmation that they did purchase a seat with a "window."

42.     Plaintiffs unwittingly purchased Windowless Window Seats from Delta while reasonably understanding they purchased seats with actual windows. Plaintiffs' understandings were

confirmed by, and memorialized in, the electronic ticket records Delta generated after Plaintiffs made their purchases. Had Plaintiffs and the putative class members known they were choosing Windowless Window Seats, they would not have selected those seats at all, nor paid extra consideration for them.

## V.    Delta's Sales Practice for Windowless Window Seats is Intentional

43.    Delta deliberately sells Windowless Window Seats to passengers while promising that the seats have actual windows, as evidenced by the facts that Delta has long been on notice of passenger complaints about this practice, offers compensation to certain passengers who complain, and chooses not to update its booking system to disclose the presence of Windowless Window Seats.

44.    For many years, travel bloggers and dissatisfied passengers have publicly posted their complaints about Delta's Windowless Window Seats. For example, on the popular social media website Reddit, the Delta page is chock full of complaints from passengers who felt duped into buying Windowless Window Seats. A few examples are reflected in the below screenshots:







45. Delta representatives, moreover, acknowledge in communications with dissatisfied passengers that its practice of selling Windowless Window Seats is "misleading." In tacit recognition of its contractual obligation to provide a window to Windowless Window Seat customers, Delta also offers refunds or compensation to certain passengers who submit complaints.

46. For instance, around September 22, 2025, a Delta customer care specialist issued a "refund" to a passenger who complained about her Windowless Window Seat, and returned the precise amount the passenger expended to upgrade her seat to the passenger's credit card. Similarly, in September 2025, a Delta care specialist issued compensation to a putative class member who purchased a Windowless Window Seat, and stated that, "[r]egarding the window seat issue, we understand how frustrating and misleading it must have been to pay for a window seat only to find

there was no window." Also in September 2025, a Delta care specialist issued compensation to another putative class member for a Windowless Window Seat and offered a "heartfelt apology," while noting that "[u]sing 14,500 miles for a Comfort window seat, only to find there was no window, must have been frustrating."

47. Likewise, in July 2025, another care specialist issued compensation to a different putative class member, and explained:

> Your decision to upgrade to the Comfort+ section for a more enjoyable journey is important to us, and we regret that your experience in seat 12F did not meet your expectations due to the absence of a window…. We're sincerely sorry to hear that your assigned window seat did not have a window, and that this caused discomfort during your flight. We understand how important seating preferences are to our passengers, especially for those who may experience claustrophobia, and regret that your expectation were not met.

Notably, that care specialist also explained that: "For future reference, you may check out this website for the actual configuration of each aircraft that we use for your flights: https://www.delta.com/us/en/aircraft/overview." However, as noted above, that webpage does not actually identify Delta's Windowless Window Seats.

48. Conversely, other Delta care specialists deny refunds by asserting that Windowless Window Seat passengers, essentially, got what they paid for. Throughout 2025, for example, Delta care specialists denied refunds to various putative class members on grounds that: (i) the Windowless Window Seat reflected a "fair purchase"; (ii) "our records indicate that you have flown in Main Cabin as planned," and thus "respectfully[,] an adjustment in the form of a refund isn't due"; (iii) "a refund could not be issued since you still used the Delta Comfort+ seat, even though it did not have a window"; and (iv) "we are unable to process a refund for tickets that have been fully flown" notwithstanding the "inconvenience regarding your son is expecting to have a window seat."

49. The deliberate nature of Delta's sales practice is further evidenced by the fact that Delta's booking software has the capacity to disclose to passengers where Windowless Window

Seats are located. Delta does not employ that feature, even though several of Delta's competitors affirmatively identify and warn their passengers about their own Windowless Window Seats.

50.     For example, American, Alaska, and RyanAir operate similar aircraft with Windowless Window Seats. However, when those airlines' passengers attempt to purchase these seats, the passenger is alerted that the seat has no window. Screenshots showing examples from American and Alaska are below:



51.     Delta's booking applications have the very same functionality. For example, Delta specifically alerts passengers when they attempt to book seats that have "Limited Recline" or "No Floor Storage." An exemplative screenshot showing such disclosures is below:



**52.** Delta, however, declines to employ this technical feature to identify Windowless Window Seats to its passengers. It instead promises and agrees to provide a "window," charges a premium for the seat, and then selectively compensates certain passengers who complain.

