**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Anthony Bernardo, Nicholas Meyer, Leah Roberts, and Justin Valentine,** *individually and on behalf of all others similarly situated,* <br><br> Plaintiffs, <br><br> — against — <br><br> **Delta Air Lines, Inc.,** <br><br> Defendant. | No. 25-CV-4608 (RER) (SDE) |

---

# Plaintiffs' Opposition to Delta's Motion to Dismiss

---

**Greenbaum Olbrantz LLP**

Casey J. Olbrantz
Carter E. Greenbaum
Giorgio Traini

*Counsel for Plaintiffs*

# Table of Contents

Table of Authorities ................................................................................................... iii

Introduction .................................................................................................................1

Background...................................................................................................................3

Argument .....................................................................................................................5

I.      The ADA Does Not Preempt Any Claims ........................................................5

        A.      The ADA Does Not Preempt Breach of Contract Claims (Count 1) ..........6

        B.      The Implied Covenant Claim Is Not Preempted Because It Undisputedly
                Seeks to Vindicate Contractual Expectations (Count 2) .............................6

        C.      For Purposes of the *Wolens* Exception, Promissory Estoppel is No
                Different from a Breach of Contract (Count 3).........................................7

        D.      Delta's Miscellaneous Invocations of the ADA Are Unavailing ...............8

II.     Plaintiffs Adequately State Claims for Breach of Contract (Count 1) ..................10

        A.      Plaintiffs Plausibly Allege that their Tickets Entitled them to Windows.................10

        B.      The Purported "Disclaimer" In Carriage Rule 2 Does Not Apply...........16

        C.      Plaintiff Roberts Sufficiently Alleges She Paid Consideration...............18

III.    Plaintiffs Adequately State Implied Covenant Claims (Count 2).........................19

        A.      The Implied Covenant Claims Are Sufficiently Tied to Contractual Terms ...........19

        B.      The Implied Covenant Claims Are Consistent With Carriage Rule 2 .....................20

        C.      The Generic Merger Clause Does Not Disclaim the Implied Covenant .................21

IV.     Plaintiffs Adequately State Alternative Promissory Estoppel Claims (Count 3).................22

        A.      The Mere Existence of a Contract Does Not Prohibit Plaintiffs' Theories ..............23

        B.      The Carriage Rules Do Not Defeat Plaintiffs' Reasonable Reliance.......................24

        C.      It Does Not Matter Whether Delta's Promises Concerned "Future" Facts ..............25

Conclusion...................................................................................................................25

## Table of Authorities

Abadi v. Am. Airlines, Inc.,
  2024 U.S. Dist. LEXIS 59889 (S.D.N.Y. Mar. 29, 2024) ................................................... 7

Adkins v. Cagle Foods JV, L.L.C.,
  411 F.3d 1320 (11th Cir. 2005) .......................................................................................... 25

Alan's of Atlanta, Inc. v. Minolta Corp.,
  903 F.2d 1414 (11th Cir. 1990) .......................................................................................... 20

Allapattah Servs. v. Exxon Corp.,
  61 F. Supp. 2d 1308 (S.D. Fla. 1999) ................................................................................. 21

Am. Airlines v. Wolens,
  513 U.S. 219, 223 (1995) ............................................................................................. passim

Am. Express Travel Related Servs. Co. v. Marco,
  611 F. Supp. 938 (S.D.N.Y. 1985) ................................................................................. 18, 25

Amoco Oil Co. v. Ervin,
  908 P.2d 493 (Colo. 1995) .................................................................................................. 21

Argonaut Midwest Ins. Co. v. McNeilus Truck & Mfg.,
  2013 U.S. Dist. LEXIS 17200 (N.D. Ga. Feb. 7, 2013) ..................................................... 19

ATA Airlines, Inc. v. Fed. Express Corp.,
  665 F.3d 882 (7th Cir. 2011) ................................................................................................ 7

Atl. Hous. Partners L.L.L.P. v. Brevard Cty.,
  2024 U.S. Dist. LEXIS 168950 (M.D. Fla. Sep. 19, 2024) ................................................ 16

Bajra v. Delta Air Lines, Inc.,
  785 F. Supp. 3d 1289 (N.D. Ga. 2025) ............................................................................... 22

Blacklick Hotspot Corp. v. Mansfield Oil Co. of Gainesville, Inc.,
  2021 U.S. Dist. LEXIS 257485 (N.D. Ga. Dec. 28, 2021) ................................................ 19

Blau v. Blau,
  368 Ga. App. 701 (2023) ..................................................................................................... 23

Boyd v. Nationstar Mortg., LLC,
  2015 U.S. Dist. LEXIS 180918 (N.D. Ga. Oct. 21, 2015) ............................................ 23, 24

Cal. Trucking Ass'n v. Su,
  903 F.3d 953 (9th Cir. 2018) ............................................................................................. 5, 7

Cavalieri v. Avior Airlines C.A.,
  2022 U.S. Dist. LEXIS 242573 (S.D. Fla. Nov. 14, 2022) ................................................ 17

Cox v. Spirit Airlines,
786 F. App'x 283 (2d Cir. 2019) ........................................................................passim

Cox v. Spirit Airlines, Inc.,
341 F.R.D. 349 (E.D.N.Y. 2022) ................................................................................15

Cook v. E.R. Snell Contractors, Inc.,
2021 U.S. Dist. LEXIS 272453 (N.D. Ga. Oct. 15, 2021)..........................................7

Dover v. British Airways, PLC (UK),
2013 U.S. Dist. LEXIS 160127 (E.D.N.Y. Nov. 7, 2013) .....................................9, 14

Dusko v. Delta Air Lines, Inc.,
2022 U.S. Dist. LEXIS 255841 (N.D. Ga. Mar. 2, 2022) ....................................20, 22

Edgar v. Edgar Casket Co.,
125 Ga. App. 389 (1972) ...........................................................................................19

Fed. Ins. Co. v. Nolan Transp. Grp., Inc.,
2016 U.S. Dist. LEXIS 187727 (N.D. Ga. Oct. 12, 2016)........................................15

Ferrucci v. Delta Air Lines, Inc.,
2024 Conn. Super. LEXIS 2515 (Super. Ct. Nov. 27, 2024) ...............................9, 14

Fitzgerald v. Cantor,
1998 Del. Ch. LEXIS 212 (Del. Ch. November 10, 1998)........................................21

Ga. Invs. Int'l, Inc. v. Branch Banking & Tr. Co.,
305 Ga. App. 673 (2010) ...........................................................................................25

Gleason v. United Airlines, Inc.,
2015 U.S. Dist. LEXIS 66161 (E.D. Cal. May 19, 2015)...........................................8

Hahn v. Jetblue Airways Corp.,
738 F. Supp. 3d 229 (E.D.N.Y. 2024) .........................................................................6

Hendon Props. v. Cinema Dev., LLC,
275 Ga. App. 434 (2005) ...........................................................................................25

Hickcox-Huffman v. US Airways, Inc.,
855 F.3d 1057 (9th Cir. 2017) .............................................................................passim

Hill-Hannah v. ESO Mgmt. LLC,
2024 U.S. Dist. LEXIS 17975 (N.D. Ga. Jan. 31, 2024) .....................................13, 17

Hodges v. Medassets Net Revenue Sys., LLC,
2008 U.S. Dist. LEXIS 12254 (N.D. Ga. Feb. 19, 2008) .........................................21

Hung Cavalieri v. Avior Airlines C.A.,
　　25 F.4th 843 (11th Cir. 2022) ...................................................................................passim

Hunting Aircraft, Inc. v. Peachtree City Airport Auth.,
　　281 Ga. App. 450 (2006) ..............................................................................................6, 21

Ide v. British Airways PLC,
　　529 F. Supp. 3d 73 (S.D.N.Y. 2021) ..............................................................................6, 7

Lim v. Koon,
　　2025 U.S. Dist. LEXIS 193985 (S.D.N.Y. Sep. 30, 2025) ...............................................21

Mooney v. Mooney,
　　245 Ga. App. 780 (2000) ...................................................................................................25

Midway Ins. Mgmt. Int'l v. Accident Ins. Co.,
　　2021 U.S. Dist. LEXIS 201599 (N.D. Ga. Mar. 11, 2021) ...............................................15

Nilhan Developers, LLC v. Westplan Inv'rs Acquisitions, LLC,
　　593 B.R. 14 (Bankr. N.D. Ga. 2018) .................................................................................21

Nw., Inc. v. Ginsberg,
　　572 U.S. 273 (2014)....................................................................................................passim

O'Callaghan v. Arm Corp.,
　　2005 U.S. Dist. LEXIS 12889 (N.D. Ill. June 8, 2005)..............................................passim

