# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------x

25-CV-4608(RER)

MEYER,

Plaintiff,

-versus-

DELTA AIRLINES, INC.,

Defendant.

------------------------------x

United States Courthouse
Brooklyn, New York

November 06, 2025
10:30 a.m.

TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
BEFORE THE HONORABLE RAMON E. REYES, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES

For the Plaintiff: BY: KENNETH FOWLER, ESQ.

For the Defendant: BY: CASEY J. OLBRANTZ, ESQ.
CARTER GREENBAUM, ESQ.

Court Reporter: Rivka Teich, CSR, RPR, RMR, FCRR
Phone: 718-613-2268
Email: RivkaTeich@gmail.com

Proceedings recorded by mechanical stenography. Transcript produced by computer-aided transcription.

(In open court.)

THE COURTROOM DEPUTY: All rise. Honorable Ramon E. Reyes, Jr. presiding.

THE COURT: You may be seated.

THE COURTROOM DEPUTY: Civil cause for a premotion conference, Meyer versus Delta Airlines Inc., 25-CV-4608.

Counsel for the plaintiff, state your name for the record.

MR. OLBRANTZ: Good morning. Casey Olbrantz on behalf of the plaintiffs. I'm here with my partner, Carter Greenbaum.

THE COURTROOM DEPUTY: Counsel for the defendant, state your name.

MR. FOWLER: Good morning, your Honor. Kenneth Fowler on behalf defendant Delta Airlines Inc.

THE COURT: Good morning. So Mr. Noller decided not to come.

MR. FOWLER: Mr. Fowler asked me to assist in this matter.

THE COURT: So he's throwing you under the bus. This is your client's motion, so why don't you tell me about it. I'd like you to address the issues separately and in the order that they are raised in the letter. Tell me about the motion.

MR. FOWLER: Yes, your Honor.

So first, as your Honor knows, this is a case where four plaintiffs are suing on behalf of a purported class, allege that they were misled when they selected their seat assignments on their flights. First, plaintiffs fail to state a claim for breach of contract due to the plane terms of the parties' agreement. The parties' contract of carriage expressly provides that seat assignments are not guaranteed and form no part of this contract.

THE COURT: But the contract of carriage says in Rule 1A that the terms of the contract are contained in the contract of carriage and the ticket.

MR. FOWLER: That's correct, your Honor. The complaint, however, does not identify a single alleged item or term that were in any of the named plaintiff's tickets. The complaint in fact does not identify a single email, document or screen that any of the four named plaintiffs here allegedly received from Delta; where they selected a seat that was, quote, "a window", end quote, seat. There are allegations in the complaint about what some passengers generally may see, but not what about what these particular plaintiffs. There is a general allegation I believe in the first paragraph of the complaint that indicates that certain ticket records may have said that there was a window on some of the tickets.

THE COURT: Does Delta charge extra for window seats?

MR. FOWLER: No, your Honor. This is probably a little more fact intensive. Generally, there are a few different categories of seats. One is the main basic seats, and for those seats your seats are assigned by the airline. Two, the main classic seats. In those seats --

THE COURT: The main what?

MR. FOWLER: Classic. In those seats the passenger who selects it can select their seats. There is no difference in fare for window seats, aisle seats, middle seats on the main class. There are additionally options where passengers can pick preferred seats, but the preferred seats are selected and priced based on their position on the plane from essentially from front to back or in aisles with extended leg room. But there is no differential pricing for the window seat versus the aisle seat.

THE COURT: Wasn't there a case dealing with the leg room issue and the court held that, it might have been a state court case, but held that when Delta or carriers sells a seat with advertised extra leg room, that's part of the contract.

MR. FOWLER: Your Honor, yes, but this case is different in a few ways. Number one, is that the pricing wasn't dependent on the window seat. The four plaintiffs listed here they have various theories of the consideration that they provided.

One of the plaintiffs, Ms. Roberts, for example,

alleges that her consideration was the fact that she had already bought a commercial credit card that had certain benefits to select seats. There is no allegation, for example from that plaintiff, that they paid for a window seat. It's that plaintiff paid credit card fees under completely separate contract. So that differentiates this one here.

Several of the other passengers as well selected -- at least one selected one main cabin instead of main basic to select seats. But selecting main cabin does not guarantee a window seat at all. It allows you to select your seat wherever on the plane. Most customers select seats towards the front of plane to exit more quickly.

