**GREENBAUM OLBRANTZ** LLP

**Casey J. Olbrantz**
244 Fifth Avenue, Suite C221
New York, NY 10001
casey@greenbaumolbrantz.com
646-818-0913 (Direct)



July 10, 2026

Via ECF

Honorable Ramon E. Reyes, Jr.
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:** *Bernardo et al. v. Delta Air Lines, Inc.*, Case 1:25-cv-04608-RER-SDE

Dear Judge Reyes,

Plaintiffs respectfully submit this Notice of Supplemental Authority to bring to the Court's attention the recent decision in *Brenman v. United Airlines, Inc.*, No. 25-cv-06995-JD, 2026 U.S. Dist. LEXIS 148996 (N.D. Cal. July 6, 2026) (attached as Exhibit 1). As briefly set out below, the *Brenman* case provides additional support for denying Delta's motion to dismiss, which was fully submitted on January 28, 2026. ECF 26 (Motion); ECF 28 (Opposition); ECF 29 (Reply).

Similar to the facts and claims in this case, the plaintiffs in *Brenman* allege that United Airlines has planes with "seats next to a solid wall that are sold as 'window seats' on United's booking page, and so labeled on boarding passes," and that "passengers paid higher fees for these seats without knowing that there was, in fact, no window." *Brenman*, 2026 U.S. Dist. LEXIS 148996, at *2. The *Brenman* plaintiffs brought claims for breach of contract, breach of implied contract, and promissory estoppel. Like Delta, United moved to dismiss on Airline Deregulation Act preemption and Rule 12(b)(6) grounds, and the court denied the motion in full.

Concerning ADA preemption, the court stated that the "principles" described in *Wolens*, *Ginsberg*, *Hickcox-Huffman*, and *ATA Airlines*—which were each discussed in Plaintiff's opposition in this case (ECF 28)—"make short work of United's [preemption] theory" because "[n]o state action is in question." *Id.* The court held that ADA preemption was "not in play" because the claims arose "from contracts between United and its customers, or from other voluntary undertakings that gave rise to implied contracts and enforceable promises." *Id.*

The court also rejected United's core Rule 12(b)(6) argument that "the boarding passes and reservations pages that say 'window seat' are not part of an express contract," which the court stated was "not well taken." *Id.* The court evaluated the meaning of "Ticket" in United's contract of carriage, and determined it plausibly encompassed the "record of agreement" and "electronic ticket." *Id.*[1] It then found that United's representations about window seats on "reservation screen[s]" and boarding passes provided plausible bases for plaintiff's contract and quasi-contract claims. *Id.* at *4-6. Here, although Plaintiffs do not allege that Delta's boarding passes make express representations about window seats, Plaintiffs do allege that Delta "reservation pages" make express representations about windows, both during the booking process and post-purchase. *E.g.*, ECF 16 at ¶ 36 (screenshot of website during booking process), ¶ 54 (post-purchase

---

[1] Delta's contract of carriage uses the same language in reference to its "Tickets." *See* ECF 16 at ¶¶ 55-60.



reservation system states whether passengers have booked a "window" seat). Plaintiffs also allege that Delta makes additional pre-flight representations about windows that were not at issue in *Brenman*. *E.g.*, ECF 16 at ¶ 37 (Delta "enables passengers to designate standing preferences to be assigned 'window' or 'aisle' seats for their ticket class to save time during booking," and "offers similar options for passengers to request upgrades on booked flights").

Finally, similar to Delta's motion, United's motion to dismiss included extensive arguments that the subject matter of the claims was "disclaimed" by various provisions in its contract of carriage. The *Brenman* court implicitly rejected those contentions and found that "[n]o more is needed at this stage for the breach claims to go forward." 2026 U.S. Dist. LEXIS 148996, at *5.

We thank the Court for its attention to this matter.

Respectfully submitted,

Casey J. Olbrantz

cc:     All counsel of record via ECF

# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARC BRENMAN, et al.,

        Plaintiffs,

   v.

UNITED AIRLINES, INC.,

        Defendant.

Case No.  25-cv-06995-JD

**ORDER RE MOTION TO DISMISS**

In this putative class action, plaintiff Marc Brenman says defendant United Airlines breached its contracts by selling Brenman a window seat that didn't have a window.  Dkt. No. 24 (first amended complaint (FAC)) ¶ 70.  United asks to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6) on the theory that it is barred by the Airline Deregulation Act of 1978 (ADA), 49 U.S.C. § 41713(b)(1), and fails to state a plausible claim for relief.  *See* Dkt. No. 32. Dismissal is denied.

**BACKGROUND**

As alleged in the FAC, United started to charge seat selection fees in 2017, and set higher fees for more desirable seats.  Dkt. No. 24 ¶¶ 21-23.  Some of United's planes have seats next to a solid wall that are sold as "window seats" on United's booking page, and so labelled on boarding passes.  *Id.* ¶¶ 36, 43, 58. Brenman says that passengers paid higher fees for these seats without knowing that there was, in fact, no window.  *Id.* ¶¶ 9-15.  The FAC alleges causes of action for breach of contract, breach of implied contract, and promissory estoppel.  *Id.* ¶¶ 83, 90, 97, 100.

