GREENBAUM OLBRANTZ LLP

**Casey J. Olbrantz**
244 Fifth Avenue, Suite C221
New York, NY 10001
casey@greenbaumolbrantz.com
646-818-0913 (Direct)

July 14, 2026

Via ECF

Honorable Seth D. Eichenholtz
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: *Bernardo et al. v. Delta Air Lines, Inc.*, Case 1:25-cv-04608-RER-SDE**

Dear Judge Eichenholtz,

The parties write jointly pursuant to the Court's individual rules to raise two sets of discovery disputes that they have been unable to resolve after attempting to confer via multiple meetings and extensive correspondence. The parties' respective positions are set forth below, and the relevant requests and objections are compiled as Exhibits 1 and 2.

## I. Plaintiff's Requests for Production Number 3, 8, 17, 18 and 19

### A. Plaintiff's Positions

**RFP 3.** This request seeks basic transaction-level data concerning Delta passengers who paid to select window seats but were seated in Windowless Window Seats. These are core records that are foundational to class certification (*e.g.*, commonality, predominance, numerosity, damages) and the merits. *Brenman v. United Airlines, Inc.*, No. 25-cv-06995-JD (N.D. Cal. May 18, 2026) (ECF 49 & 55) (compelling airline to produce similar data for putative class member transactions concerning particular seat types); *Everett See v. Gov't Emps. Ins. Co.*, 2025 U.S. Dist. LEXIS 202546, at *10 (E.D.N.Y. Oct. 11, 2025) (compelling production of transactional data for putative class); *Yingling v. Ebay, Inc.*, 2010 U.S. Dist. LEXIS 12800, at *12 (N.D. Cal. Jan. 29, 2010) (class transactional data relevant to certification and merits). Delta never objected to relevance, and has waived the point. Its R&Os interposed conclusory overbreadth and burden objections (Ex. 1), which "are insufficient to exclude discovery." *See*, 2025 U.S. Dist. LEXIS 202546, at *10. Delta recently clarified that its objection is not to producing transactional data itself, but to taking the initial step of identifying windowless seats, which it asserts is "challenging" because it "would require physical inspection of aircraft … across multiple cities" that would take "months of labor and thousands of dollars."

Delta's burden objection is both belated and insufficient. *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (objector must "specifically" demonstrate burden with affidavits or evidence). The objection is also unpersuasive. Crucially, in response to an undisputed RFP (No. 2), Delta agreed to produce "Documents sufficient to identify all Windowless Window Seats on all of [its] aircraft," and has begun producing them. It is unclear how that can be squared with Delta's new position that it must inventory all of its seats. And Delta's "business disruption" justifications are belied by the facts that: (1) Delta routinely inventories its seats, as evidenced by the fact that it discloses when seats have "Limited Recline" or "No Floor Storage," and (2) Delta's competitors inventory their seats and identify windowless seats to passengers. ECF 16 at ¶¶ 50-51.

Ultimately, this discovery is proportional to the needs of the case even if Delta must undertake a manual inventory. The existence and sale of windowless seats are *the* central issues in this action. The case could never proceed to conclusion if the seats are not properly identified. Given the centrality of the requested data, its uncontested relevance, Delta's exclusive control over it, and the (very) large class size and the value of their claims, Delta's claimed burden of "thousands of dollars" is not disproportionate. *Brenman*, No. 25-cv-06995-JD (ECF 55) (compelling productions of similar data); *Chen-Oster v. Goldman, Sachs & Co*., 285 F.R.D. 294, 305 (S.D.N.Y. 2012) (retrieval of four archived databases requiring hundreds of hours to restore was proportional where the "information in the databases is central to the plaintiffs' claims," there were "at least hundreds" of putative class members, amount in controversy was "substantial," and defendant had "ample resources").

**RFP 8.** This request seeks the "standard form" of all "Tickets" that Delta generated or issued to class members. It defines "Ticket" to "mean any Document, Communication, or ESI reflecting the record of agreement between passengers and Delta, including tickets, electronic tickets, e-tickets, receipts, confirmations, and/or boarding passes for air travel," Ex. 1, which accords with Delta's definition of "Ticket" in its Contract of Carriage. ECF 16 at ¶¶ 54-61. The nature and contents of "Tickets" are central to Delta's defenses in this action, and to its pending motion to dismiss. ECF 26, 28 & 29. Indeed, Delta never interposed an objection to this request other than prematurity (which is now moot), and never objected to the definition of "Ticket," either. Ex. 1. Notwithstanding the clear and undisputed relevance of this request and Delta's lack of objections, Delta recently adopted the "position" that "the ticket is the 13-digit number passengers receive," meaning there "is no further production Delta can make in response." But that does not absolve Delta of its duty to produce the other items identified in Plaintiff's RFP, such as the "standard forms" of electronic tickets, receipts, and boarding passes throughout the class period. *E.g.*, *Brenman v. United Airlines, Inc.*, 2026 U.S. Dist. LEXIS 148996, at *2-4 (N.D. Cal. July 6, 2026) (finding "boarding passes" and "reservation screens" relevant to construction of United Airlines "Tickets"). Such documents must be produced.