## VI. Delta Breached Its Contractual Commitments Upon Seating Plaintiffs in Windowless Window Seats

**53.** Delta's practice is not merely "misleading," but results in Delta's systemic breach of its contracts with passengers who purchase Windowless Window Seats.

**54.** The contracts between Delta and passengers are formed when Delta provides confirmation that passengers successfully completed the booking "checkout" process. The terms that become part of those contracts appear on the final "checkout" page of Delta's electronic booking interface, which itemizes the prices for the selected itinerary, identifies any purchased add-ons, and lists passenger seat assignments along with a pop-up link that expressly confirms that a Windowless Window Seat has a "window." Delta uses that same checkout information to generate post-purchase electronic ticket records. And the portions of those electronic ticket records that Delta makes accessible to passengers expressly confirm that Windowless Window Seat passengers did purchase, and are entitled to, a seat with a "window."

**55.** Delta's own construction of its passenger contracts confirms that the data in Delta's electronic ticket records constitute enforceable contractual obligations. Specifically, Delta asserts that all passengers who purchase its flights are bound to Delta's domestic or foreign "General Rules Tariffs," which contain Delta's "Conditions of Carriage" (the **"Carriage Rule(s)"**).[1]

---

[1] Delta purports to incorporate the Carriage Rules by reference through two differing sets of terms and conditions found at the bottom of Delta's "checkout" page, and at the bottom of receipts Delta sends to customers at booking confirmation. In relevant part, both sets of terms purport to incorporate the Carriage Rules, but expressly confirm that the Carriage Rules are not a complete agreement, and are only a component of the parties' overall contract.

Carriage Rule 1.A provides that: "The terms of your contract (the 'Contract of Carriage') are set forth in [1] your Ticket; [2] these Conditions of Carriage; [and 3] our published fare rules and regulations…."

56.     The "Ticket" is thus incorporated into the terms of Delta's passenger contracts. The Carriage Rules do not define the term "Ticket." Delta explains on its website that "[a] ticket is a contract between the passenger and the carrier for passage between the specific points shown on the ticket." The only provision in the Carriage Rules that describes the nature of the Ticket appears at Rule 12.F, which provides:

> An electronic ticket (E-Ticket/ET) is the record of agreement maintained and processed within the Carrier's electronic reservation system. A written receipt is provided to the purchaser of the electronic ticket which contains a reference for retrieving the record within the Carrier's reservation system and summary of the ticket information.

57.     Delta's website also states that:

> Electronic Ticketing (ET) is a method to document the sale and track the usage of passengers transportation without requiring the issuance of paper value documents. A historical record of each ticketing transaction is maintained in the electronic ticket record and stored in the electronic ticketing database. An electronic ticket/itinerary receipt must be given to the passenger when the ticket is issued or prior to the first departure. Delta mandates the issuance of electronic tickets in all "ET Eligible" markets.

58.     Even using Delta's unspecific representations of what its "Tickets" are and what they encompass, the Tickets confirm that Delta undertook contractual obligations to provide a "window" to Windowless Window Seat passengers.

59.     For example, Delta says its Tickets are the "record of agreement" between Delta and passengers that are "maintained and processed within [Delta's] electronic reservation system." Carriage Rule 12.F. Such Tickets necessarily reflect and incorporate the representations Delta made at the time of booking through its "electronic reservation system," including that Windowless Window Seats have a "window." Those representations reflect Delta's "offer," which passengers

accept by purchasing the seats and itinerary that Delta describes. There is no other information that the "record of agreement" could refer to. Throughout the booking process, Delta behaves consistent with an undertaking to provide a "window" seat, and it confirms that undertaking at the final "checkout" step of booking. Passengers would not have accepted Delta's "offer" and paid consideration for Windowless Window Seats but for Delta's undertaking.