Power Travel Int'l, Inc. v. Am. Airlines, Inc.,
　　257 F. Supp. 2d 701 (S.D.N.Y. 2003) ................................................................................7

Rigby v. Philip Morris USA, Inc.,
　　2015 U.S. Dist. LEXIS 34488 (S.D. Ga. Mar. 19, 2015) .................................................23

Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.,
　　156 F. Supp. 3d 348 (E.D.N.Y. 2016) ...............................................................................16

Samsung Fire & Marine Ins. Co. v. Liberty Mut. Fire Ins. Co.,
　　2022 U.S. Dist. LEXIS 34648 (S.D.N.Y. Feb. 28, 2022) .................................................11

Schneberger v. Air Evac EMS, Inc.,
　　2017 U.S. Dist. LEXIS 36701 (W.D. Okla. Mar. 15, 2017) ...............................................8

Schoene v. Spirit Airlines, Inc.,
　　726 F. Supp. 3d 1248 (D. Or. 2024) ..................................................................................9

Sholopa v. Turk Hava Yollari A.O., Inc.,
　　595 F. Supp. 3d 257 (S.D.N.Y. 2022) ...............................................................................6

Sun-Pacific Enters. v. Girardot,
  251 Ga. App. 101 (2001) ..................................................................................................23, 24, 25

TechBios, Inc. v. Champagne,
  301 Ga. App. 592 (2009) .................................................................................................20

Trireme Energy Holdings, Inc. v. RWE Renewables Ams., LLC,
  757 F. Supp. 3d 445 (S.D.N.Y. 2024) ...........................................................................11

Voyles v. Sasser,
  221 Ga. App. 305 (1996) .................................................................................................25

Wells Fargo Bank, N.A. v. Averett Family P'ship, LLLP,
  2012 U.S. Dist. LEXIS 182522 (M.D. Ga. Dec. 28, 2012) ...........................................20

White v. Wachovia Bank, N.A.,
  563 F. Supp. 2d 1358 (N.D. Ga. 2008) ..................................................................6, 20, 21

WirelessMD, Inc. v. Healthcare.com Corp.,
  271 Ga. App. 461 (Ga. Ct. App. 2005) ...........................................................................21

Worsham v. Provident Cos.,
  249 F. Supp. 2d 1325 (N.D. Ga. 2002) ...........................................................................21

## **Introduction**[1]

Delta charged plaintiffs and millions of putative class members extra fees to buy window seats. These airline passengers reasonably understood they were buying seats that had an actual window. Delta consistently confirmed that simple expectation and industry norm, including by using the term "window" on seat maps, reservation systems, passenger profiles, and marketing materials. But plaintiffs and class members did not get what they paid for—Delta sat them next to a blank wall.

This case is exceedingly simple, and the core facts are indisputable. Delta requires passengers to pay extra fees for the ability to select a window seat. A majority of Delta's planes have at least one exterior-row seat with no usable window ("**Windowless Window Seats**"). For many years, Delta has sold these as "regular" window seats, and affirmatively led passengers who unwittingly choose them to conclude—consistent with their reasonable expectations and past flying experiences—that they were paying to upgrade to seats with an actual, usable window. By charging extra for "window" seats, Delta undertook obligations to provide windows, which it breached by providing Windowless Window Seats. Plaintiffs and other affected passengers are entitled to get their money back.

Delta's efforts to escape liability fall flat. Initially, Delta selectively invokes the Airline Deregulation Act ("**ADA**") as a get-out-of-jail-free card. But the ADA presents only discrete and simple questions that are agnostic to Delta's merits arguments. The ADA is concerned with preventing the enforcement of normative local laws that might frustrate deregulation of airline pricing and services. The ADA poses no barrier to claims that arise from "voluntary" undertakings like promises to provide window seats for extra money. Under a straightforward application of the well-established ADA legal standards—which Delta carefully ignores—no claims are preempted.

---

[1] Plaintiffs respectfully file this Opposition to Delta's Motion to Dismiss, served on December 10, 2025 (ECF 23) ("**MTD**"). All defined terms have the same meaning as in the First Amended Class Action Complaint (ECF 16) ("**FAC**"). All references to the Carriage Rules cite directly to the four versions of the Conditions of Carriage that are attached as exhibits 1-4 to the Noller Declaration, which do not contain material differences for purposes of Delta's motion. Citations to "Tr." refer to exhibit 1 of the accompanying Olbrantz Declaration, which contains the pre-motion hearing transcript.

Delta's merits arguments fare no better. Its primary argument is that plaintiffs fail to allege that their "Tickets" included a term requiring a window. But Delta's focus on that point is incredible given that: (i) Delta conceded at the pre-motion conference that "plaintiffs allege that if you chose a preferred seat some passengers may see something that says window when they select it," and that "[t]here is a general allegation ... that indicates that certain ticket records may have said that there was a window on some of the tickets" (Tr. 6:2-3 & 3:20-23); (ii) Delta's pre-motion letter assumed that plaintiffs adequately alleged an obligation in their Tickets (ECF 17); and (iii) Delta's motion does not even dispute the adequeacy of plaintiffs' allegations Delta made promises "before or during the ticketing process" to support a promissory estoppel claim (MTD at 24). Tellingly, Delta elected not to attach any Tickets to its motion, leaving plaintiffs' credible allegations uncontroverted.

The FAC extensively details how the Tickets obliged Delta to provide windows. For instance, portions of the electronic tickets that Delta makes available to passengers expressly state that seats with a "window" were purchased. FAC ¶ 60. Plaintiffs easily clear the low bar set by the Second Circuit in *Cox v. Spirit Airlines*, which found that airline passengers plausibly alleged—based in part on their understandings of industry norms—that the "price" listed on a booking webpage required the airline to allow free carry-on luggage. 786 F. App'x 283, 285 (2d Cir. 2019) (summary order).

Unable to controvert plaintiffs' allegations, Delta repeatedly invokes a "disclaimer" in Carriage Rule 2, but stretches it beyond recognition. That provision merely gives Delta discretion to change "seat assignments" upon certain operational "changes." Delta's insistence that Rule 2 "explicitly" nullifies obligations in the Tickets even in the absence of an operational "change" is implausible. Similarly, Delta's reliance on Carriage Rule 24's merger clause is premature at best, as that clause states that the "Tickets" are part of the contracts, but the Tickets are not before the Court.

For these reasons and those that follow, Delta's motion should be denied in full.

— Page 2 —

## **Background**

Last decade, Delta began charging extra fees for the ability to select an airplane seat, which was previously included in the standard cost of a ticket. MTD at 3 n.2; FAC ¶¶ 16-21. Today, a large proportion of passengers are willing to pay extra to select their seats, and a majority of those passengers prefer window seats. FAC ¶¶ 17, 25-28. For example, many travelers have a fear of flying or experience anxiety, claustrophobia, or motion sickness, and windows provide greater comfort in an otherwise distressing environment. *Id*. ¶¶ 26-27; *see also id.* ¶¶ 8-11 (plaintiffs' experiences).

Most planes in Delta's fleet have one or more Windowless Window Seats. *Id*. ¶¶ 3, 29-32. These seats exist for various reasons unique to each plane's design. *Id*. ¶¶ 3, 30-31. As of today, Delta's primary competitors, American and United, affirmatively disclose the location of Windowless Window Seats to passengers. *See id.* ¶¶ 49-51. Other airlines like Alaska, Ryanair, and Southwest do the same, or do not charge extra for windowless seats. *Id.*; MTD at 3 n.2. Nevertheless, for many years, Delta has sold "upgrades" to Windowless Window Seats to passengers while representing that the seats have a window. FAC ¶¶ 1-4, 33-41. Initially, Delta passengers wishing to select any seat must pay to upgrade from "Main Basic" to at least the "Main" fare. *Id*. ¶¶ 18-19. On top of that fee, Delta also charges passengers additional fees for "Main Preferred" seats, Comfort seats, and other premium seats, which is frequently where Windowless Window Seats are located. *Id*. ¶¶ 20-21, 32.

When airline passengers book a window seat, they expect it to have a window. *Id*. ¶¶ 2, 5. Delta gives passengers no reason to doubt that expectation and norm, but confirms it. *Id*. ¶¶ 2, 23-24, 33-41. During the booking process, Delta expressly identifies wall-adjacent seats as having a "window," including for Windowless Window Seats (as pictured in FAC Paragraph 36). *Id*. ¶¶ 2, 34-36. Delta's website and passenger interfaces exclusively refer to "window," "middle," and "aisle" seats. *Id*. ¶¶ 2, 23, 39. Delta gives passengers the ability to pre-designate a preference to be automatically assigned "window" seats. *Id*. ¶ 37. Portions of the electronic tickets that Delta makes

available to passengers provide express confirmation that Windowless Window Seat passengers bought "window" seats, *id.* ¶¶ 54-61, which not only memorializes Delta's obligations, but induces passengers to refrain from changing to "real" window seats before flying. *Id.* ¶¶ 41-42, 54-61.