THE COURT: Does it allow you to select a particular seat?

MR. FOWLER: It does, your Honor. One of the things that is notable here is that none of the plaintiffs allege that when they bought their seat the screen that when they bought their seat actually says window. Delta's general interface on the app it has seats along the side of the plane, but there is no graphic representation of a window or statement of a window there. That's on paragraph 57 -- excuse me, paragraph 57 is separate image that the plaintiffs have identified. But when a passenger actually books the seat there is a graphic representation of the aisle then the edge of the plane; but in the selection process it doesn't

necessarily say window. There is I think one exception that the plaintiffs allege that if you chose a preferred seat some passengers may see something that says window when they select it.

We disagree factually, but just as a pleading matter, there was no allegation in the complaint that any of the passengers who are plaintiffs here saw that screen when they booked their tickets.

THE COURT: So getting back to your main argument, is that the conditions of carriage is it, as far as the terms of the contract. Or, are you agreeing with me that the terms of the contract includes what is on the ticket?

MR. FOWLER: We agree, the conditions of contract specifically say, as you said, three items: The conditions of carriage, it is the ticket, and it is the published fares and schedules. Those are the three items that comprise or where the contract of carriage is embodied.

THE COURT: So summarize your argument with respect to Counts One and Two in the complaint.

MR. FOWLER: Sure. With respect to Count One, there aren't adequately pleaded facts that says there was anything in the ticket that these four received that said window. There are general allegations about what hypothetical passengers might see, but not about what these passengers actually saw. In addition, the ticket cannot nullify the

express term of the condition of carriage that says that seat assignments are not guaranteed and form no part of the contract.

With respect to the implied covenant claim and the breach of contract claim, we believe that the Airline Deregulation Act preempts and bars the claims as well. The ADA confines courts in breach of contract actions to the parties' bargain with no enlargement or enhancement based on state laws or policies external to the agreement. We contend that attempting to enlarge the contract by affixing a term that is not expressly included bars this approach.

That's the Pica versus Delta Airlines case that we cite in our letter 2019 Westlaw 1598761.

THE COURT: I'm a little troubled by the seat assignment argument. A particular seat assignment may not be guaranteed but the type of seat if it's written into the ticket, isn't that binding? So for example, you purchase a ticket that has a wider seat more leg room, and that's in your ticket. Whatever class you called it --

MR. FOWLER: There was main basic and main cabin, your Honor.

THE COURT: That would be a main cabin seat?

MR. FOWLER: Main classic.

THE COURT: Main classic. You purchase a main classic seat, can Delta just put you in any other seat and say

so what?

MR. FOWLER: That's not our argument here. Our argument here is two-fold.

Number one is that there is no allegation in the complaint that these particular plaintiffs chose a seat that said window. So there is, we don't even get to the threshold issue of that.

And number two, there is no additional consideration paid for a window versus an aisle seat, or as plaintiffs would phrase it a window versus a windowless seat. Therefore, we're actually looking at the same type of seat that was paid for.

THE COURT: Mr. Olbrantz, do you want to respond?

MR. OLBRANTZ: Certainly, your Honor. A few quick points of a lot there.

So first, Delta does charge extra to pick a window seat. You can't obtain one without remitting additional consideration on top your base airfare.

THE COURT: The plaintiffs did that here?

MR. OLBRANTZ: They did. We did specifically allege each allegation for each particular plaintiff in paragraphs eight through ten. And you'll see, for example, Lea Roberts was a plaintiff. She specifically alleged that after she purchased her tickets she experienced -- she purchased a round-trip flight and she experienced a windowless window seat on the first leg of the trip and then she specifically alleged

that she checked the website and saw her ticket, which did explicitly state there was a window again. That folds down to the point of the tickets that we're alleging have a window term. The contract of carriage describes the tickets and states that, it implies, that they are not public and they are in Delta's electronic reservation system. And that a customer can review the contents of their ticket by going to the website and putting in the trip identifiers. As we specifically laid out in the complaint, when you go through that process, the Delta electronic reservation system draws information from the ticket and it explicitly states that you are in a window seat. So one way or another, there must be information in the ticket that it has a window term for these plaintiffs.

You brought up the case about extra leg room. That was the O'Callahan case that we cited in our letter motion in the Northern District of Illinois. That case and another case that we cited, the American Express case in Southern District of New York from the 1980s, both rejected Delta's particular argument about Rule 2.