**DISCUSSION**

**I.   PREEMPTION**

Up to 1978, under the Federal Aviation Act of 1958, the Civil Aeronautics Board "closely

regulated air carriers." *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014). This changed when Congress enacted the Airline Deregulation Act of 1978 (ADA), "which largely deregulated domestic air transport." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995). "To ensure that the States would not undo federal deregulation with regulation of their own," *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992), the ADA has a preemption provision that prohibits the States from enacting or enforcing a law "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1).

As this plain language indicates, preemption does not bar claims arising out of an "airline's alleged breach of its own, self-imposed undertakings." *Wolens*, 513 U.S. at 228. Specifically, "state law breach of contract claims are not preempted." *Hickcox-Huffman v. U.S. Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017). That is so because contracts between air carriers and their customers are "privately ordered obligations," and not a "state-imposed regulation" barred by the ADA. *Wolens*, 513 U.S. at 222, 228. ADA preemption does not bar claims based on obligations that "the parties voluntarily undertook." *Ginsberg*, 572 U.S. at 285; *see also Wolens*, 513 U.S. at 228 (contracts are "self-imposed undertakings" not subject to the ADA).

These principles make short work of United's theory that the FAC is preempted. No state action is in question here. All of the claims in the FAC arise from contracts between United and its customers, or from other voluntary undertakings that gave rise to implied contracts and enforceable promises. Consequently, preemption is not in play. *See Hickcox-Huffman*, 855 F.3d at 1062 (breach of express and implied contract claims not preempted); *ATA Airlines, Inc. v. Fed. Exp. Corp.*, 665 F.3d 882, 884 (7th Cir. 2011) (promissory estoppel claims not preempted).

## II.    PLAUSIBILITY

Turning to the sufficiency of the FAC, all of the contract claims are plausibly alleged. The parties did not meaningfully address choice of law but cited California state cases in their motion papers. The Court will follow suit for present purposes, without definitively deciding choice of law.

The elements of a cause of action for breach of contract in California are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

2

breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011); *see also Qayumi v. Talent Net, Inc.*, No. 21-CV-00323-JD, 2023 WL 218961, at *2 (N.D. Cal. Jan. 17, 2023).

United does not take issue with the first, second, or fourth elements as alleged in the FAC. It says only that there was not a breach because (1) the boarding passes and reservations pages that say "window seat" are not part of an express contract, and (2) "window" refers to the location of a seat in relation to the cabin aisle, and not to an actual window. Dkt. No. 32 at 8-12.

The points are not well taken. To start, the parties agree that the Contract of Carriage (CoC) is the operative agreement between the parties, and that it incorporates the "terms and conditions printed on or in any ticket." Dkt. No. 32-2 at ECF p. 4.[1] A "Ticket" is defined as "the record of agreement, including electronic tickets, . . . for Passenger air transportation." Dkt. No. 32-2 at ECF p. 10. "No person will be entitled to transportation except upon presentation of a valid Ticket." *Id.* at ECF p. 15.

These terms plausibly establish that United expressly agreed to provide a seat with a window to passengers who paid for one. The ticket that entitles the passenger to fly on United is a boarding pass that expressly states a window seat was purchased. Dkt. No. 24 ¶ 62; Dkt. No. 24 at 24 n.2. The reservation screen used to buy the ticket made unequivocal representations "at the time of booking" that United would provide a window seat. Dkt. No. 24 ¶ 63. No more is needed at this stage for the breach claims to go forward.

United's proposed definition of "window seat" does not change this conclusion. United says that "window seat" should be understood to mean a location relative to the aisle and not a literal seat next to a window. *See* Dkt. No. 32 at 10-11. But that raises a question of fact outside the four corners of the FAC and the scope of the Rule 12(b)(6) motion at hand. Overall, the FAC plausibly alleges that United contracted to provide a "window seat" but did not do so.

So too for the claims for breach of implied contract. A claim for breach of implied contract "has the same elements as [] a cause of action for breach of contract, except that the

United States District Court
Northern District of California

---

[1] United's request for judicial notice of the Contract of Carriage, *see* Dkt. No. 32-1, is granted. The request for judicial notice of the other documents is denied.

promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008); *see also In re San Francisco 49ers Data Breach Litig.*, No. 3:22-CV-05138-JD, 2024 WL 3849336, at *3 (N.D. Cal. Aug. 15, 2024). The allegations with respect to the reservation screen and boarding passes plausibly establish these elements.

The claim for promissory estoppel is also plausibly alleged. Promissory estoppel arises in California when there was a clear and unambiguous promise reasonably and foreseeably relied upon by a party to his injury. *See U.S. Ecology, Inc. v. State of California*, 129 Cal. App. 4th 887, 901 (2005). The FAC plausibly alleges this claim in the alternative to the breach of contract claims. *See* Dkt. No. 24 at 32; *Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1413 (2014) (permitting alternative pleading of promissory estoppel claims).

**IT IS SO ORDERED.**

Dated: July 6, 2026

_____
JAMES DONATO
United States District Judge

United States District Court
Northern District of California

4