**RFP 17 & 18.** RFP 17 seeks "All Documents and Communications concerning complaints passengers made to [Delta] about Windowless Window Seats," and RFP 18 seeks documents sufficient to show all refunds or compensation issued (or not issued) in response. Such documents are highly relevant. Delta's core defense to date is, essentially, that it does not sell window seats. ECF 26. But as shown in the Complaint, when passengers complain that they bought window seats but received windowless ones, Delta representatives often confirm the passenger's expectations and issue compensation. ECF 16 at ¶¶ 45-48. Thus, responsive documents go to core merits issues of contract construction, the implied covenant, and damages. *Cox v. Spirit Airlines*, 341 F.R.D. 349, 357-71 (E.D.N.Y. 2022) (evaluating contractual obligations with reference to evidence of airline's practices and consumer expectations). And, as other courts have found in similar contexts, putative class member complaints are also relevant to various class certification issues. *Yingling*, 2010 U.S. Dist. LEXIS 12800, at *12-15 (requiring production of complaints despite substantive burden objection).

Delta never objected to the relevance of these requests (Ex. 1), and has not interposed any non-conclusory burden objection. Most recently, Delta has offered to produce responsive data by self-designating *one* custodian and running a limited set of search terms against that unidentified person's ESI. That scope of production is facially inadequate given the importance of the responsive information, and the very low likelihood that a single custodian would possess a material quantity of responsive information given the large size of the putative class (allegedly in the millions) and the enormous scope of Delta's business operations. Delta should be made to respond in full.

**RFP 19**. This request seeks Delta's customer-service policies, procedures, practices, and training materials concerning how its agents describe, sell, address complaints about, and provide refunds or compensation for aircraft windows and Windowless Window Seats. Delta interposed only a relevance objection, Ex. 1, but responsive documents are relevant for similar reasons as RFPs 17 and 18. They bear directly on how Delta understood, described, and sold the seats, whether complaints and compensation were handled through common procedures, and whether liability and damages can be proven through classwide evidence. *E.g.*, Cox, 341 F.R.D. at 357-371. For instance, if Delta has training materials for its booking agents concerning how to address a prospective passenger's request for a "window seat," that could be highly relevant to contract formation and construction issues.

In tacit recognition of the request's relevance, Delta has proposed producing documents in the same manner as with RFPs 17 and 18 from the *same* yet-unidentified custodian. Once again, that is insufficient. While this request also seeks ESI, responsive policy, procedure, and training documents are discrete, identifiable documents that ought to be easy to locate. Whether they are produced cannot be left to the chance that one custodian has complete sets of those documents in his or her personal records, and that they all hit on a limited set of search terms. Delta should be made to respond in full.

### B. Delta's Positions

**RFP 3.** This RFP seeks an incredibly burdensome amount of data that Delta does not organize this way in the ordinary course: "transaction-level ESI and data, by passenger and day, for all passengers who sat in Windowless Window Seats on flights to, from, or within the United States." Plaintiffs ignore a crucial difference between this case and *Brenman*: United had already compiled a list of partial window seats. *Brenman v. United Airlines, Inc.*, No. 25-cv-06995-JD (N.D. Cal. Apr. 9, 2026) (ECF 49). Here, Delta has not created a similar list and should not be compelled to review hundreds of thousands of flights to create the list Plaintiffs seek. *See Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.* 2016 WL 4703656, at *11 (E.D.N.Y. Sept. 7, 2016). Plaintiffs' citation to *Yingling v. Ebay, Inc.* fares no better, as that court also compelled only the production of transaction-level data that already existed. 2010 WL 373868, at *4–5 (N.D. Cal. Jan. 29, 2010). Plaintiffs' reliance on *Everett See v. Gov't Emps. Ins. Co.* is similarly misplaced. There, the plaintiffs *also* sought discovery of information that already existed, and defendants' breadth and burden objections were described by the court as "general and conclusory." 2025 WL 2917100, at *3–4 (E.D.N.Y. Oct. 11, 2025). Delta has substantiated its breadth and burden objections in this case where the putative class size could be "in the millions."[1] Requiring Delta to respond to RFP No. 3 is not proportional to the needs of the case at this time.

**RFP 8.** Delta has already produced documents responsive to this Request from its broad custodial search. For Delta passengers, the ticket is the 13-digit number passengers receive after purchasing a flight. Plaintiffs' claim that their alternative definition of ticket "accords with Delta's" contradicts their own Amended Complaint, which concedes that "[t]he Carriage Rules do not define the term 'Ticket.'" ECF No. 16 ¶ 50. Delta thus should not be compelled to produce further documents in response to this request.

**RFPs 17–18.** Plaintiffs incorrectly describe Delta's position on RFP Nos. 17 and 18. Delta has offered to produce an exemplar set of one hundred responsive complaints and their resolutions (i.e., whether they resulted in some form of compensation). This offered production is proportional to the needs of

[1] Moreover, neither *John Wiley* nor Plaintiffs other cases hold that a party waived an objection by not serving an affidavit during the meet-and-confer process. *See* 298 F.R.D. 186.

the case at this time, as production of all complaints and resolutions would require individualized review of Delta's tracking system to determine whether the complaints relate to windows.