60.     Moreover, as provided in Carriage Rule 12.F, passengers can review their "electronic ticket" by retrieving the ticket number listed in the "written receipt" Delta sends upon flight confirmation, and by entering that number into Delta's online reservation system. Upon doing so, the "Ticket" page to which passengers are directed is not a static document, but a dynamic page substantially similar to Delta's booking "checkout" page. Although Delta's definition of "Ticket" is unspecific, the Carriage Rules provide that this "Ticket" page is either populated using the Ticket information maintained in Delta's internal system, or that the page itself constitutes the passenger's Ticket. Critically, that page provides Windowless Window Seat passengers with express confirmation that their assigned seats have a "window."

61.     Consequently, Delta's Tickets necessarily contain terms reflecting that passengers who booked Windowless Window Seats did, in fact, book seats with a "window." The Carriage Rules provide that the Ticket is an enforceable part of Delta's passenger contracts. And no provision in the Carriage Rules covers circumstances where a passenger uses her assigned seat, but is not provided with the window that the Ticket provides was associated with that seat.

62.     Delta thus contracted to provide windows to Plaintiffs, and to other purchasers of Windowless Window Seats, in exchange for valuable consideration. Delta breached those contractual promises when it failed to provide a window, and Plaintiffs and the putative class members are entitled to damages in amounts to be determined at trial.

## Class Allegations

63.    Plaintiffs incorporate by reference all of the above allegations.

64.    Plaintiffs bring this class action individually and on behalf of all members of the following class of similarly situated persons pursuant to Rules 23(b)(3) and 23(c)(4): "All persons and entities in the United States that purchased airfare from Delta and remitted additional consideration to obtain a window seat, but received a Windowless Window Seat" (the "**Class**").

65.    Excluded from the Class are Delta and its subsidiaries, affiliates, officers, directors, and any entity in which Delta has a controlling interest, as well as all judges assigned to hear any aspect of this litigation and their immediate family members. Plaintiffs reserve the right to modify or amend the definition of the Class before the Court determines whether certification is appropriate.

66.    <u>Numerosity</u>. The Class members are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown at this time and can only be determined by discovery from Delta, Plaintiffs are informed and believe that the class is likely to include at least many thousands of members, including because, as alleged above, Delta has likely sold more than 1 million Windowless Window Seats during the Class period. Therefore, the Class is sufficiently numerous that joinder is impracticable under Rule 23(a)(a), and the resolution of claims through the procedure of a class action will benefit the parties and the Court.

67.    <u>Commonality and Predominance</u>. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individuals, including because Delta engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of all other Class members. Common questions of law or fact include, among other things, whether Delta breached a self-imposed obligation and/or breached its contracts when it failed to provide Class members with a window after they purchased

Windowless Window Seats. Individual questions, if any, pale in comparison, in both quantity and quality, to the common questions that dominate this action.

68.     <u>Typicality</u>. Plaintiffs' claims are typical of the Class members' claims because Plaintiffs, like all proposed Class members, purchased "window" seats on Delta flights but were placed in Windowless Window Seats. Plaintiffs and Class members were injured by the same wrongful acts, practices, and omissions committed by Delta, as alleged above.

69.     <u>Adequacy</u>. Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs are adequate representatives of the class and have no interests adverse to, or in conflict with, the Class they seek to represent. Plaintiffs have retained counsel with substantial experience and success in complex civil litigation and class actions.

70.     <u>Superiority</u>. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Adjudication of the issues alleged above in one single action has important and desirable advantages of judicial economy. Adequate notice can be given to class members directly using information maintained by Delta.

**First Cause of Action**
**<u>Breach of Contract</u>**

71.     Plaintiffs incorporate by reference all of the above allegations.

72.     The parties entered contracts that required Delta to provide Plaintiffs with seats that had a "window," and required Plaintiffs to remit consideration to obtain those seats.

73.     Plaintiffs performed all relevant obligations owed to Delta, including by paying Delta the additional consideration it solicited and retained in exchange for the selected seats.

74.     Delta breached the contracts by providing Plaintiffs with Windowless Window Seats.

75.     As a direct and proximate result of Delta's breaches, Plaintiffs have suffered damages in an amount to be determined at trial.