But despite selecting a window seat and paying extra for the privilege, Delta seated plaintiffs and millions of class members next to blank walls. *Id.* ¶¶ 1, 3-11, 42. Affected passengers have long complained about Delta's practice on social media and directly to Delta. *Id.* ¶¶ 43-48. For example, numerous passengers have complained on Reddit that they paid extra for "window" seats only to find themselves seated next to a wall. *Id.* ¶¶ 44-45. Delta's own customer service representatives have referred to the practice as "misleading," and have sometimes issued refunds or compensation to affected passengers. *Id.* ¶¶ 6, 45-47. But, for many years, Delta refused to change its practice.

Delta's "Carriage Rules" support plaintiffs' allegations of contractual liability. *Id.* ¶¶ 54-62. Carriage Rule 1.A states that terms reflected in passenger "Tickets" are part of the parties' contracts. Carriage Rule 12.F states that Tickets are the "record of agreement" maintained in Delta's electronic reservation system. *Id.* ¶¶ 56-57. As detailed in the FAC , plaintiffs' Tickets necessarily reflect that they purchased seats with a "window," including because: (i) Delta's post-purchase electronic ticket system identifies *all* Windowless Window Seats with the descriptor "window" seat, and (ii) the record of agreement must incorporate seat selections from the booking process. *Id.* ¶¶ 54-61.

The FAC includes claims that Delta: breached its contracts by failing to provide seats with windows (*id.* ¶¶ 71-75) (Count 1), breached the implied covenant of good faith by defeating plaintiffs' expectations that their upgraded seats would have a window (*id.* ¶¶ 76-82) (Count 2), and is alternatively liable for promissory estoppel due to its unqualified (and *undisputed*) promises that its seats would have windows (*id.* ¶¶ 83-86) (Count 3). As set forth below, each claim is plausibly stated.

## Argument

### I.       The ADA Does Not Preempt Any Claims

Delta's motion is interspersed with unfounded contentions that the ADA preempts plaintiffs' claims. Its arguments fail because they ignore well-established legal standards. The ADA prohibits states from enforcing laws "related to a price, route, or service of an air carrier." *Am. Airlines v. Wolens*, 513 U.S. 219, 223 n.1 (1995). "The ADA does not preempt, however, 'state-law-based court adjudication of routine breach-of-contract claims.'" *Cox*, 786 F. App'x at 285 (quoting *Wolens*, 513 U.S. at 232). Nor does it "shelter airlines from suits" seeking "recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Wolens*, 513 U.S. at 228. Delta claims that the *Wolens* exception is "narrow" and limited to breach claims, but the Supreme Court clarified in *Ginsberg* that, "[w]hat is important" is not a claim's "form," but the "effect" of the underlying state law. *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 283-85 (2014). In short, the ADA is concerned with preventing "a State's normative policies [from] dictating what prices and services an airline had to offer." *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 962 (9th Cir. 2018). It preempts claims that seek to enforce "community standards of decency, fairness, or reasonableness," and permits claims that seek to "effectuate the intentions of parties, or to protect their reasonable expectations." *Ginsberg*, 572 U.S. at 286.

Here, Count 1 is a straightforward breach of contract claim that is not preempted under blackletter law. *Cox*, 786 F. App'x at 285. And plaintiffs' claims for breach of implied covenant and promissory estoppel are not preempted for the simple reason that plaintiffs do not "invoke a state law or regulation that seeks to alter the voluntary agreement." *Hung Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 851 (11th Cir. 2022). Ultimately, "No state law made [Delta] promise" window seats for extra fees. *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1066 (9th Cir. 2017).

— Page 5 —

## A.     The ADA Does Not Preempt Breach of Contract Claims (Count 1)

Delta's motion ignores a bright-line rule: "The Second Circuit has held that breach of contract claims are not preempted under the ADA, even if they relate to prices, routes, or services." *Sholopa v. Turk Hava Yollari A.O., Inc.*, 595 F. Supp. 3d 257, 264 (S.D.N.Y. 2022) (citing *Cox*, 786 F. App'x at 285). Simply, "preemption does not apply to actions under state law pursuing claims for breach of contract." *Id.* As this Court recently explained, under the Second Circuit's interpretation of the ADA, there can be no preemption of breach claims if the contract—"interpreted in the light most favorable to plaintiffs" and "appl[ying] traditional tools of contract interpretation"—"could reasonably be read to find that the alleged injury was 'within the scope of [the airline]'s contractual obligations.'" *Hahn v. Jetblue Airways Corp.*, 738 F. Supp. 3d 229, 260 (E.D.N.Y. 2024) (quoting *Cox*). Under *Cox* and its progeny—which Delta's motion ignores—the only salient question for Count 1 is whether plaintiffs have stated a claim. *Id.* As detailed in Section II, they have.

## B.     The Implied Covenant Claim Is Not Preempted Because It Undisputedly Seeks to Vindicate Contractual Expectations (Count 2)

As set forth in Plaintiffs' pre-motion letter, under *Ginsberg*, the ADA does not preempt implied covenant claims if: (i) applicable state law permits parties to disclaim the implied covenant, and (ii) the claim seeks to "vindicate the parties' implicit understanding of the contract." *Ide v. British Airways PLC*, 529 F. Supp. 3d 73, 86 (S.D.N.Y. 2021) (applying *Ginsberg* test; finding implied covenant claims under New York law was not preempted). Both conditions are readily satisfied.

- First, Georgia law, like New York law, permits parties to disclaim the implied covenant. *Hunting Aircraft, Inc. v. Peachtree City Airport Auth.*, 281 Ga. App. 450, 453 (2006) (parties may "expressly (not impliedly)" disclaim the implied covenant); *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1364-65 (N.D. Ga. 2008) (same). Delta expressly concedes the point. MTD at 21.

— Page 6 —

- Second, plaintiffs seek to use the implied covenant to vindicate their reasonable expectations that the seats they bought would have usable windows, FAC ¶¶ 80-81, and thus seek to "vindicate the parties' implicit understanding of the contract." *Ide*, 529 F. Supp. 3d at 86; *Power Travel Int'l, Inc. v. Am. Airlines, Inc.*, 257 F. Supp. 2d 701, 707 (S.D.N.Y. 2003) (no preemption of claim that airlines breached covenant by using discretion to "establish[]" the "remuneration paid" and setting it to "$0"). Delta never argues that Count 2 invokes normative state policy or seeks to enforce "community standards of decency," and thereby also concedes this point.

Thus, although Delta conclusorily states that the "ADA bar[s] any implied covenant claim," it never even disputes that the two *Ginsberg* conditions are met. Instead, Delta solely advances merits arguments that do not address *Ginsberg*'s factors, MTD at 20-22, which are addressed in Section III.

### C.    For Purposes of the *Wolens* Exception, Promissory Estoppel is No Different from a Breach of Contract (Count 3)

Finally, Plaintiffs' promissory estoppel claim is not preempted under the ADA. The *Wolens* exception includes promissory estoppel claims because those claims arise only where a "defendant made a promise upon which the plaintiff reasonably relied." *Cook v. E.R. Snell Contractors, Inc.*, 2021 U.S. Dist. LEXIS 272453, at *11 (N.D. Ga. Oct. 15, 2021). Thus, by its nature, promissory estoppel arises from voluntary conduct, not "normative" state policy. *Accord Su*, 903 F.3d at 962; *Power Travel*, 257 F. Supp. 2d at 707 (implied covenant claim did "not implicate the fundamental purpose behind the ADA" of ensuring that states do "not undo federal deregulation"). As Judge Posner explained: "Promissory estoppel, as the word 'promissory' implies, furnishes a ground for enforcing a promise made by a private party, rather than for implementing a state's regulatory policies." *ATA Airlines, Inc. v. Fed. Express Corp.*, 665 F.3d 882, 884 (7th Cir. 2011). Promissory estoppel claims are "not preempted" because they differ from breach of contract "only in basing the

enforceability of the defendant's promise on reliance." *Id*.; *Abadi v. Am. Airlines, Inc*., 2024 U.S. Dist. LEXIS 59889, at \*139 (S.D.N.Y. Mar. 29, 2024) (claim not preempted; citing *ATA*).