In both of those cases the airlines relied on a provision in the contracts of carriage that stated essentially the airline does not guarantee any particular space on the flight. In those cases, one of the plaintiffs alleged, in the O'Callahan case, that there were advertisements about extra

leg room on I believe it was Southwest flights. And the Court found that those essentially merged into the contract and became part of Delta's -- of Southwest's offer.

Similarly, in the American Express case, I think British Airways made representations on the ticket that the plaintiff was assigned to a non-smoking section. And they relied on a similar language as Rule 2 here, the airline did, to argue that was barred. But it's an opposite; it doesn't specifically cover these circumstances.

As far as the individual plaintiffs go and their specific allegations, I guess I wasn't raised in Delta's letter motion. We do think the plaintiffs particularized allegations are sufficiently specific to withstand a motion to dismiss on that basis.

Ultimately, what really matters is that the underlying tickets that Delta generated when plaintiffs paid extra money to select a particular seat, Delta generated a ticket which Delta concedes is an enforceable contract, that states that the passenger has bought a window.

THE COURT: That's paragraphs eight?

MR. OLBRANTZ: Paragraphs eight through 11, detail the specific --

THE COURT: Each individual plaintiff's --

MR. OLBRANTZ: -- particular experience. And then paragraphs 60 and 61 of the complaint detail allegations of

how the electronic tickets work and they include a window term.

I would also point out Delta's letter motion didn't contest the fact that the tickets include a window term.

THE COURT: Mr. Fowler, you have other arguments to make?

MR. FOWLER: Yes, your Honor.

You asked about Count Two before. The other argument we have on Count Two, which was the implied covenant claim, is that it fails to state a claim under Georgia law. Georgia law doesn't have a separate implied covenant cause of action. And in our motion to dismiss, assuming we're allowed to file it, we'll explain that Georgia law requires a plaintiff to show that a defendant abused discretion afforded it in a contract, and that the allegations here don't suffice.

But moving on to our final two arguments --

THE COURT: Can I prohibit you from filing a motion?

MR. FOWLER: I don't believe so, your Honor.

THE COURT: Perhaps dissuade you from filing this motion.

MR. FOWLER: You can encourage us.

THE COURT: Okay. Your other arguments, please.

MR. FOWLER: Yes, your Honor.

Count Three for promissory estoppel should be dismissed as the Georgia Court of Appeals explained in Blau V

Bluau case that we cited. There are three circumstances where the theory of promissory estoppel can apply. One there is no written agreement between the parties. Two, is that the written agreement is unforcible for some reason. And three, is that there was a post-contract promise.

Plaintiffs in their reply letter argue that their claim survives if they, what they call the window term -- we disagree there is a window term -- they say if the window term is not enforceable the promissory estoppel claim can survive. That misses the point. Under governing Georgia law plaintiffs would need to plea there was no enforceable contract whatsoever, not that a particular term in the contract did not exist. So the promissory estoppel claim should be dismissed for that claim.

Additionally, it must be dismissed because under the Airline Deregulation Act an attempt to enforce promises that don't appear in the parties' contract, would be preempted That's the Schneberger versus Air Evac EMS case that we cite in the letter.

Your Honor, there was one argument that we raised in the letter --

THE COURT: Let's deal with that argument first, the promissory estoppel argument.

Mr. Olbrantz, do you want to respond?

MR. OLBRANTZ: Yes, certainly. Two theories that

we're pursuing.

The first theory which are the representations at the time of contract formation that there was a window.

We disagree on Georgia law, ultimately. This is case law supporting the proposition if a term is in a contract and that term is not enforceable, that that term can still be the basis of an enforceable promise on an estoppel theory under Georgia law. For example, say there was a recital in a contract that made up representation, and that is technically an enforceable term of the contract but it's something that is not merges into the contract and it is enforceable representation under Georgia law.

Either way, there is second element of the promissory estoppel claim and that's that after the time of contract formation Delta does make affirmative representations that plaintiffs perfected a window seat. That's important. They can change that seat assignment up to any time before their flight, or buy a new seat assignment by upgrading to a different class of ticket and pick a different seat. So they are detrimentally relying, ultimately, on the post-contractual representation that, yes, in fact, you have bought a window seat to abstain from changing their tickets. One way or another, we think we sufficiently stated a promissory estoppel claim.