**RFP 19.** With respect to RFP No. 19, Delta has not yet identified any responsive policies or practices addressing how to describe, sell, or address complaints related to what Plaintiffs call Windowless Window Seats. Still, Delta offered to identify a custodian from its reservation and care team (after first inviting Plaintiffs to review Delta's relevant organizational chart to select someone), to assess whether running broad terms concerning windowless window seats on that person's documents would lead to the identification of any "policies, procedures, practices, and training materials" responsive to this Request. Plaintiffs have sought additional custodians without engaging as to who the appropriate custodian would be. The Court should therefore deny Plaintiffs' request with respect to these RFPs.

## II. Delta's Interrogatories to Plaintiffs Numbered 5, 6, 8 and 18

### A. Delta's Positions

The first paragraph of Plaintiffs' amended complaint alleges that "Delta consistently represented to Plaintiffs, both during and after the booking process, that their chosen seats had a window." ECF 16 ¶ 16. Unaware of any such representation, Delta served interrogatories requesting that Plaintiffs identify the representations upon which Plaintiffs base their claims:

- **No. 5:** "Identify each instance, whether during and after the booking process, in which Delta represented to any Plaintiff or any Plaintiff's traveling companion that his or her seat(s) for any flight identified in the Amended Complaint had a window."
- **No. 6:** "Identify the 'information provided in his booking confirmation and ticket information' which caused Justin Valentine to believe he would be sitting in seats with windows on his flights identified in the Amended Complaint."
- **No. 8:** "Identify every promise or statement You allege Delta made upon which You base Your claim for promissory estoppel in the Amended Complaint."
- **No. 18:** "Other than references to 'window' on any seat map, identify any other language or basis for claiming that Delta promised a window would be located next to the seat(s) You selected, for yourself or Your traveling companion(s), on the flights identified in the Amended Complaint."

Following Delta granting two extensions, Plaintiffs on May 15 served their responses and objections. In response to Interrogatories Nos. 5, 8, and 18, Plaintiffs provided identical responses that fail to identify any particular contractual language, representation, or promise: "Information contained in Delta's e-tickets, representations made in marketing materials, the labels, designs, and visual representation of its seat maps, account profile settings, its seat numbering designations, and through Delta's omission of any disclosure that, contrary to basic industry norms and consumer expectations and experiences, that the exterior-row seats in question would not have a window." Ex. A at Nos. 5, 8, 18. In response to Interrogatory No. 6, Plaintiffs provided a similar but truncated response: "Plaintiff Valentine states that he understood he purchased seats with windows on the flights in question based on the seat maps and designations in Delta's reservation systems." *Id.* at No. 6.

On June 2, the Parties held a meet and confer call in which Delta requested that Plaintiffs augment their responses with additional specificity. On June 10, Plaintiffs' counsel represented that "Plaintiffs may may be willing to provide further specificity at a later date, but believe that their responses are adequately specific at this stage of litigation." On June 17, the Parties held another call, during which Plaintiffs' counsel expressed confusion about how Delta expected Plaintiffs to

supplement their responses. On that call, and in follow-up correspondence on June 23, Delta's counsel explained that Delta was not seeking (as plaintiffs had claimed) detailed narratives of the *events* at issue, but rather asking that Plaintiffs identify the purported contractual language or promises or representations forming the basis of Plaintiffs' allegations and breach-of-contract and estoppel claims. At that time, Plaintiffs declined to supplement their responses.

The information Delta requests is central to Plaintiffs' claim. Without being able to identify any contractual language, any representation, or any commitment, Plaintiffs' breach-of-contract and promissory estoppel claims necessarily fail. Because Plaintiffs failed to identify the relevant contractual language in their complaint, these interrogatories are paradigmatic examples of requests that help "narrow" and "sharpen" the issues in this litigation—even if these interrogatories are considered "contention" interrogatories. *See* FED. R. CIV. P. RULE 33 advisory committee's note to 1970 amendment ("Opinions or contentions that call for the application of law to fact, they can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery."). Delta is entitled to discover the reasons it has been haled into court in order to defend itself.

Plaintiffs' responses to date—which vaguely reference categories of purported representations (and categories of documents allegedly containing them) without identifying the representations upon which they base their claims—are insufficient. *See S.E.C. v. Ripple Labs, Inc.*, 2021 WL 5336970, at *1 (S.D.N.Y. Oct. 21, 2021) (requiring plaintiff to supplement an interrogatory response "to identify any specific contractual terms and not just 'implicit and explicit promises'" underlying claims); *see also Steady State Imaging, LLC v. Gen. Elec. Co.*, 2018 WL 2047578, at *4 (D. Minn. May 2, 2018) (requiring plaintiff to respond to interrogatory requesting identification and description of "every 'promise' or 'representation'" underlying breach of contract and promissory estoppel claims); *Black Hills Molding, Inc. v. Brandom Holdings, LLC*, 295 F.R.D. 403, 413 (D.S.D. 2013) ("In order for [defendant] to mount a cogent defense to either of [plaintiff's] breach of contract claim or promissory estoppel claim, it must be provided with the alleged statements and directions" which formed the basis of the claim); *U.S. v. Village Partnership*, 2008 WL 630470, at *2 (W.D.N.Y. Mar. 5, 2008) (granting plaintiff's motion to compel supplemental response to interrogatory requesting that defendant state the basis for a contract-based affirmative defense, where defendant's initial response had failed to do so); *Monetti, S.p.A. v. Anchor Hocking Corp.*, 1992 WL 77677, at *2 (N.D. Ill. Apr. 6, 1992) (requiring plaintiff to supplement response to interrogatory requesting a "list [of] the promises made" underlying plaintiff's claim).