### Second Cause of Action
### Breach of the Implied Covenant

76.     Plaintiffs incorporate by reference all of the above allegations.

77.     The parties entered contracts that required Delta to provide Plaintiffs with seats that had a "window," and required Plaintiffs to remit consideration to obtain those seats.

78.     Plaintiffs performed all relevant obligations owed to Delta, including by paying Delta the additional consideration it solicited and retained in exchange for the selected seats.

79.     Delta claims that these contracts are governed by Georgia law by operation of the Carriage Rules. Under Georgia law, every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. Georgia law permits parties to waive the implied covenant insofar as they agree to language that expressly reserves complete discretion to the party from whom performance is required, and the Carriage Rules contain no such applicable language.

80.     On information and belief, Delta contends that it satisfied its contractual obligations to Plaintiffs merely because they used the seats they purchased, and those seats were in the "window" columns of Delta's seating configurations. In other words, Delta advances a hyper-technical conception of "window seat," that is antithetical to the term's plain meaning and common usage, to claim that Plaintiffs were technically provided "window seats" because the seats were in the "window" seating column, and not the "aisle" or "middle" seating columns.

81.     Delta's position wrongfully thwarts the parties' reasonable contractual expectations. As detailed above, the "window" seats that Delta undertook to provide are not abstract or technical concepts, but are seats with actual windows. Delta's position and practice of intentionally providing Plaintiffs with Windowless Window Seats—despite Delta's uncaveated promises that Plaintiffs

purchased seats with a "window," and its uncaveated confirmations post-purchase and pre-flight that the seats had a "window," as reflected in the Tickets—breaches the implied covenant inherent to Delta's contractual obligation to provide window seats.

82.     As a direct and proximate result of Delta's breaches of the implied covenant, Plaintiffs have suffered damages in an amount to be determined at trial.

### Third Cause of Action
### Promissory Estoppel (Alternative Claim)

83.     Plaintiffs incorporate by reference all of the above allegations.

84.     In the event the Court finds that Delta did not undertake contractual commitments to provide Plaintiffs with windows, Delta is alternatively liable for making promises, which were otherwise extraneous or subsequent to the underlying contracts, to provide seats with a "window."

85.     Delta made unambiguous promises, both during the pre-purchase booking process and the post-purchase pre-flight ticketing process, that the particular seats Plaintiffs purchased would have a "window." Delta expected that Plaintiffs would rely on those promises. And Plaintiffs reasonably relied on Delta's promises to their detriment, including by (1) expending additional consideration to obtain seats that they would not have originally purchased, and/or (2) abstaining from changing their seats post-purchase and before their flights. Plaintiffs would not have undertaken either set of detrimental actions in the absence of Delta's false promises.

86.     As a direct and proximate result of Delta's misconduct, Plaintiffs have suffered damages in an amount to be determined at trial.

## <u>Prayer for Relief</u>

**Wherefore**, Plaintiffs, individually and on behalf of all other class members, respectfully request entry of judgment against Delta:

a.    Certifying the proposed Class, designating Plaintiffs as class representatives, and appointing Plaintiffs' counsel as Class Counsel;

b.    Awarding Plaintiffs and all members of the Class all appropriate monetary relief, including compensatory damages in amounts to be determined at trial;

c.    Awarding Plaintiffs and all members of the Class pre- and post-judgment interest at the applicable statutory rate;

d.    Awarding Plaintiffs and all members of the Class reasonable attorney's fees and nontaxable costs to the extent allowable under Rule 23(h); and

e.    Awarding Plaintiffs and all members of the Class such other favorable relief as allowable under law, and additional relief as the Court deems just and appropriate.

Respectfully Submitted:

October 3, 2025
New York, New York

**GREENBAUM OLBRANTZ LLP**

Casey J. Olbrantz
Carter E. Greenbaum
244 Fifth Avenue, Suite C221
New York, NY 10001
646-818-0913
casey@greenbaumolbrantz.com
carter@greenbaumolbrantz.com

*Counsel for Plaintiffs*