Delta offers no grounds supporting preemption. Notably, Delta's pre-motion letter cited the district court decision that was *overruled* by *ATA*. ECF 17. Conspicuously, Delta's motion now omits that case, and declines to even acknowledge the Seventh Circuit's decision. Delta's motion also cites *Abadi* for a different proposition, but fails to note that the case contradicts its position on preemption. Instead, Delta's motion regurgitates the same conclusory argument as before. It cites two far-flung cases that add nothing: (i) *Schneberger v. Air Evac EMS, Inc.* did not even concern promissory estoppel, and it erroneously cites the overruled lower court *ATA* decision as good law, 2017 U.S. Dist. LEXIS 36701, at \*15 (W.D. Okla. Mar. 15, 2017); and (ii) *Gleason v. United Airlines, Inc.* did not even consider the *Wolens* exception. 2015 U.S. Dist. LEXIS 66161, at \*5 (E.D. Cal. May 19, 2015).

### D.    Delta's Miscellaneous Invocations of the ADA Are Unavailing

Instead of addressing the applicable legal requirements, Delta clutters its brief with a litany of inapposite string citations,[2] and a grab bag of miscellaneous preemption arguments that readily fail.

Initially, Delta repeatedly suggests that the ADA displaces basic principles of state contract law. MTD at 10 ("[Plaintiffs] may not ask the Court to supplement or modify th[e] terms [of contracts] with requirements imposed from outside the four corners of that actual agreement"); *id.* at

---

[2] Delta cites cases where, unlike here, claims were impermissibly premised on normative "external" laws. *Onoh*, 613 F.3d 596 (5th Cir. 2010) (international treaty not incorporated into contract); *Neft*, 299 F.Supp.3d 965 (N.D. Ill. 2018) (state law restitution remedy that contravened express contract term); *Watson*, 2017 WL 6060173 (D. Haw. 2017) (*pro se* claim that airline breached contract by "needlessly exposing [plaintiff] to a great magnitude of potential harm"); *Bergman*, 16 Wash. App. 2d 553 (2021) (claim sought to have airline policy "declared unlawful" under state law); *Leonard*, 605 N.W.2d 425 (Minn. Ct. App. 2000) (equitable doctrine that rendered "bargain" "irrelevant"); *Boon*, 17 S.W.3d 52 (Tex. App. 2000) (arguing fee was an illegal penalty under state law); *Blackner*, 311 N.J. Super. 10 (Super. Ct. App. Div. 1998) (same); *Joseph*, 2012 WL 1204070 (N.D.N.Y. Apr. 11, 2012) (erroneously preempting implied covenant claim; pre-*Ginsberg*). Delta cites another case that never considered the *Wolens* exception. *Fudge*, 753 F. Supp. 3d 987 (C.D. Cal. 2024). Finally, Delta cites several inapposite cases where the plaintiff merely failed to plead a breach. *Abdel-Karim*, 116 F. Supp. 3d 389 (S.D.N.Y. 2015) (asserting airline had to prevent plaintiff from bringing firearms to Egypt); *Fondo*, 2001 U.S. Dist. LEXIS 7098 (S.D.N.Y. May 30, 2001) (*pro se* plaintiff asserting airline had to transport him to a non-ticketed destination); *Pica*, 2019 U.S. Dist. LEXIS 65985 (C.D. Cal. Feb. 14, 2019), *aff'd* 812 F. App'x 591 (dismissal for failure to allege breach).

12 ("under the ADA, a plaintiff may sue an airline only with respect to commitments that an airline 'explicitly incorporates into its contract'"); *id.* at 19 ("the ADA preempts any" relevance of Delta's "representations about window seats"). Delta's propositions are invented—its authorities lend no support.[3] *Cox* confirms that *Wolens* "necessarily requires" using "state-law contract interpretation principles." 786 F. App'x at 286; *Dover v. British Airways, PLC (UK)*, 2013 U.S. Dist. LEXIS 160127, at *17 (E.D.N.Y. Nov. 7, 2013) (analyzing what "typical consumer would consider"); *Hickcox-Huffman*, 855 F.3d at 1065 n.39 (using treatise to determine scope of airline's obligation).

Relatedly, Delta's contention that claims must be "solely" premised on "explicit" affirmative "commitments" is wrong for the same reason. *Cox*, 786 F. App'x at 286. The Eleventh Circuit rejected this very idea in *Hung*, 25 F.4th at 852. And Delta's argument is further disproven by the fact that the Supreme Court held that the ADA permits certain implied covenant claims. *Ginsberg*, 572 U.S. at 285. Many courts have even found that the ADA permits claims for breach of implied-in-fact contracts. *Hickox-Huffman*, 855 F.3d at 1063 (reversing dismissal of implied-in-fact claim); *Schoene v. Spirit Airlines, Inc.*, 726 F. Supp. 3d 1248, 1262 (D. Or. 2024) (implied-in-fact not preempted).

Finally, Delta asks the Court to ignore plaintiffs' allegations, construe the FAC as "sound[ing]" in fraud, and then dismiss it as preempted. MTD at 18. However, *Wolens* specifically rejected that very argument. 513 U.S. at 233 (disagreeing that breach and fraud claims "differ[ed] only in their labels"); *Ferrucci v. Delta Air Lines, Inc.*, 2024 Conn. Super. LEXIS 2515, at *13-15 (Super. Ct. Nov. 27, 2024) (recognizing same). The plaintiff in *Cox* also brought a fraud claim, yet the Second Circuit permitted a breach claim to proceed. 786 F. App'x at 284. Here, plaintiffs have not even brought a fraud claim. Delta offers no grounds to discard plaintiffs' well-pled allegations.

---

[3] *Pena* applied state contract law to find that the airline's privacy policy was not part of plaintiff's ticket. 2020 WL 3989055 (E.D.N.Y. Mar. 30, 2020). *Hekmat* never mentioned the ADA with respect to the breach claim. 247 F. Supp. 3d 427 (S.D.N.Y. 2017). *Breitling*, a pre-*Ginsberg* case, merely stated that breach claims must emanate from "actual terms of a party's bargain." 45 F. Supp. 2d 179 (D. Conn. 1999). And *Kruger* stated, non-restrictively, that a plaintiff "can bring a claim related to anything that Defendant explicitly incorporates into its contract." 976 F. Supp. 2d 290 (E.D.N.Y. 2013).

## II.      Plaintiffs Adequately State Claims for Breach of Contract (Count 1)

Having cleared the underbrush of Delta's baseless invocations of the ADA, the remainder of

Delta's brief consists of garden-variety failure to state arguments that are easily dispatched.

Count 1 alleges that Delta breached its contracts with plaintiffs by providing Windowless

Window Seats. FAC ¶¶ 71-75. Delta does not contest that the FAC sufficiently alleges most elements

of a breach claim, but asserts that: (i) Plaintiffs fail to allege the existence of a specific contractual

obligation to provide a window, (ii) Count 1 is barred by a "disclaimer" in Carriage Rule 2, and (iii)

one individual plaintiff, Roberts, fails to allege sufficient consideration. In each case, Delta is wrong.

### A.      Plaintiffs Plausibly Allege that their Tickets Entitled them to Windows

Plaintiffs allege that their "Tickets" were contracts that required Delta to provide seats with

windows. FAC ¶¶ 8-11 & 53-62. Carriage Rule 1.A states that the "terms" of plaintiffs' contracts are

"set forth in" the Tickets and the Carriage Rules. FAC ¶ 55. The Tickets incorporate Delta's window

promise in two ways. First, Rule 12.F states that the Tickets are electronic and always stored with

Delta, and plaintiffs allege that portions of the electronic tickets that Delta makes available to

passengers expressly label plaintiffs' seats (and *all* Windowless Window Seats) with the descriptor

"window." FAC ¶ 60. Second, the Carriage Rules state that Tickets are the "record of agreement,"

which, as a matter of basic contract law, must include or reflect Delta's offer (*i.e.*, the contents of the

booking screens through which plaintiffs selected travel itineraries and seat upgrades), which

plaintiffs accepted through their payments. *Id.* ¶ 59. As detailed below, and as established by copious

authority, plaintiffs amply state a claim. *Cox*, 786 F. App'x at 285 (plausibly that airline breached

"price term" on checkout webpage by charging extra for carry-on luggage).

### 1.      Delta Cannot Controvert Plaintiffs' Well-Pled Allegations

As an initial matter, Delta has previously admitted that plaintiffs alleged that their Tickets included a promise of a window. At the pre-motion conference, Delta's counsel stated: (i) "plaintiffs allege that if you chose a preferred seat some passengers may see something that says window when they select it," and (ii) "[t]here is a general allegation . . . that indicates that certain ticket records may have said that there was a window on some of the tickets." Tr. 6:2-3 & 3:20-23. And Delta's pre-motion letter *never disputed* that plaintiffs sufficiently alleged that the Tickets entail an obligation to provide a window. ECF 17. Rather, Delta assumed that point.