And the ADA shouldn't have any effect on that claim.

We cited on point case law. Essentially, as long as you stated a claim about a valid undertaking -- about a voluntary undertaking that the airline has undertaken to provide to a consumer, as long as under principles of state law contract interpretation as long as you can allege that there is that obligation, the ADA does preempt it. It preempts trying to enforce community standards. It doesn't have any relevance to what the parties' individual obligations to one another and the representations to one another. It just bars state law.

On the implied covenant, so that claim seeks to vindicate the meaning of the window term in the contract. That's permissible under Georgia law and the ADA.

The claim essentially exists to rebut Delta's argument. As we allege in the complaint, Delta will claim that a window seat is a location and not an actual window. So the implied covenant claim is necessary to vindicate consumers' reasonable expectation when they buy a window seat they are not buying a location they are buying a seat with an actual window. Delta cited one case to support their argument about the implied covenant, Dusco in the Northern District of Georgia, which we lay out in our letter is unpersuasive and did cite Georgia law; nor, analyze the terms of Delta's merger clause; which I'm happy to go into why, but we don't believe that's sufficient under Georgia law to disclaim the implied covenant and that we otherwise sufficiently stated a claim.

THE COURT: Last word, Mr. Fowler?

MR. FOWLER: The final argument was that the Court should strike and dismiss the request for attorneys fees. Rule 23H, which plaintiffs cite, it does not actually authorize an award of fees here. Rule 23H provides for procedures to award fees where the fees are, quote, "authorized by law or the parties agreement," end quote.

Here the parties' agreement does not authorize fees nor does any statute the ADA or any other source of law authorize fees here. Therefore, the request for attorneys fees should be struck.

MR. OLBRANTZ: We're not seeking fee shifting. This is more of a procedural allegation, that if this results in a common fund that we get attorney fees under 23H. Delta argued that they cited case law essentially alleging that we're seeking bad faith exception to the American rule fee shifting, which we're not.

THE COURT: I wouldn't characterize this as a slam dunk. I think your breach of contract arguments are probably not going to carry the day. I'll let you make the motion; you're going to make the motion, you have that right. But I expect it would not be a fully successful attempt. You haven't met with Judge Eichenholtz, have you?

MR. FOWLER: Correct. Our initial conference is scheduled for December 2, your Honor.

THE COURT: Have you met and conferred on a discovery plan?

MR. FOWLER: We have been in contact and have a meeting scheduled for tomorrow.

THE COURT: Okay. Let's assume the case survives a motion one way or the other, does the discovery change as far as if some of the claims are dismissed but others go forward? It seems to me the discovery is what the discovery is.

MR. FOWLER: Your Honor, I think the largest potential change are the class allegations here. And your Honor, I apologize I would need to think a little more deeply as to whether there is any other change if some claims go forward but others do not.

THE COURT: When you meet tomorrow you should plan to try to come up with a schedule for all of the discovery. And if the motion is partially successful you can pare things back a little bit later on.

What about a briefing schedule, have you talked about that?

MR. FOWLER: We haven't, your Honor. We would like to request until December 19 to file our motion. We have a few complex international travel and other conflicts in November.

THE COURT: I follow the bundling rule. You're not going to file anything until the motion is fully briefed.

When you talk tomorrow about discovery, why don't you talk about a briefing schedule, and come up with what works for you, and get that to me by next Wednesday.

MR. FOWLER: Yes, your Honor.

THE COURT: Tell me what the briefing schedule is. I can tell you, you have many people ahead of you in the cue as far as motion to dismisses, motions for summary judgment, and other things. We follow first in and first out rule. Hurry up and wait.

MR. FOWLER: Understood, your Honor.

THE COURT: When you have your meeting with Judge Eichenholtz, he's going to ask you whether you've had any discussions about resolution, so be prepared for that. If you haven't, fine. But it's something you should think about.

MR. FOWLER: Yes, your Honor.

THE COURT: Anything else gentlemen?

MR. OLBRANTZ: No, your Honor. Thank you for your time.

MR. FOWLER: Nothing here, your Honor. Thank you.

THE COURT: Excellent. Thank you.

(Whereupon, the matter was concluded.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Rivka Teich*
Rivka Teich, CSR RPR RMR FCRR

Official Court Reporter
Eastern District of New York