Indeed, if Plaintiffs ultimately fail to provide a substantive response identifying the representations upon which they base their claims, dismissal of the claims is proper. *See, e.g., Rates Tech. Inc. v. Mediatrix Telcom, Inc.*, 2007 WL 2581777, at **5–6 (E.D.N.Y. Sept. 5, 2007) (provisionally granting defendant's motion to dismiss unless plaintiff "fully and adequately" responded to interrogatory which requested identification "on an element-by-element basis" of facts forming the basis of plaintiff's patent-infringement claims).

After receiving a draft of this letter, Plaintiffs this morning agreed to provide supplemental responses to Interrogatories Nos. 5, 6, 8, and 18. Plaintiffs have not stated what will be included in those responses. Delta reserves its rights with respect to any supplemental responses.

### B. Plaintiff's Position

There is no ripe dispute concerning these interrogatories because Plaintiffs have agreed to supplement their responses. *E.g.*, *Kacar v. Baba's Rest.*, 2017 U.S. Dist. LEXIS 233070, at *3 (S.D.N.Y. Jan. 9, 2017) ("Where, as here, 'the party responding to the motion agrees to provide the discovery requested, a motion to compel becomes moot.' To the extent that [movant's] portion of the joint letter was a motion to compel, then, it was moot when submitted.") (quoting *Stinson v. City of New York*, 2015 U.S. Dist. LEXIS 99797, at *3 (S.D.N.Y. July 23, 2015)). As Delta's portion of this letter notes, Plaintiffs expressed confusion during the meet-and-confer process about Delta's reasoning for why supplemental responses were necessary at this pre-deposition stage. Plaintiffs understood that Delta sought for the responses to articulate the legal theories undergirding the claims, but the interrogatories do not actually request that information (which is already clearly elucidated in Plaintiffs' Complaint and motion to dismiss opposition). Delta's portion of this letter sufficiently clarified what it is seeking; accordingly, to avoid burdening the Court with unnecessary motion practice, Plaintiffs have agreed in good faith to provide supplemental responses.

* * *

The parties thank the Court for its attention to this matter.

Respectfully submitted,

Casey J. Olbrantz
*Counsel for Plaintiffs*

/s/ *Ken Fowler*___________________
Ken Fowler
*Counsel for Delta*

cc: All counsel of record via ECF

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTHONY BERNARDO, NICHOLAS MEYER, LEAH ROBERTS, and JUSTIN VALENTINE, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>DELTA AIR LINES, INC.,<br><br>*Defendant*. | Case No.: 1:25-cv-04608-RER-SDE |

**DEFENDANT DELTA AIR LINES, INC.'S RESPONSES & OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), Defendant Delta Air Lines, Inc. ("Delta"), by and through undersigned counsel, hereby responds and objects to the First Set of Requests for the Production of Documents ("RFPs") served by Plaintiffs Anthony Bernardo, Nicholas Meyer, Leah Roberts, and Justin Valentine (together, "Plaintiffs"). By responding to the RFPs, Delta does not represent or warrant that any information responsive to any RFP exists in its possession, custody, or control. Delta expressly reserves the right to amend or supplement its Responses and Objections as permitted under the Federal Rules and applicable orders entered by the Court. Delta further reserves all rights to object to the use or submission of any evidence produced in response to the RFPs on any legal, evidentiary, or other basis. No Response or Objection shall be construed as a waiver, admission, concession, or other acknowledgement of any contention, assertion, or characterization of any statement in any of the RFPs.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. Pursuant to the Court's minute order entered December 3, 2025, Delta objects to the Definitions and Instructions to the extent they seek discovery on class certification issues or putative class members other than the four named plaintiffs prior to the status conference scheduled for February 25, 2026. Delta will "focus initial discovery on the four named plaintiffs."

2. Delta objects to the definition of "Relevant Period" as overly broad and not proportional to the needs of this case. For initial discovery, Delta will search for documents during the period commencing on January 1, 2025 to the present. Delta is willing to meet and confer regarding the relevant time frame for any class discovery ordered by the Court.

3. Delta objects to the definition of "You" and "Your" as overly broad, vague, and ambiguous to the extent Plaintiffs expect Delta to search for information in the possession of unnamed and unidentified "partners" or "affiliates" of Delta.

4. Delta objects to the definition of "Windowless Window Seat(s)" as vague and ambiguous, and also to the extent it suggests that Delta identifies seats without windows as "window seats." Notwithstanding the foregoing, Delta will interpret the phrase solely for purposes of these Responses as defined by Plaintiffs, with the limitation that Delta will interpret any reference to the back or front of a seat as referring to the location of that seat when it is in a fully upright position..

5. Delta objects to the definition of "Seat Map(s)" as overly broad and not proportionate to the needs of this case, to the extent Plaintiffs attempt to include in the definition "any . . . internal system view showing seat availability or characteristics, backend or internal versions of such maps; all metadata, programming logic, or data fields associated with seat maps; and any historical, test, or prototype seat maps used in connection with the design, sale or

marketing or airline tickets." Delta will define "Seat Map(s)" to mean "any visual, digital, graphical, or tabular representation—whether static or dynamic/interactive—displayed or maintained by Delta or on Delta's behalf that depicts or describes to potential Delta customers the configuration, layout, features, and/or availability of passenger seats on an aircraft, flight, aircraft type, or route, including without limitation any webpage or mobile-app interface showing seat availability or characteristics."