Now, after the Court expressed skepticism of Delta's arguments at the pre-motion conference, Delta's full motion reverses course and premises most of its arguments on the idea that the Tickets did not contain any term requiring Delta to provide a window. MTD at 10-20. Even if it were permissible for Delta to "backtrack," *Samsung Fire & Marine Ins. Co. v. Liberty Mut. Fire Ins. Co.*, 2022 U.S. Dist. LEXIS 34648, at *11-12 (S.D.N.Y. Feb. 28, 2022) (binding movant to position in pre-motion letter), Delta's unsupported contentions about what plaintiffs' Tickets say, or do not say, cannot be grounds for dismissal. Delta does not even attach to its motion any documents that it contends constitute the Tickets. The FAC includes specific and plausible allegations substantiating the obligations inherent to plaintiffs' Tickets, and those allegations must be taken as true.[4]

### 2.      The Portions of the Tickets that Delta Makes Available to Passengers Expressly State that Window Seats Were Purchased

Plaintiffs plausibly allege that Delta's promises to provide windows are incorporated into the Tickets because, post-booking, Delta's electronic reservation system expressly states that passengers

---

[4] For similar reasons, the merger clause in the Carriage Rules can have no effect on whether Count 1 is adequately stated. Carriage Rule 24 states that the "Ticket" is part of the "entire agreement," but the Tickets are not before the Court, so the effect (if any) of the merger clause is unclear. *E.g.*, *Trireme Energy Holdings, Inc. v. RWE Renewables Ams., LLC*, 757 F. Supp. 3d 445, 492 (S.D.N.Y. 2024) (merger clause does not "bar consideration of the parties' contemporaneous transaction documents," and does not bar extrinsic evidence if individual terms "remain unclear").

have booked seats with a "window." FAC ¶ 60. Carriage Rule 12.F makes clear that passengers can review a "summary" of their electronic ticket "within [Delta's] electronic reservation system" by using their booking "reference" number. Upon doing so, the "Ticket" page to which passengers are directed is not a static document, but a dynamic page substantially similar to Delta's booking "checkout" page. *Id.*; FAC ¶ 36 (screenshot of checkout page seat map identifying seat as having a "window"). Plaintiffs allege that this post-booking "electronic ticket" page includes a seat map that describes Windowless Window Seats as having a "window." *Id.* ¶ 60. Per Carriage Rule 12.F, this dynamic webpage either: (i) constitutes the "Ticket" itself, or (ii) is "populated using the Ticket information maintained in Delta's internal system." *Id.* Either possibility suffices to state a claim— the fact that Delta's ticket summary webpage confirms that a "window" was purchased means that the underlying ticket record includes the same information. *Accord Cox*, 786 F. App'x at 285.

Delta never squarely addresses these allegations. Its brief acknowledges them in the factual background section, where Delta says that the Carriage Rules do "not purport to define the 'Ticket' to include any seat selection screens or other 'dynamic page[s]' that Delta allows customers to visit when booking flights or reviewing flight information." MTD at 7. However, the text of Carriage Rule 12.F is consistent with plaintiffs' allegations, which must be taken as true, FAC ¶ 60, and Delta never attaches what it claims to be the Tickets or takes a position on what the "electronic tickets" are or say.

### 3.    Plaintiffs' Seat Selections Merged Into the Record of Agreement

Plaintiffs also plausibly allege that Delta's window obligation is included in the contract that was formed upon completion of the booking "checkout" process. FAC ¶¶ 59, 63 & 87-88. Carriage Rule 12.F defines Delta's electronic tickets as the "record of agreement." *Id.* ¶ 59. Plaintiffs allege that their selections during the booking process, including their selection of a window seat, constitute the "record of agreement" between the parties. "[T]here is no other information that the 'record of agreement' could possibly refer to," *id.*, and Delta offers no alternative explanation. MTD at 7 & 13.

Delta's representations during the booking process constituted Delta's "offer," which passengers like plaintiffs "accept" by purchasing the seats and itinerary that Delta describes. FAC ¶ 59; *Hickcox-Huffman*, 855 F.3d at 1064 (ticket, luggage option, and terms constituted "offer of a contract"); Restatement (Second) of Contracts § 24 ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."). As the Court noted at the pre-motion conference, *O'Callaghan v. Arm Corp.* held that an airline's "advertise[ment] that [it] had 'more room throughout coach'" was part of the airline's "offer." 2005 U.S. Dist. LEXIS 12889, at *6 (N.D. Ill. June 8, 2005). Although that case was raised by the Court and plaintiffs' pre-motion letter (ECF 18), Delta's motion does not address or distinguish it. *See also Cox*, 786 F. App'x at 285; *Hung*, 25 F.4th at 853 (both sustaining claims concerning representations made during the airline ticketing process).[5]

In response to these allegations, Delta claims that plaintiffs supposedly "never identify anything 'in the COC' or any Ticket that 'evinces any intent on the part of [Delta] to adopt' seat maps or any other aspect of the booking process 'as contractual obligations.'" MTD at 13. That argument ignores plaintiffs' well-pled allegations, disregards Delta's prior positions, and hinges on an unsupportable legal theory that Delta can somehow pick and choose which parts of its contractual "offer" merge into the contract when, moments later, a customer presses a "complete purchase" button. *E.g.*, *Hill-Hannah v. ESO Mgmt. LLC*, 2024 U.S. Dist. LEXIS 17975, at *13 (N.D. Ga. Jan. 31, 2024) (contracts are illusory where one party has the "right to unilaterally modify" any terms).

Delta also makes a semantic argument that the "alleged statements contained in the booking process … cannot be the 'Ticket' referenced in the COC because they are not the documents that

---

[5] Delta's citations to data privacy cases like *Pena* and *McGarry*, where airlines were sued for breaches of privacy policies that were not incorporated into travel contracts, are irrelevant because this case concerns airline tickets that are indisputably contractual. *Volodarskiy* is similarly inapposite, as the court merely found that the contract's abstract reference to "applicable law" was insufficient to incorporate a specific EU regulation as a matter of Illinois contract law.

'entitle[] [passengers] to transportation' between points of origin and destination.'" MTD at 12-13 (quoting Carriage Rule 12.A). However, Rule 12.A does not define what the Tickets are. As noted in the FAC, no provision clearly or exhaustively defines the Tickets (FAC ¶ 56), but Rule 12.F states that an electronic ticket is the "record of agreement maintained and processed within the Carrier's electronic reservation system." The phrase "record of agreement" is expansive and unspecific, and it must include the contents of electronic ticket booking pages, as that was how plaintiffs' "agreements" were reached. FAC ¶¶ 8-11. At this stage, plaintiffs allege a plausible interpretation of the term.

### 4. Plaintiffs' Allegations Are Sufficiently Specific

Notwithstanding plaintiffs' two sets of plausible allegations, Delta repeatedly contends, without authority, that plaintiffs do not sufficiently identify any contractual obligation that Delta breached. MTD at 11-13. As demonstrated in the preceding sections, Delta is mistaken, and copious authority supports the sufficiency of plaintiffs' allegations. *E.g.*, *Hung*, 25 F.4th at 853 (alleging airline breached representation made during ticketing process that fare included all fees); *O'Callaghan*, 2005 U.S. Dist. LEXIS 12889, at *6 (alleging airline breached obligation to provide legroom "stated in [an] advertisement"); *Dover*, 2013 U.S. Dist. LEXIS 160127, at *17 ("Fuel surcharge" line item in ticket breached terms and conditions of travel); *Ferrucci*, 2024 Conn. Super. LEXIS 2515, at *13-15 (plaintiff stated a claim based on Delta's ticket over faulty "Delta One" upgrade); *Hickcox-Huffman*, 855 F.3d at 1063 (alleging airline failed to "timely" deliver luggage).

*Cox* is especially instructive. 786 F. App'x at 286. In that case, the Second Circuit determined that airline passengers who electronically booked flights on Spirit Airlines exclusively reached an "agreement as to the price term, destination and dates of travel." *Id.* The Second Circuit noted that "ambiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person . . . who is cognizant of the customs, practices,

usages and terminology as generally understood in the particular trade or business." *Id.* Then, apparently drawing on allegations about industry norms and the plaintiffs' expectations of what the price included, the Court found that the "price term" was ambiguous because it plausibly included an associated "obligation as to carriage of carry-on items." *Id.*; *Cox v. Spirit Airlines*, Inc., 341 F.R.D. 349, 354 (E.D.N.Y. 2022) (noting plaintiffs' allegations that "it was overwhelmingly the norm in the U.S. that a personal item and one carry-on were included in the price of an airline ticket").