6. Delta objects to the definition of "Seat Fee(s)" to the extent that it suggests that Delta charged Plaintiffs or other passengers a fee to obtain any particular seat. Notwithstanding the foregoing, Delta will interpret the phrase solely for purposes of these Responses as defined by Plaintiffs.

7. Delta objects to Instruction No. 2 as overly broad, vague, and ambiguous to the extent it calls for all responsive documents in the possession, custody or control of unnamed "affiliates, partners, joint ventures, or other persons acting on your behalf, without regard to the physical location of such documents." Delta will conduct a reasonable search for documents responsive to Plaintiffs' Requests, subject to the objections herein, from the documents that Delta possesses.

8. Delta objects to Instruction No. 3 as imposing obligations beyond those required under the Federal Rules.

9. Delta objects to Instructions Nos. 9 and 10 as imposing obligations beyond those required under the Federal Rules, but Delta will meet and confer with Plaintiffs to negotiate an ESI Protocol which will cover, among other subjects, the metadata fields to be produced with any responsive documents.

**REQUEST FOR PRODUCTION NO. 3.**

Your transaction-level ESI and data, by passenger and day, for all passengers who sat in Windowless Window Seats on flights to, from, or within the United States. Such data shall include: (a) customer identification information, including but not limited to name, address, email address, customer number, or frequent flyer account number; (b) dates of transaction and travel; (c) itinerary number; (d) Ticket numbers; (e) base travel fare; (f) the kind and amount of each and every Seat Fee; (g) the total monetary sum of the transaction, as well as the form of payment (including, for example, the redemption of rewards, utilization of status, or benefits); (h) refunds paid or credits issued by You; (i) any discounts associated with the transaction; (j) Coupon number; (k) for conjunction tickets, a method to identify the ticket as a conjunction ticket and link with ticket numbers; (l) passenger seat number(s); (m) the relevant aircraft model and unique registration number; and (n) identification of the Passenger Booking Interface through which the passenger purchased the Ticket. For any Documents produced in response to this RFP, please also produce documents sufficient to: (a) identify the database(s) or sources of such information; (b) correctly interpret data field names and values (e.g., data dictionaries and decoding documents; and (c) enable, to the extent that codes or values have changed over time as the result of any database platform changes, mapping of data from previous periods to their equivalent current counterparts.

**RESPONSE TO RFP NO. 3.**

Delta objects to RFP No. 3 as overly broad and unduly burdensome, particularly to the extent it requires that Delta's response "shall include" the information listed in items (a) through (n). Delta further objects to RFP No. 3 as requesting information pertaining to prospective class members prior to the issuance of a ruling on the Motion to Dismiss or further order of Judge Eichenholtz, per Judge Eichenholtz's order dated December 3, 2025. Delta further objects to this RFP to the extent it seeks documents and communications regarding passengers who are not class members.

Notwithstanding the foregoing objection, Delta will conduct a reasonable search for nonprivileged documents in its possession, custody, and control responsive to RFP No. 3 and produce transaction-level data for the named Plaintiffs, to the extent it exists.

**REQUEST FOR PRODUCTION NO. 4.**

All Documents and Communications regarding Windowless Window Seats.

**RESPONSE TO RFP NO. 4.**

Subject to the foregoing objection, Delta will conduct a reasonable search for nonprivileged documents in its possession, custody, and control responsive to RFP No. 6, showing how all versions of Seat Maps were provided or displayed to Plaintiffs regarding their seats on the flights identified in the Amended Complaint, to the extent any exist.

**REQUEST FOR PRODUCTION NO. 7.**

Documents sufficient to show all terms and conditions, including any Conditions of Carriage Documents, that You believe may govern any Class Member's purchase of a Windowless Window Seat.

**RESPONSE TO RFP NO. 7.**

Delta objects to RFP No. 7 as improperly requesting information pertaining to prospective class members prior to the issuance of a ruling on the Motion to Dismiss or further order of Judge Eichenholtz, per Judge Eichenholtz's order dated December 3, 2025. Delta further objects to RFP No. 6 to the extent it purports to require Delta to draw legal conclusions, including to the extent it seeks information protected in whole or in part by the attorney-client privilege or the work product doctrine.

Subject to the foregoing objection, Delta will conduct a reasonable search for nonprivileged documents in its possession, custody, and control responsive to RFP No. 7, to the extent they relate to terms and conditions that govern Named Plaintiffs' travel accommodations on Delta as alleged in the Amended Complaint. Delta will meet and confer with Plaintiffs regarding this RFP to the extent the Court orders class discovery.

**REQUEST FOR PRODUCTION NO. 8.**

Documents sufficient to show the standard form of all versions of Tickets generated or issued for any Class Member that paid Seat Fees to obtain a Windowless Window Seat, including, but not limited to any internal versions of such documents maintained within Your electronic reservation system.