Here, plaintiffs' allegations about what they purchased are more specific than in *Cox*, and their reasonable expectations for those purchases are just as obvious. Airline passengers who pay for upgrades to choose "seats adjacent to the wall" necessarily "expect the[] [seats] to have a window." FAC ¶ 2; *id.* ¶¶ 8-11, 17, 23-28 & 44 (consumer expectations); *id.* ¶¶ 33-42 (Delta's representations during booking process, including seat map "window" representation); *id.* ¶¶ 45-47 (Delta customer service admitting sale was "misleading" and issuing compensation); *id.* ¶¶ 49-52 (industry norms).

Contrary to Delta's suggestion, Georgia law requires no greater level of specificity.[6] Delta also conclusorily argues (again, without authority) that plaintiffs have not provided sufficient *individualized* allegations about Delta's contractual obligations. MTD at 12. Initially, plaintiffs *do* offer lengthy individualized allegations, FAC ¶¶ 8-11, and plausibly allege, for example, that Delta represented that their seats included a window. *E.g.*, *id.* ¶ 8 (Bernardo alleges "Delta represented" the seat he booked had a "window"); ¶ 10 (Roberts booked "what she specifically understood, based on Delta's representations during the booking process, were window seats"). Moreover, plaintiffs also specifically allege that Delta led them to conclude—consistent with their reasonable expectations,

---

[6] *Midway Ins. Mgmt. Int'l v. Accident Ins. Co.*, 2021 U.S. Dist. LEXIS 201599, at *14 (N.D. Ga. Mar. 11, 2021) (sustaining breach claims even though plaintiff has not "identified, produced, or described the contents of the actual contract"; sufficient that plaintiff alleged "the contract exists" and entailed the breached obligations); *Fed. Ins. Co. v. Nolan Transp. Grp., Inc.*, 2016 U.S. Dist. LEXIS 187727, at *10 (N.D. Ga. Oct. 12, 2016) (no dismissal even where plaintiff did not attach contract and could "point to no specific provision" providing for liability; standalone factual allegations were sufficient).

past flying experiences, and Delta's lack of disclaimers—that selecting any exterior row seat meant that they were purchasing a window. *Cox*, 786 F. App'x at 286. In any event, plaintiffs are putative class representatives who allege they had the same experiences. Their allegations amply clear Rule 8's requirements. *E.g.*, *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*, 156 F. Supp. 3d 348, 359 (E.D.N.Y. 2016) (Rule 8 requires sufficient facts "to put Defendant[] on notice of the wrongs they allegedly committed"); *Atl. Hous. Partners L.L.L.P. v. Brevard Cty.*, 2024 U.S. Dist. LEXIS 168950, at *14 (M.D. Fla. Sep. 19, 2024) (Rule 8 pemits "group pleading" by "multiple plaintiffs that have alleged injuries that all flow from one defendant's singular decision").[7]

## B.      The Purported "Disclaimer" In Carriage Rule 2 Does Not Apply

Next, Delta argues that plaintiffs' claims are barred by Carriage Rule 2, which Delta says "explicitly" "disclaims any guarantee of window seats." For several reasons, Delta is wrong.

*First*, as a threshold matter, Rule 2 does not "explicitly" disclaim any obligation to provide "window seats." Rule 2 says nothing about "windows," much less seat types or amenities. Delta's pre-motion letter conceded that the Carriage Rules "contain[] no contractual representations about window seats." ECF 17. *O'Callaghan*, 2005 U.S. Dist. LEXIS 12889, at *7 (airline's disclaimer that it was "not obligated to give consumers a particular seat" did not "unambiguously contradict a claim that the Defendants breached the contract by failing to provide more legroom than other airlines").

*Second*, on its face, Rule 2 applies only where Delta "substitute[s] alternate Carriers or aircrafts, change[s] its schedules, delay[s] or cancel[s] flights, change[s] seat assignments, [or] alter[s] or omit[s] stopping places shown on the ticket ***as required by its operations*** in Delta's sole discretion." (Emphasis added.) Delta's own motion repeatedly confirms that the purpose of Rule 2 is

---

[7] Relatedly, there is no requirement for plaintiffs to have taken contemporaneous screenshots of the information on Delta's website during the booking process. And Delta's citation to *Harrington*, a 2006 case that suggests "airline tickets" are "not difficult to come by," is irrelevant due to plaintiffs' allegations about Delta's new "electronic tickets." FAC ¶¶ 53-60.

to govern situations where—due to the "the inherent uncertainty of flights and aircraft" and factors like "weather" or "mechanical failure"—an "expected aircraft type" is not "available as scheduled." MTD at 3-4, 7-9. No such "changes" or events occurred as to plaintiffs, who allege that they sat in the very seats they purchased. FAC ¶¶ 8-11 & 61. Indeed, Delta has long known that its aircraft have windowless seats. *Id.* ¶¶ 43-49. Its failure to provide a window does not arise from a "change" in aircraft type. Rule 2's text does not credibly support Delta's argument that it has discretion to fail to provide what it promised in the Tickets irrespective of whether a "change" occurred.[8]

*Third*, Delta cannot be correct that Rule 2 simply negates the Tickets' contractual terms. Initially, that interpretation would nullify the language in each of Carriage Rule 1.A and Carriage Rule 24, which expressly state that the "terms" in the Tickets are enforceable contracts. Ga. Code Ann. § 13-2-2(4) ("The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part"); *Cavalieri v. Avior Airlines C.A.*, 2022 U.S. Dist. LEXIS 242573, at *4 (S.D. Fla. Nov. 14, 2022) (construing "the Complaint's allegations in the light most favorable to the plaintiff" and refusing to dismiss claim due to potentially applicable disclaimer in airline's terms). Delta's construction of Rule 2 is also implausible because, as noted above, Rule 2 cannot operate to imbue Delta with total discretion to decide which parts of its contractual offer have legal effect. *Hill-Hannah*, 2024 U.S. Dist. LEXIS 17975, at *13.

*Fourth*, even if Delta were correct that Rule 2 totally absolves it of liability under any circumstances, then Rule 2 is unenforceable and void. Federal regulations require Delta to *automatically* provide a "refund" where a "seat upgrade" that the "consumer paid for" is "not available." 14 CFR §§ 260.2 & 260.4. If Delta's construction of Rule 2 were correct, then Rule 2

---

[8] Delta says plaintiffs' construction of Rule 2 would mean that "every canceled or delayed flight would invite a torrent of lawsuits." This is unpersuasive because Rule 2 *expressly* disclaims liability for delays due to an operational "change."

violates Federal regulations, and it would be void under basic rules of contract interpretation. Delta, moreover, cannot properly bind passengers to Rules that flout such regulations. 14 CFR § 260.11.

In sum, the Tickets' alleged promise of a window constitutes a contractual obligation that Rule 2 does not clearly disclaim, and the FAC does not include allegations supporting the idea that any relevant "change" occurred as to trigger Rule 2. On a motion to dismiss, the contract should be read in favor of giving effect to Delta's alleged obligations. Multiple courts have rejected similar attempts by airlines to shoehorn claims into generic disclaimers that do not clearly cover the plaintiff's allegations. *Hung*, 25 F.4th at 852 (declining to dismiss claim in the face of airline's assertion that terms and conditions sufficiently disclosed the prospect of an additional fee; noting the airline failed to explain how the "disclosures should be interpreted in view of the allegedly breached representation at ticketing that the charged fare included taxes and fees"); *Am. Express Travel Related Servs. Co. v. Marco*, 611 F. Supp. 938, 941 (S.D.N.Y. 1985) (claim that airline promised "no-smoking section" not barred by term that "carrier does not guarantee allocation of any particular space in the aircraft"); *O'Callaghan*, 2005 U.S. Dist. LEXIS 12889, at *7 (similar); *Hickcox-Huffman*, 855 F.3d at 1064-65 (various contract provisions did not clearly bar claim for relief).

At the very most, Rule 2's applicability to plaintiffs' allegations is ambiguous, which is no basis for dismissal. *Cox*, 786 F. App'x at 285 (dismissal precluded by ambiguity of "price term").