**RESPONSE TO RFP NO. 8.**

Delta objects to RFP No. 8 as improperly requesting information pertaining to prospective class members prior to the issuance of a ruling on the Motion to Dismiss or further order of Judge Eichenholtz, per Judge Eichenholtz's order dated December 3, 2025.

Subject to the foregoing objection, Delta will conduct a reasonable search for nonprivileged documents in its possession, custody, and control responsive to RFP No. 8 related to the named Plaintiffs' travel with Delta, including any related Tickets, on the flights identified in the Amended Complaint.

**REQUEST FOR PRODUCTION NO. 9.**

Documents sufficient to show all studies, analyses, market research, surveys, or evaluations You conducted or possess concerning passenger behavior or preferences on seat assignments, including the desirability of windows, and the desirability of other seat amenities or attributes that You market to passengers.

**RESPONSE TO RFP NO. 9.**

Delta objects to RFP No. 9 as seeking information irrelevant to the claims and defenses in this litigation, particularly to the extent RFP No. 9 seeks information related to passenger behavior in a case brought under contract and quasi-contract theories of liability, rather than under false advertising theories of liability.

Notwithstanding the foregoing objection, Delta is willing to meet and confer regarding RFP No. 9.

**REQUEST FOR PRODUCTION NO. 10.**

All Documents and Communications relating to financial analyses of Seat Fees (including for any Exterior-Row Seats or Windowless Window Seats), the pricing of any Seat Fees, any cost-benefit analyses of Seat Fees (including by type of Seat Fee, or type of passenger, and form of consideration for such fees), and the decision to impose or introduce or not impose or not introduce Seat Fees.

**RESPONSE TO RFP NO. 10.**

Delta objects to RFP No. 10 as seeking information irrelevant to the claims and defenses in this litigation, particularly to the extent RFP No. 10 seeks information related to Delta's decision to introduce Seat Fees in a case brought under contract and quasi-contract theories of liability, rather than under false advertising theories of liability.

Notwithstanding the foregoing objection, Delta is willing to meet and confer regarding RFP No. 10.

**RESPONSE TO RFP NO. 15.**

Delta objects to RFP No. 15 as seeking information irrelevant to the claims and defenses in this litigation, particularly to the extent RFP No. 15 seeks information "reflecting industry standards, practices, or customs regarding the labeling and/or marketing" of a product or service in a case brought under contract and quasi-contract theories of liability, rather than under false advertising theories of liability.

Notwithstanding the foregoing objection, Delta is willing to meet and confer regarding RFP No. 15.

**REQUEST FOR PRODUCTION NO. 16.**

All Documents and Communications concerning any changes You made or considered making to your Customer Booking Interfaces, Seat Maps, seat labeling, seat selection process, or seat selection fee structure related to Windowless Window Seats or impacting Your presentation or sale of them to passengers.

**RESPONSE TO RFP NO. 16.**

Delta objects to RFP No. 16 as seeking information irrelevant to the claims and defenses in this litigation, particularly to the extent RFP No. 16 seeks information concerning Delta's "Customer Booking Interfaces, Seat Maps, seat labeling, seat selection process, or seat selection fee structure related to Windowless Window Seats" in a case brought under contract and quasi-contract theories of liability, rather than false advertising theories of liability. Delta further objects to this RFP as overly broad and unduly burdensome because it effectively seeks all documents regarding Delta's user interfaces by seeking changes "considered" to those interfaces that could "impact[]" its presentation of seats to passengers.

Notwithstanding the foregoing objection, Delta is available to meet and confer regarding RFP No. 16.

**REQUEST FOR PRODUCTION NO. 17.**

All Documents and Communications concerning complaints passengers made to You about Windowless Window Seats.

**RESPONSE TO RFP NO. 17.**

Delta objects to RFP No. 17 as overly broad and unduly burdensome, particularly to the extent it seeks "[a]ll Documents and Communications" concerning passenger complaints. Delta further objects to RFP No. 17 as improperly requesting information pertaining to prospective class members prior to the issuance of a ruling on the Motion to Dismiss or further order of Judge Eichenholtz, per Judge Eichenholtz's order dated December 3, 2025. Delta further objects to this RFP to the extent it seeks documents and communications regarding passengers who are not class members.

Subject to the foregoing objections, Delta will conduct a reasonable search for nonprivileged documents in its possession, custody, and control responsive to RFP No. 17 which pertain to the named Plaintiffs only. Delta will meet and confer with Plaintiffs regarding this RFP to the extent the Court orders class discovery.

**REQUEST FOR PRODUCTION NO. 18.**

Documents sufficient to show all refunds, credits, or compensation (including airline miles) You provided or refused to provide to passengers who submitted complaints to You about Windowless Window Seats.

**RESPONSE TO RFP NO. 18.**

Delta objects to RFP No. 18 as overly broad and unduly burdensome, particularly to the extent it seeks "all refunds, credits, or compensation." Delta further objects to RFP No. 18 as improperly requesting information pertaining to prospective class members prior to the issuance of a ruling on the Motion to Dismiss or further order of Judge Eichenholtz, per Judge Eichenholtz's order dated December 3, 2025. Delta further objects to this RFP to the extent it seeks documents and communications regarding passengers who are not class members.