### C.     Plaintiff Roberts Sufficiently Alleges She Paid Consideration

Finally, Delta argues that one plaintiff, Roberts, purportedly fails to allege that "she paid consideration to Delta." MTD at 20. Roberts alleges she holds a credit card that is "affiliated" with Delta, and which provides her with certain Delta "benefits," such as a seat "upgrade" on flights. FAC ¶ 10. She allegedly "incurs substantial costs for her Delta-affiliated credit card, including by paying a

substantial annual fee." *Id.* In connection with the flight itinerary alleged in the FAC, she used her Delta credit card rewards to unwittingly book multiple Windowless Window Seats. *Id.*

Delta says, without caselaw, that these allegations are insufficient because "paying a third party for the right to use a credit card issued by that third party is not equivalent to paying consideration to Delta for any contractual promise." MTD at 19. But Georgia law is indifferent to whether consideration is directly provided. "[C]onsideration need not flow directly from the promisor." *Edgar v. Edgar Casket Co.*, 125 Ga. App. 389, 392 (1972). "If there is a valid consideration for a promise, it does not matter from whom it moves and it may be given by the promisee or by some other person; the promisee may sustain his action, though a stranger to the consideration." *Argonaut Midwest Ins. Co. v. McNeilus Truck & Mfg.*, 2013 U.S. Dist. LEXIS 17200, at *10-11 (N.D. Ga. Feb. 7, 2013). Thus, Roberts' allegations are sufficient. FAC ¶ 10.

## III.     Plaintiffs Adequately State Implied Covenant Claims (Count 2)

Count 2 alleges that Delta breached the implied covenant of good faith and fair dealing by subverting plaintiffs' reasonable expectations that the seats they chose to purchase for additional consideration would have an actual, usable window. FAC ¶¶ 80-81. Delta asserts that Count 2 is inadequately pled in two ways under Georgia law, and also claims that its generic merger clause in the Carriage Rules supposedly waives the implied covenant. Each of its arguments fails.

### A.     The Implied Covenant Claims Are Sufficiently Tied to Contractual Terms

Delta contends that "Georgia law does not recognize [a] claim for breach of [the] implied covenant of good faith" (MTD at 20), but in reality, an implied covenant claim under Georgia law "can stand as long as it is tied to breach of an actual term of the contract." *Blacklick Hotspot Corp. v. Mansfield Oil Co. of Gainesville, Inc.*, 2021 U.S. Dist. LEXIS 257485, at *13 (N.D. Ga. Dec. 28, 2021). Plaintiffs sufficiently allege that Count 2 is "tied to" a "term of the contract" in two ways.

Initially, as established above, plaintiffs allege that their "Tickets" included a term requiring Delta to provide a window seat. FAC ¶¶ 53-62. Their implied covenant theory seeks to vindicate plaintiffs' reasonable expectations that a window seat entails a *usable* window. *Id.* ¶¶ 79-80; *e.g.*, *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990) (covenant prevents "breach of those explicit terms *de facto* when performance is maintained *de jure*").

Alternatively, even if the Tickets did not include an explicit "window" term, plaintiffs' implied covenant claims are at least sufficiently "tied to" their purchases of seat upgrades, and seek to vindicate their reasonable understandings that they paid additional consideration for upgrades that entailed seats with a window. Under such circumstances, where Delta's duty to provide a window in association with those seats was "not resolved explicitly by the parties," the implied covenant uses good faith to "fill the gap" and vindicate reasonable expectations. *Wells Fargo Bank, N.A. v. Averett Family P'ship, LLLP*, 2012 U.S. Dist. LEXIS 182522, at *10 (M.D. Ga. Dec. 28, 2012).[9]

Count 2 is thus sufficiently tied to terms that "imposed" duties that "serve as a sufficient basis" for an implied covenant claim. *TechBios, Inc. v. Champagne*, 301 Ga. App. 592, 595 (2009).

## B.     The Implied Covenant Claims Are Consistent With Carriage Rule 2

Next, Delta again invokes Carriage Rule 2 and argues that plaintiffs "cannot use the implied covenant to impose contractual obligations that the Contract of Carriage expressly disclaims." MTD at 20. It is true that the implied covenant is not breached "where a party to a contract has done what the provisions of the contract expressly give him the right to do." *White*, 563 F. Supp. 2d at 1363. For the same reasons identified above in Section II.B, Rule 2 could only ever apply if some operational "change" occurs, and none did here. The concept that Rule 2 "expressly" gives Delta the right to

---

[9] Delta cites *Dusko v. Delta Air Lines, Inc.*, which erroneously found that the implied covenant is preempted by the ADA if it serves as a "gap filler." 2022 U.S. Dist. LEXIS 255841 (N.D. Ga. Mar. 2, 2022). The case *Dusko* cited, *Xiaoyun Lu v. Airtran Airways, Inc.*, did not address that question. 631 F. App'x 657 (11th Cir. 2015). However, in *Power Travel*, the Southern District explained that the ADA permits the implied covenant to fill gaps because it is a "default rule of contract law" and "essential to making sense of contracts and understanding what the parties intended." 257 F. Supp. 2d at 707.

decline to provide windows is implausible, and that idea is fatally undercut by Delta's past argument that the Carriage Rules "contain[] no contractual representations about window seats." ECF 17.

### C.   The Generic Merger Clause Does Not Disclaim the Implied Covenant

Last, Delta says the merger clause in Carriage Rule 24 "*entirely disclaims*" the implied covenant. MTD at 22 (emphasis in original). Although plaintiffs' pre-motion letter refuted that proposition (ECF 18), Delta ignores plaintiffs' arguments and regurgitates the same flawed points.

The implied covenant is an "overarching presumption" that applies unless "the contract expressly (not impliedly) provides otherwise." *White*, 563 F. Supp. 2d at 1365. Georgia permits parties to disclaim the implied covenant, but "the Supreme Court of Georgia's requirement of express language" prohibits courts from "us[ing] an inference or implication" to find a disclaimer. *Id.* (citing *Hunting Aircraft*, 281 Ga. App. at 453). Here, the merger clause does not expressly identify the implied covenant of good faith, but generally states that "[n]o other covenants…may be implied." But the implied covenant of good faith is not some "other" covenant. Under Georgia law, the covenant "is not independent of the contract," but is part of "the provisions of the contract itself." *WirelessMD, Inc. v. Healthcare.com Corp.*, 271 Ga. App. 461, 610 (Ga. Ct. App. 2005).

Thus, Delta's argument that the merger clause effects a disclaimer requires an "inference or implication"—the reader has to infer that "other covenants" is a reference to *the* implied covenant. Consequently, the merger clause is insufficiently explicit to disclaim the implied covenant. *Hunting Aircraft*, 281 Ga. App. at 453. That is not an arbitrary rule, nor a unique concept. Courts around the country have long held that merger clauses do not disclaim the implied covenant. *Lim v. Koon*, 2025 U.S. Dist. LEXIS 193985, at *54 (S.D.N.Y. Sep. 30, 2025) ("purpose of a merger clause" is "to preclude consideration" of "extrinsic" matters, and the implied covenant is not "extrinsic").[10]

---

[10] *Fitzgerald v. Cantor*, 1998 Del. Ch. LEXIS 212, *1 n.5 (Del. Ch. November 10, 1998); *Hodges v. Medassets Net Revenue Sys., LLC*, 2008 U.S. Dist. LEXIS 12254, at *22 n.8 (N.D. Ga. Feb. 19, 2008) (Delaware law); *Allapattah Servs.*

Delta cites one case that found its merger clause sufficient to waive the implied covenant. *Dusko*, 2022 U.S. Dist. LEXIS 255841, at *21.[11] *Dusko*, however, is not binding and is highly unpersuasive. It appears to be the first (and only) Georgia case to find that a generic merger clause disclaims the implied covenant. *Dusko* reached that conclusion without analyzing the merger clause's text, without analyzing relevant Georgia law, and without considering the common law rule against merger clause disclaimers. *Id.* Rather, the court merely provided a "*cf.*" cite to *Ginsberg*.

But *Ginsberg* is irrelevant to the discrete Georgia law question at issue in *Dusko*. Contrary to Delta's partial quotations of *Ginsberg* (MTD at 21), the Court merely explained that a "State's implied covenant rules will escape pre-emption only if the law of the relevant State permits an airline to contract around those rules," in which case "the airline can specify that the agreement does not incorporate the covenant." 572 U.S. at 288. *Ginsberg* was agnostic to *how* states permit a disclaimer; it was concerned only with whether a disclaimer is *possible*. *Id.* at 287. The Court did not purport to change any state law, and never considered whether a merger clause may disclaim the covenant.

Ultimately, Delta's adhesive contract selected Georgia law. Georgia undisputedly permits an "explicit" disclaimer of the implied covenant. Delta was within its rights to, for example, state in its Carriage Rules that Delta "disclaims the implied covenant of good faith and fair dealing," but it did not. Contrary to *Dusko*, Delta's generic merger clause fails to disclaim the covenant.