Subject to the foregoing objections, Delta will conduct a reasonable search for nonprivileged documents in its possession, custody, and control responsive to RFP No. 18 which pertain to the named Plaintiffs only. Delta will meet and confer with Plaintiffs regarding this RFP to the extent the Court orders class discovery.

**REQUEST FOR PRODUCTION NO. 19.**

All Documents and Communications concerning Your policies, procedures, practices, and training materials for customer service representatives, booking agents, or other employees or

agents regarding how to describe, sell, address issues and complaints, and/or issue refunds or compensation in relation to aircraft windows and/or Windowless Window Seats.

**RESPONSE TO RFP NO. 19.**

Delta objects to RFP No. 19 as seeking information irrelevant to the claims and defenses in this litigation, particularly to the extent RFP No. 19 seeks information concerning Delta policies concerning "how to describe, sell, address issues and complaints, and/or issue refunds or compensation" in a case brought under contract and quasi-contract theories of liability, rather than under false advertising theories of liability.

Subject to the foregoing objection, Delta is willing to meet and confer regarding RFP No. 19.

**REQUEST FOR PRODUCTION NO. 20.**

All Documents and Communications produced in any prior litigation, arbitration, investigation, or administrative proceeding relating to Windowless Window Seats.

**RESPONSE TO RFP NO. 20.**

Delta objects to RFP No. 20 as seeking information irrelevant to the claims and defenses in this litigation. Delta further objects to this RFP to the extent it seeks documents and communications regarding passengers who are not class members.

Subject to the foregoing objection, Delta states that it is not aware of any such documents or communications produced in any such prior litigation, arbitration, investigation, or administrative proceeding relating to Windowless Window Seats that involved Delta as a party. Delta will inform Plaintiffs if it becomes aware of any such production.

**REQUEST FOR PRODUCTION NO. 21.**

All Documents and Communications between You and any federal regulatory agency regarding Seat Maps, Seat Fees, seat labeling, or customer complaints about Windowless Window Seats.

**RESPONSE TO RFP NO. 21.**

Delta objects to RFP No. 21 as seeking information irrelevant to the claims and defenses in this litigation.

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Anthony Bernardo, Leah Roberts, and Justin Valentine,**<br>*individually and on behalf of all others similarly situated,*<br>Plaintiffs,<br>*— against —*<br>**Delta Air Lines, Inc.,**<br>Defendant. | No. 25-CV-4608 (RER) (SDE)<br><br>**Plaintiffs' Responses and Objections to Delta's Interrogatories (Set #1: ROGs 1-18)** |

Pursuant to FRCP 26 and 33 of the and the Local Rules for the Eastern District of New York, Plaintiffs Anthony Bernardo, Leah Roberts, and Justin Valentine serve these responses and objections ("**R&O(s)**") to Defendant Delta Air Lines, Inc.'s ("**Delta**") First Set of Interrogatories, numbered 1-18 ("**ROG(s)**"), served by counsel for Delta on April 1, 2026.

## Reservation of Rights

Nothing in these R&Os constitutes a representation or admission that any particular document or thing exists, is relevant, or is non-privileged. All statements in these responses and objections are made without waiver, and with preservation, of all objections as to competency, relevancy, materiality, privilege, admissibility, and the like, of the responses and the subject matter thereof as evidence for any purposes in any further proceeding in this action (including the trial of this action) and any other lawsuit or proceeding. All statements made in these responses and objections are based on discovery reasonably available as of this date, and are made without prejudice to the right to produce or rely on subsequently discovered information. Further discovery, independent investigation, or other analysis may lead to the discovery of additional information, which may lead to additions or changes to these responses and objections.

The information provided below is based on the Plaintiffs' present knowledge, information, and belief. Plaintiffs reserve the right (but do not assume the obligation) to: (i) revise, amend, correct, supplement, clarify, or modify these R&Os in accordance with the applicable rules; (ii) provide additional responsive information and documents in the future; (iii) object to further discovery in this lawsuit, including discovery relating to the subject matter of documents or information produced; (iv) use or rely upon any information and documents produced in this lawsuit in any hearing, proceeding, or trial; (v) use or rely upon subsequently discovered

**ROG 5:** Identify each instance, whether during and after the booking process, in which Delta represented to any Plaintiff or any Plaintiff's traveling companion that his or her seat(s) for any flight identified in the Amended Complaint had a window.

**Response:** Subject to and without waiving the foregoing objections, Plaintiffs state that Delta represented that the Windowless Window Seats alleged in the FAC would have a window through information contained in Delta's e-tickets, representations made in marketing materials, the labels, designs, and visual representation of its seat maps, account profile settings, its seat numbering designations, and through Delta's omission of any disclosure that, contrary to basic industry norms and consumer expectations and experiences, that the exterior-row seats in question would not have a window.

**ROG 6:** Identify the "information provided in his booking confirmation and ticket information" which caused Justin Valentine to believe he would be sitting in seats with windows on his flights identified in the Amended Complaint.

**Response:** Subject to and without waiving the foregoing objections, Plaintiff Valentine states that he understood he purchased seats with windows on the flights in question based on the seat maps and designations in Delta's reservation systems.

**ROG 7:** Identify each instance where Plaintiffs attempted to communicate with Delta concerning their seats on the flights identified in the Amended Complaint, prior to initiating this Action, including without limitation any requests for refunds, reimbursement, credits, or other compensation.