## IV.  Plaintiffs Adequately State Alternative Promissory Estoppel Claims (Count 3)

Count 3 alleges Delta is alternatively liable for promising window seats—both before and after booking—that caused plaintiffs to: (i) expend extra consideration to buy seats that they would

---

v. *Exxon Corp.*, 61 F. Supp. 2d 1308, 1317 (S.D. Fla. 1999); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 499 (Colo. 1995); *see also Worsham v. Provident Cos.*, 249 F. Supp. 2d 1325, 1333 (N.D. Ga. 2002) and *Nilhan Developers, LLC v. Westplan Inv'rs Acquisitions, LLC*, 593 B.R. 14, 23 (Bankr. N.D. Ga. 2018) (both dismissing fraud claims due to merger clauses, but simultaneously sustaining implied covenant claims).

[11] Delta also cites *Bajra v. Delta Air Lines, Inc.*, which stands for the unremarkable proposition that implied-in-law contracts (but not implied-in-fact contracts) are preempted by the ADA. 785 F. Supp. 3d 1289, 1314 (N.D. Ga. 2025).

not have otherwise purchased, or (ii) abstain from changing to an "actual" window seat before their flights. FAC ¶¶ 83-86. Contrary to Delta's rapid-fire arguments, plaintiffs adequately state a claim.

### A.    The Mere Existence of a Contract Does Not Prohibit Plaintiffs' Theories

In reliance on *Blau v. Blau*, 368 Ga. App. 701 (2023), Delta argues (wrongly) that both promissory estoppel theories are dispositively foreclosed by the mere existence of contracts.

Concerning Delta's representations during the booking process, *Blau* states that promissory estoppel "is not available as a remedy" only if the "parties enter into a contract with bargained for consideration," *and* if the contract's terms "***include the promises alleged in support of a promissory estoppel claim***." 368 Ga. App. at 707 (emphasis added). Delta already argued that the Carriage Rules contain "no contractual representations about window seats." ECF 17. Moreover, Count 3 applies only if the Court determines that the Tickets *did not* memorialize Delta's window promise, FAC ¶ 84, and the Tickets are not even before the Court. Plaintiffs' allegations are sufficient at this juncture.[12]

Concerning the plaintiffs' second theory, *Blau* expressly permits claims concerning Delta's post-booking promises. 368 Ga. App. at 707 (promissory estoppel applies "when there was a promise that post-dated the agreement"); *Girardot*, 251 Ga. App. at 105 (sustaining claim on same basis). Delta argues that plaintiffs "do not allege that Delta made any post-contract promises," but that ignores the FAC's allegations. *E.g.*, ¶ 10 (post-purchase, plaintiff Roberts "specifically reviewed her return trip ticket to ensure that she had in fact booked seats with windows," "did not change her return trip seat assignments" in reliance, but realized upon boarding "that she had once again been led to purchase a Windowless Window Seat"); *see also id.* ¶¶ 2, 41, 42, 54 (post-contract statements).

---

[12] *Boyd v. Nationstar Mortg., LLC*, 2015 U.S. Dist. LEXIS 180918, at *38 (N.D. Ga. Oct. 21, 2015) (permitting claim concerning promise that related to, but was not memorialized in, written contract); *Sun-Pacific Enters. v. Girardot*, 251 Ga. App. 101, 105 (2001) (same concerning promise that preceded and followed written contract); *Rigby v. Philip Morris USA, Inc.*, 2015 U.S. Dist. LEXIS 34488, at *23 (S.D. Ga. Mar. 19, 2015) (no dismissal where allegations "do not preclude the possibility that [the alleged duty] was based on a promise not included in the contract"); *Cook*, 2021 U.S. Dist. LEXIS 272453, at *17 (inappropriate to dismiss alternative estoppel claim on pleadings).

In fact, plaintiffs specifically allege that Delta made post-booking promises on a "substantially similar" webpage as Delta's pre-booking promises, FAC ¶ 60, and Delta's motion does not contest that plaintiffs' allegations of Delta's pre-booking promises are sufficient to state a claim. MTD at 23.

**B.      The Carriage Rules Do Not Defeat Plaintiffs' Reasonable Reliance**

Delta is wrong that the merger clause precludes plaintiffs from alleging reasonable reliance. Initially, the Tickets are not before the Court, so it is premature to determine the scope or effect of the merger clause because it states that the Tickets are part of the "entire agreement." Carriage Rule 24. Either way, the merger clause does not bar plaintiffs' reliance on Delta's undisputed promises during the booking process. Plaintiffs allege that, upon completion of their bookings, Delta generated Tickets that reflected their selections during the contract formation process. FAC ¶¶ 54-62. Plaintiffs also allege that it is unclear whether Delta ever even made the "Tickets" available to plaintiffs. FAC ¶¶ 54, 56. As detailed above, plaintiffs reasonably expected and understood that the selections they made during the booking checkout process would "merge into" the resulting contract, and had no reasonable choice but to trust the expectation created by Delta's promises. Under such circumstances, reliance on Delta's promises during contract formation was reasonable. *E.g.*, *Boyd*, 2015 U.S. Dist. LEXIS 180918, at *35 (reasonable to rely on promise, which was contrary to a security deed and promissory note, that plaintiff's home would not be foreclosed upon). In any event, the merger clause has no effect on "representations subsequent to" contract formation. *Girardot*, 251 Ga. App. at 105.

Similarly, Delta is wrong that Carriage Rule 2 defeats reasonable reliance. Initially, Delta misquotes *Tampa Bay Fin., Inc. v. Nordeen*, which merely bars reliance on oral promises that both *precede* and *contradict* a written agreement. 272 Ga. App. 529 (2005). Irrespective, as established above, Carriage Rule 2 does not plausibly contradict Delta's pre- or post-contract promises. Again, Delta admitted in its pre-motion letter that Rule 2 says nothing about windows (ECF 17), and no reasonable consumer would arrive at Delta's highly lawyered and self-serving interpretation of Rule

2, which is unsupported by the Rule's plain text. *Boyd*, 2015 U.S. Dist. LEXIS 180918, at \*35 (examples of reasonable reliance); *Marco*, 611 F. Supp. at 941 (promise of "no-smoking" seat was not barred by disclaimer that airline "does not guarantee allocation of any particular space").

### C.        It Does Not Matter Whether Delta's Promises Concerned "Future" Facts

Delta concludes with a highly semantic and conclusory argument that any formulation of plaintiffs' promissory estoppel claims is supposedly barred because Delta's promises concerned "future" facts. Delta's proffered legal rule is doctrinally unworkable and against the weight of authority. Multiple Georgia appellate courts have held the opposite.[13] Delta cites just one case, *Adkins v. Cagle Foods JV, L.L.C.*, and no Georgia appellate court appears to have endorsed its finding. 411 F.3d 1320, 1326 (11th Cir. 2005). *Adkins* merely cited to *Voyles v. Sasser*, 221 Ga. App. 305 (1996), which Georgia appellate courts have repeatedly distinguished, as it "involved a situation in which the promises involved 'unenforceably vague future acts.'" *Hendon*, 275 Ga. App. at 440; *Rigby*, 2015 U.S. Dist. LEXIS 34488, at \*21 (same); *Girardot*, 251 Ga. App. at 106 (similar). Delta's promises were not "vague," nor only about "future" facts. Plaintiffs allege Delta promised that the specific seats plaintiffs were purchasing, or had purchased, included a "window," which plaintiffs would use on a specific date in the near future. *E.g.*, FAC ¶ 85. Such allegations are more than sufficient. *Girardot*, 251 Ga. App. at 106 (enforcing promise not to develop waterfront property).

### Conclusion

For the foregoing reasons, Delta's motion should be denied in full. Alternatively, to the extent any claims are dismissed, plaintiffs respectfully request an opportunity to amend the FAC.

---

[13] *Hendon Props. v. Cinema Dev.*, LLC, 275 Ga. App. 434, 440 (2005) (fact that a promise "is performable in the future does not preclude the application of promissory estoppel"); *Mooney v. Mooney*, 245 Ga. App. 780, 783 n.14 (2000) ("This is not to say promissory estoppel does not apply to promises of future acts; the doctrine can apply to an executory promise."). *Ga. Invs. Int'l, Inc. v. Branch Banking & Tr. Co.*, 305 Ga. App. 673, 675 n.2 (2010) (promissory estoppel primarily concerns representations "of future intent" rather than of "past or present fact").

Respectfully Submitted:

January 12, 2026
New York, New York

**GREENBAUM OLBRANTZ LLP**

Casey J. Olbrantz
Giorgio Traini
244 Fifth Avenue, Suite C221
New York, NY 10001
646-818-0913
casey@greenbaumolbrantz.com
giorgio@greenbaumolbrantz.com

Carter E. Greenbaum
160 Newport Center Drive, Suite 110
Newport Beach, CA 92660
carter@greenbaumolbrantz.com

*Counsel for Plaintiffs*