**Response:** Plaintiffs object that this ROG seeks information that is not relevant to any party's claims or defenses and is not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, Plaintiffs respond that they each complained to a flight attendant concerning the Windowless Window Seats.

**ROG 8:** Identify every promise or statement You allege Delta made upon which You base Your claim for promissory estoppel in the Amended Complaint.

**Response:** Subject to and without waiving the foregoing objections, Plaintiffs state that Delta represented that the Windowless Window Seats alleged in the FAC would have a window through information contained in Delta's e-tickets, representations made in marketing materials, the labels, designs, and visual representation of its seat maps, account profile settings, its seat numbering designations, and through Delta's omission of any disclosure that, contrary to basic

industry norms and consumer expectations and experiences, that the exterior-row seats in question would not have a window.

**ROG 9:** Identify each instance when You or Your counsel have ever been deemed either adequate or inadequate by any court when seeking to represent a putative class, including without limitation for each such instance the case number, the style of the case, the name of the court, whether the court determined that You or Your counsel was adequate or inadequate to represent the putative class, the date of the court's determination, and whether the court issued a written order memorializing its determination.

**Response:** Plaintiffs object that this ROG seeks information that is not proportional to the needs of the case insofar as it seeks extensive information concerning every instance in which counsel was deemed adequate to represent a putative class.

Subject to and without waiving the foregoing objections, Plaintiffs state that they have no responsive information concerning their individual capacities as class representatives, as none have previously served as a class representative.

**ROG 10:** Identify the total amount of losses or damages each Plaintiff claims to have suffered as a result of the conduct alleged in the Amended Complaint and describe in detail how You calculated such losses or damages, including any methodology or formula applied.

**Response:** Plaintiffs object that this ROG is premature for seeking contention information at this early stage of fact discovery before, for example, the substantial completion of document productions and any depositions have occurred, and relevant facts remain within the possession, custody, or control of Delta.

Subject to and without waiving the foregoing objections, Plaintiffs refer Delta to Section III of their initial disclosures, served December 1, 2025, and will supplement this response, as appropriate, at a later stage of discovery. Plaintiffs are willing to meet and confer concerning this request.

**ROG 11:** Without limitation of time, describe all facts that You contend demonstrate that Your claims are typical of the claims of the proposed class and that You will fairly and adequately protect the interests of the class, including any prior experience You have had serving as a class representative or lead plaintiff in any other litigation.

**Response:** Plaintiffs object that this ROG is premature for seeking contention information at this early stage of fact discovery before, for

records of SkyMiles accounts and associated travel activity, including for the flights at issue, and which has already produced responsive information identifying Plaintiffs' SkyMiles accounts. Accordingly, the burden and intrusion associated with responding to this interrogatory as drafted far outweigh any likely benefit.

Subject to and without waiving the foregoing objections, Plaintiffs are willing to meet and confer regarding a reasonable limitation of this interrogatory to SkyMiles account information, if any, used in connection with the specific flights at issue in this litigation.

**ROG 17:** Identify the name, address, and telephone number of all persons whom You believe have knowledge of facts relating to the claims asserted in the Complaint, and identify the facts about which You believe they have knowledge.

**Response:** Plaintiffs object that this ROG is overbroad and unduly burdensome to the extent it seeks identification of all persons with knowledge of any facts relating to the claims asserted in the FAC, without limitation as to subject matter or relevance. As drafted, the interrogatory is not proportional to the needs of the case and would require Plaintiffs to identify an expansive and potentially indeterminate universe of individuals, including those with tangential or cumulative knowledge. This interrogatory is further premature to the extent it seeks a complete identification of all such individuals and the full scope of their knowledge prior to the completion of discovery. Plaintiffs' understanding of the universe of knowledgeable persons will continue to develop as discovery proceeds. In addition, to the extent this interrogatory seeks information known only to Delta or third parties, it calls for information not presently within Plaintiffs' possession, custody, or control.

Subject to and without waiving the foregoing objections, Plaintiffs will identify individuals currently known to have discoverable information relevant to Plaintiffs' claims, consistent with their obligations under Federal Rule of Civil Procedure 26(a)(1), and will supplement this response as appropriate.

**ROG 18:** Other than references to "window" on any seat map, identify any other language or basis for claiming that Delta promised a window would be located next to the seat(s) You selected, for yourself or Your traveling companion(s), on the flights identified in the Amended Complaint.

**Response:** Subject to and without waiving the foregoing objections, Plaintiffs state the following bases: information contained in Delta's e-tickets, representations made in marketing materials, the labels, designs, and visual representation of its seat maps, account profile

settings, its seat numbering designations, and through Delta’s omission of any disclosure that, contrary to basic industry norms and consumer expectations and experiences, that the exterior-row seats in question would not have a window.

Respectfully Submitted:

May 15, 2026
New York, New York

**GREENBAUM OLBRANTZ LLP**

Casey J. Olbrantz
Carter E. Greenbaum
Dylan O. Smith
Giorgio Traini
244 Fifth Avenue, Suite C221
New York, NY 10001
646-818-0913
casey@greenbaumolbrantz.com
carter@greenbaumolbrantz.com
dylan@greenbaumolbrantz.com
giorgio@greenbaumolbrantz.com

*Counsel for Plaintiffs*